## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **TANYA ASAPANSA-JOHNSON WALKER, and** | |
| **CECILIA GENTILI,** | Civil Action No. 20-cv-02834-FB-SMG |
| *Plaintiffs*, | |
| v. | |
| **ALEX M. AZAR II, in his official capacity as the Secretary of the United States Department of Health and Human Services, and** | |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,** | |
| *Defendants*. | |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' EXPEDITED
## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ……………………………………………………………………………..2

I.      THE 2020 RULE IS INCONSISTENT WITH BOSTOCK AND THEREFORE
        CONTRARY TO LAW. .................................................................................... 2

II.     THE 2020 RULE GOES FURTHER THAN REVERTING "ON THE BASIS OF SEX"
        TO TITLE IX ................................................................................................ 6

   A.   The Department's reliance on Franciscan Alliance is a red herring. ............................... 7

   B.   The 2020 Rule is arbitrary and capricious because it is unsupported and entirely ignores
        systemic discrimination against the LGBTQ community in health care. ...................... 11

   C.   Defendants' equal protection defense ignores its own conduct and incorrectly
        characterizes Romer v. Evans. ......................................................................... 13

III.    PLAINTIFFS HAVE STANDING TO CHALLENGE THE 2020 RULE ..................... 15

   A.   Plaintiffs have alleged injuries that are actual and imminent, not hypothetical or
        conjectural.................................................................................................. 15

   B.   Plaintiffs' injuries are traceable to the 2020 Rule. ......................................... 17

   C.   Plaintiffs' injuries are redressable. .................................................................. 19

IV.     DEFENDANTS' CONDUCT HAS CAUSED, IS CAUSING, AND WILL CONTINUE
        TO CAUSE PLAINTIFFS' IRREPARABLE HARM ................................................... 21

V.      DEFENDANTS' ARGUMENTS ON THE BALANCE OF HARDSHIPS AND PUBLIC
        INTEREST ARE MISPLACED .................................................................................. 22

VI.     NATIONWIDE RELIEF IS APPROPRIATE................................................................ 23

CONCLUSION..................................................................................................................... 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Batalla Vidal v. Nielsen,*
  279 F. Supp. 3d 401 (E.D.N.Y. 2018) ............................................................24, 25

*In re Big Apple Volkswagen, LLC,*
  571 B.R. 43 (S.D.N.Y. 2017)..............................................................................18

*Bostock v. Clayton Cty., Georgia,*
  140 S. Ct. 1731 (2020)................................................................... *passim*

*Bragdon v. Abbott,*
  524 U.S. 624 (1998)...............................................................................................5

*Brower v. Evans,*
  257 F.3d 1058 (9th Cir. 2001) .............................................................................5

*Butler v. Obama,*
  814 F. Supp. 2d 230 (E.D.N.Y. 2011) ...............................................................16

*Chalk v. U.S. Dist. Court Cent. Dist. of California,*
  840 F.2d 701 (9th Cir. 1988) .............................................................................18

*Citizens to Preserve Overton park v. Volpe,*
  401 U.S. 402 (1971)............................................................................................14

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983)..............................................................................................15

*Cooper v. Salazar,*
  196 F.3d 809 (7th Cir. 1999) .............................................................................20

*Dep't of Commerce v. New York,*
  139 S. Ct. 2551 (2019)........................................................................................18

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
  140 S. Ct. 1891 (2020)..................................................................................12, 23

*Doe 1 v. Trump,*
  275 F. Supp. 3d 167 (D.D.C. 2017) ...................................................................25

*Doe v. Triangle Doughnuts, LLC,*
  No. 5:19-CV-5275, 2020 WL 4013409 (E.D. Pa. July 16, 2020) ......................9, 13

i

*Encino Motorcars, LLC v. Navarro,*
    136 S. Ct. 2117 (2016) ............................................................................12

*Franciscan Alliance, Inc., v. Azar,*
    No. 20-10093, Doc. 00515432394 (5th Cir. May 28, 2020) .....................................4

*Franciscan Alliance, Inc., v. Azar,*
    No. 7:16-cv-00108, Doc. 154 (N.D. Tex. Apr. 5, 2019).................................. *passim*

*Franciscan Alliance, Inc. v. Burwell,*
    Civil Action No. 7:16–cv–00108-O, ECF Docket No. 92 .....................................10

*Halo v. Yale Health Plan, Director of Benefits & Records Yale University,*
    819 F.3d 42 (2d Cir. 2016).........................................................................7

*Harris v. Bd. of Supervisors, Los Angeles Cty.,*
    366 F.3d 754 (9th Cir. 2004) ...............................................................6, 16

*Intellivision v. Microsoft Corp.,*
    484 F. App'x 616 (2d Cir. 2012) .................................................................4

*Karnoski v. Trump,*
    No. C17-1297-MJP, 2017 WL 6311305 (W.D. Wash. Dec. 11, 2017).................25

*Kennecott Utah Copper Corp. v. U.S. Dep't of Interior,*
    88 F.3d 1191 (D.C. Cir. 1996) ...................................................................7

*Kravitz v. United States Dep't of Commerce,*
    366 F. Supp. 3d 681 (D. Md. 2019)...........................................................25

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)...............................................................................15

*Make the Rd. New York v. Cuccinelli,*
    419 F. Supp. 3d 647 (S.D.N.Y. 2019).........................................................23

*Maloney v. SSA,*
    517 F.3d 70 (2d Cir. 2008).........................................................................5

*Minney v. U.S. Office of Pers. Mgmt.,*
    130 F. Supp. 3d 225 (D.D.C. 2015)...........................................................23

*Motor Vehicle Mfts Ass'n v. State Farm Ins.,*
    463 U.S. 29 (1983).................................................................................12

*Nat. Res. Def. Council v. United States Consumer Prod. Safety Comm'n,*
    No. 16-CV-9401 (PKC), 2017 WL 3738464 (S.D.N.Y. Aug. 18, 2017) ...............20

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................................................................................................4

*New York v. U.S. Dep't of Health and Human Servs.*,
414 F. Supp. 3d 475 (S.D.N.Y. 2019).................................................12, 25, 26

*New York v. United States Dep't of Commerce*,
351 F. Supp. 3d 502 (S.D.N.Y. 2019)............................................................23, 25

*New York v. United States Dep't of Homeland Sec.*,
408 F. Supp. 3d 334 (S.D.N.Y. 2019)...................................................................23

*O'Shea v. Littleton*,
414 U.S. 488 (1974)..................................................................................................15

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
279 F. Supp. 3d 1011 (N.D. Cal. 2018) ...............................................................25

*Romer v. Evans*,
517 U.S. ................................................................................................................13, 14

*Romer v. Evans*,
517 U.S. 620 .................................................................................................................17

*SCM Corp. v. Xerox Corp.*,
76 F.R.D. 214 (D. Conn. 1977)................................................................................5

*Shapiro v. Cadman Towers, Inc.*,
51 F.3d 328 (2d Cir. 1995).......................................................................................17

*Simon v. E. Ky. Welfare Rights. Org.*,
426 U.S. 26 (1976).....................................................................................................17

*Smith v. City of Jackson, Miss.*,
544 U.S. 228 (2005)....................................................................................................5

*Soule v. Connecticut Ass'n of Schools, Inc.*,
United States District Court for the District of Connecticut, Case No. 3:20-cv-
00201, Doc. 75 (filed March 24, 2020) ..................................................................9

*State of New York et al. v. United States Department of Homeland Security et al.*,
Case No. 1:19-cv-07777-GBD..........................................................................15, 22

*State v. Ross*,
358 F. Supp. 3d 965 (N.D. Cal. 2019) .................................................................25

*Stockman v. Trump*,
  *Stockman v. Trump*, No. EDCV 17-1799, 2017 WL 9732572 (C.D. Cal. Dec. 22, 2017) ......................................................................................................................24

*Stone v. Trump*,
  280 F. Supp. 3d 747 (D. Md. 2017) ........................................................................25

*Town of Babylon v. Fed. Hous. Fin. Agency*,
  699 F.3d 221 (2d Cir. 2012) ....................................................................................20

*Whole Woman's Health v. Hellerstedt*,
  -- U.S. --, 136 S. Ct. 2292, 195 L.Ed.2d 665 (2016) ..............................................25

*Wyo. Outdoor Council v. U.S. Forest Serv.*,
  165 F.3d 43 (D.C. Cir. 1999) .....................................................................................7

# INTRODUCTION

Defendants' Opposition does little to support the legality of the 2020 Rule or the discriminatory animus underpinning it. First, Defendants lead with the specious argument that the Supreme Court's interpretation of "sex" in Title VII should not impact this Court's interpretation of "on the basis of sex" in Title IX. But Defendants' stated reasons for the proposed rulemaking, the 2020 Rule itself, and Defendants' own admissions in multiple Court filings say the exact opposite. Without a doubt, "[w]ith *Bostock's* guidance . . . Title IX, like Title VII, prohibits discrimination against a person because he is transgender, because this constitutes discrimination based on sex." *Adams v. School Bd. of St. Johns County, Fl.*, No. 18-13592, Slip Op. at 34 (11th Cir. Aug. 7, 2020). Simply put: "sex" in both Titles must be interpreted consistently, and Defendants are estopped from taking a contrary position here.

Second, Defendants imply that the 2020 Rule is silent on issues affecting LGBTQ individuals. Yet Defendants' stated purpose for the 2020 Rule was to remove the 2016 Rule's interpretation of "Section 1557, through Title IX, to prohibit gender identity discrimination." 84 Fed. Reg. at 27,852–83. So, while Defendants assert that the 2020 Rule merely deleted the "on the basis of sex" definition, the 2020 Rule's **262** mentions of "gender identity," **96** mentions of "transgender," and **123** mentions of "sexual orientation" prove otherwise.

Third, Defendants suggest that *Franciscan Alliance's* vacatur of "gender identity" from the definition of "on the basis of sex" in the 2016 Rule justified promulgation of the 2020 Rule, omitting that *Franciscan Alliance* neither addressed nor vacated "sex stereotyping" from the definition of "on the basis of sex" in the 2016 Rule, and that the Fifth Circuit is currently considering the legality of the *Franciscan Alliance* vacatur and further granted the parties' requested stay because *Bostock's* interpretation of "sex" discrimination will have "a direct bearing on this case." Indeed, *Bostock* nullifies the vacatur.

Unable to succeed on the merits, Defendants contend that this Court lacks jurisdiction to enjoin the discriminatory 2020 Rule. Yet Plaintiffs undeniably have standing to challenge the 2020 Rule, and will suffer irreparable, life-threatening harm if it becomes effective. As outlined in the Complaint, Plaintiffs' Declarations, and the countless scientific and professional authorities cited therein, the 2020 Rule will result in the immediate refusal of coverage for critical healthcare procedures like gender confirmation surgery, and for care of transgender, gender non-conforming, and non-binary ("TGNCNB") individuals altogether. For example, Plaintiff Walker is a veteran seeking gender confirmation surgery from the federal government itself through Veterans Health Administration. Walker Decl. ¶¶ 68–73, 78. The 2020 Rule will give covered private providers and insurers a license to discriminate against a vulnerable population that already faces a health care crisis—and during a pandemic that has killed over 161,000 people in this country—to which complicating pre-existing conditions renders Plaintiffs particularly at risk of death. Defendants, however, assert that these concerns are "not enough" to afford this Court's review. Opposition, ECF Docket No. 18 ("Opp.") at 10.

For these and the further reasons below, Plaintiffs respectfully ask the Court to grant their Expedited Motion for a Preliminary Injunction ("PI Motion"), and immediately enjoin Defendants from implementing and enforcing the 2020 Rule in full or, at a minimum, strike the parts listed in Appendix A.

## ARGUMENT

## I. THE 2020 RULE IS INCONSISTENT WITH *BOSTOCK* AND THEREFORE CONTRARY TO LAW.

Defendants' Opposition, and the 2020 Rule, avoids any meaningful consideration of the Supreme Court's decision in *Bostock*, which held that "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based

on sex." *Bostock,* 140 S. Ct. at 1739.  Instead, Defendants argue that the Supreme Court never interpreted "sex" in *Bostock*, that "the text of Title IX does not use the terms 'gender identity' and 'sexual orientation,'" and that *Bostock* is inapplicable here because it interpreted discrimination "because of sex" in Title VII—not Title IX.  Opp. at 15–16, 18.  Remarkably, Defendants acknowledged the import of *Bostock* and Title VII precedent in the 2020 Rule itself:

> [t]he Department continues to expect that a holding by the U.S. Supreme Court on the meaning of "on the basis of sex" under Title VII will likely have ramifications for the definition of "on the basis of sex" under Title IX.  Title VII case law has often informed Title IX case law with respect to the meaning of discrimination "on the basis of sex," and the reasons why "on the basis of sex" (or "because of sex," as used in Title VII) does not encompass sexual orientation or gender identity under Title VII have similar force for the interpretation of Title IX.

85 Fed. Reg. at 37,168.  Now, Defendants ask the Court to ignore these statements, and argue that "[i]t was neither arbitrary nor capricious for HHS to refrain from drafting a rule that attempted to predict prematurely what future precedent might dictate," Opp. at 18, and that "[r]ather than providing a definition of 'on the basis of sex,' the 2020 Rule simply prohibits discrimination on the grounds prohibited by Title IX."  *Id*. at 14.  These contrary positions cannot be reconciled.

What is more puzzling is that Defendants took the exact opposite position in their summary judgment opposition in *Franciscan Alliance*:

> There is no reason why Title IX's prohibition on sex discrimination should sweep more broadly than its Title VII counterpart.  Both the Supreme Court and the Fifth Circuit have looked to Title VII precedents in construing Title IX's prohibition, and there is no basis for taking a different approach here.

*Franciscan Alliance, Inc., v. Azar*, No. 7:16-cv-00108, Doc. 154, at p. 8 (N.D. Tex. Apr. 5, 2019).  And in the currently pending *Franciscan Alliance* appeal to the Fifth Circuit, plaintiffs requested—and Defendants did not oppose—a stay of the appellate briefing due to the anticipated *Bostock* decision, expressly acknowledging (i) that *Bostock* would decide whether the

prohibition on sex discrimination under Title VII would encompass sexual orientation and gender identity; (ii) that courts look to Title VII to understand Title IX; and (iii) *Bostock* "may have a direct bearing" on the case because "the ACA incorporated Title IX's prohibition on 'sex' discrimination." *Franciscan Alliance, Inc., v. Azar*, No. 20-10093, Doc. 00515432394, at 1–2, 4 (5th Cir. May 28, 2020). Then, a month ago, Defendants jointly moved the Fifth Circuit to stay further appellate proceedings, in part, because "the Supreme Court decided *Bostock*." *Id.* at Doc. 00515475949, at 1–2 (5th Cir. July 2, 2020).

Essentially, Defendants represented and agreed in other federal courts that *Bostock*'s decision on Title VII would impact the analysis of discrimination "on the basis of sex" under Title IX. Apparently, *Bostock* was not decided as Defendants predicted, so they now take the opposite position here. For the integrity of the judicial process, Defendants should be estopped from doing so. *See Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 618–19 (2d Cir. 2012) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001)). Defendants' conduct is particularly egregious given their intent to deprive critically vulnerable citizens of basic rights.

As Defendants concede in the 2020 Rule, *Bostock* resolves this dispute. Defendants failed to reconcile *Bostock* with their view of Section 1557, even though they had time to do so, given that *Bostock* was issued on June 15, 2020, and the 2020 Rule was published four days later—on June 19, 2020. Instead, Defendants continued with their conjecture that "Title IX does not encompass discrimination on the basis of sexual orientation or gender identity," and it is "permitted to issue regulations on the basis of the statutory text and its best understanding of the law and need not delay a rule based on speculation as to what the Supreme Court may say about a case dealing with related issues." 85 Fed. Reg. at 37,168. Defendants' failure to reconsider the 2020 Rule after *Bostock* renders the 2020 Rule unlawful, arbitrary, and capricious. *See Brower*

4

*v. Evans,* 257 F.3d 1058, 1065 (9th Cir. 2001) (stating that failure to "consider an important aspect of the problem" is unlawful under the APA).

Moreover, the Supreme Court held that discrimination based upon one's gender identity and/or sexual orientation is "discrimination because of sex" because "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Bostock*, 140 S. Ct. at 1741. That logic equally applies here. As the 2020 Rule expressly acknowledge, Title VII cases inform the analysis of the corollary language in Title IX. *See* PI Motion, ECF Docket No. 8-1 at 17–18 (citing cases).

Nor, contrary to Defendants' argument, does it "remain[] to be seen precisely how *Bostock* . . . might affect Section 1557, which applies Title IX's language." Opp. at 18. As the Eleventh Circuit held on the very date of this filing, "*Bostock* has great import for [Plaintiffs'] Title IX claim," because "both titles prohibit discrimination against individuals on the basis of sex," and "[b]oth titles also employ a "but-for causation standard," which *Bostock* found critical to its expansive interpretation of sex discrimination." *Adams*, Slip Op. at 32. Relying on this inescapable connection, the Court concluded that "the Supreme Court's interpretation of discrimination based on sex applies in both settings," and "[w]ith *Bostock's* guidance . . . Title IX, like Title VII, prohibits discrimination against a person because he is transgender, because this constitutes discrimination based on sex." *Id.* at 33–34.

This ruling (and comparable case law) makes good sense because when, as here, "two provisions in different statutes share similar text and legislative histories, it is reasonable to interpret one in a manner consistent with the other." *Maloney v. SSA*, 517 F.3d 70, 75 (2d Cir. 2008); *see Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that

Congress intended that text to have the same meaning in both statutes."); *SCM Corp. v. Xerox Corp.*, 76 F.R.D. 214, 215 (D. Conn. 1977) ("[I]nconsistent interpretations of [v]irtually identical phrases in different provisions of the federal rules should be avoided"). Defendants' view to the contrary is inconsistent with *Bostock* and, therefore, unlawful.

## II. THE 2020 RULE GOES FURTHER THAN REVERTING "ON THE BASIS OF SEX" TO TITLE IX

Defendants ignore the preamble of the 2020 Rule and argue it "simply incorporates Title IX's definition" and does not take any position on whether Section 1557 includes gender identity or sexual orientation protections. Opp. at 15–16. The preamble shows that Defendants are not "simply incorporat[ing]" Title IX in the 2020 Rule, but instead adopting an affirmative interpretation of the 2020 Rule that *removes* gender identity and sexual orientation from the protective ambit of Section 1557. The preamble states:

- In other cases, the 2016 Rule contained definitions inconsistent with the text of applicable statutes; indeed, on those grounds, a Federal district court vacated the 2016 Rule's definition of "on the basis of sex" insofar as it encompassed gender identity and termination of pregnancy. 85 Fed. Reg. at 37,167.

- The U.S. government has taken the position in *Harris* and other relevant litigation that discrimination "on the basis of sex" in Title VII and Title IX does not encompass discrimination on the basis of sexual orientation or gender identity. *Id*. at 37,168.

- The Department enforces statutory prohibitions on discrimination on the basis of race, color, national origin, age, disability, and sex discrimination because they are set forth in the text of statutes incorporated into Section 1557, and gender identity is not set forth as a protected category in those statutes. *Id*. at 37,175.

- The Department disagrees with commenters who contend that Section 1557 or Title IX encompass gender identity discrimination within their prohibition on sex discrimination. *Id*. at 37,183.

- These comments further reinforce the Department's conclusion . . . there is no medical consensus to support one or another form of treatment for gender dysphoria. *Id*. at 37,198.

Knowing that this dooms their argument, Defendants ask the Court to ignore the preamble and review the 2020 Rule in isolation. Opp. at 16. But as a legal matter, the Court cannot divorce the actual provisions of the 2020 Rule from their stated intent in the preamble. As the Second Circuit stated:

> When issuing regulations, the [APA] requires agencies to "incorporate in the rules adopted a concise general statement of their basis and purpose," 5 U.S.C. § 553(c), a statement that is commonly known as the regulation's preamble. Based on this congressional command, "it does not make sense to interpret the text of a regulation independently from its" preamble.

*Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 52 (2d Cir. 2016) (citations omitted); *see also Wyo. Outdoor Council v. U.S. Forest Serv.,* 165 F.3d 43, 53 (D.C. Cir. 1999) (recognizing that the regulation's preamble, while not controlling, "is evidence of an agency's contemporaneous understanding of its proposed rules.") (citation omitted); *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1223 (D.C. Cir. 1996) (stating that reviewability of a preamble looks at "the agency's intention to bind either itself or regulated parties. Absent an express statement to that effect, we may yet infer that the agency intended the preamble to be binding if what it requires is sufficiently clear.").

Indeed, the preamble here gives meaning to the language of the 2020 Rule and reflects Defendants' new interpretation of the governing statute, which provides a license to discriminate in health care on the basis of gender identity and sexual orientation.

## III.    RELIANCE ON *FRANCISCAN ALLIANCE* IS A RED HERRING.

Defendants' argument that the 2020 Rule was necessitated by the *Franciscan Alliance* injunction vacating a portion of the 2016 Rule is a mere pretext for invidious discrimination. *See* Opp. at 18. If legal authority motivates Defendants, how can they ignore *Bostock*, which, as

Supreme Court precedent, abrogates the injunction in *Franciscan Alliance*?[1]  Indeed, imagine if

after the Supreme Court's decision in *Brown v. Board of Education*, the Department of

Education issued a rule permitting segregated extracurricular activities, and did so on the basis of

a single district court's opinion prior to *Brown*.  It would be absurd for the government to then

argue that a rule so obviously in conflict with *Brown* was somehow justified based off an earlier

district court decision.  Defendants' argument here is no different.

Further, Defendants' claim that *Franciscan Alliance* required the creation of the 2020

Rule fails.  Opp. at 18–19.  *Franciscan Alliance* enjoined inclusion of "gender identity" from the

2016 Rule's definition of "on the basis of sex," but it did not enjoin sex stereotyping from it.

The 2016 Rule defined "sex stereotypes" as:

> Stereotypical notions of masculinity or femininity, including expectations of how individuals represent or communicate their gender to others, such as behavior, clothing, hairstyles, activities, voice, mannerisms, or body characteristics.  These stereotypes can include the expectation that individuals will consistently identify with only one gender and that they will act in conformity with the gender-related expressions stereotypically associated with that gender.  Sex stereotypes also include gendered expectations related to the appropriate roles of a certain sex.

81 Fed. Reg. at 31,468.  The intent of the definition was to mitigate discrimination against

transgender patients.  *Id*. at 31,460.  Despite the fact that "sex stereotyping" was not at issue in

*Franciscan Alliance*, Defendants, in promulgating the 2020 Rule, removed the definition in the

2020 Rule and declared that discrimination on the basis of sex under Title IX means

"discrimination on the basis of the fact that an individual is biologically male or female."  85

Fed. Reg. at 37,236.

Knowing that *Franciscan Alliance* did not go this far, Defendants impermissibly

attempted to expand the holding by stating that "to the extent the 2016 Rule used that term to

---

[1] Defendants also did not make any effort to explain why it was rational to rely on that single district court decision in the face of not only *Bostock* but contrary decisions from courts of appeals, and other district courts.

encompass gender identity, the sex stereotyping provision had no real-world effect after the court decision." *Id.* at 37,178. This is wrong. To highlight Defendants' intent: "The Department believes that, unlike stereotypes, reasonable distinctions on the basis of sex, as the biological binary of male and female, may, and often must, 'play a part in the decision-making process'— especially in the field of health services." *Id*. at 37,185. The 2020 Rule and Defendants' justifications explicitly disregard that there are numerous bases for discrimination against the LGBTQ community that go beyond how they identify or who they love, but how they present to the world.

As *Bostock* said, "[s]o just as an employer who fires both Hannah and Bob for failing to fulfill traditional sex stereotypes doubles rather than eliminates Title VII liability, an employer who fires both Hannah and Bob for being gay or transgender does the same." 140 S. Ct. at 1742–43. Thus, a man who has a high-pitched voice, wears make-up, and has not disclosed his sexual orientation to his doctor and is discriminated against because he is presumed gay is discriminated against based upon sex stereotypes. Similarly, a woman who has disclosed her marriage to another woman to her doctor is discriminated against on the basis of a sex stereotype if her doctor thinks that this is improper because a woman should be married to a man. *See Doe v. Triangle Doughnuts, LLC*, No. 5:19-CV-5275, 2020 WL 4013409, at *7 (E.D. Pa. July 16, 2020) (stating that, post-*Bostock*, it "naturally follows" that discrimination based on gender stereotyping falls within Title VII's prohibitions and the transgender plaintiff pled the prima facie elements of discriminatory wrongful termination based on gender stereotyping). This conduct is what the 2016 Rule was trying to protect against, an assurance that being who you are and how you present would not subject you to discrimination when seeking and receiving health care.

Additionally, Defendants' filings in *Franciscan Alliance* expose the falsity of their representations here that the 2020 Rule is neutral. In one filing, Defendants state:

> Defendants agree with Plaintiffs and the Court that the [2016] Rule's prohibitions on discrimination on the basis of gender identity and termination of pregnancy conflict with Section 1557 and thus are substantively unlawful under the APA. Since the [2016] Rule was issued, the United States has returned to its longstanding position that the term "sex" in Title VII does not refer to gender identity, and there is no reason why Section 1557, which incorporates Title IX's analogous prohibition on "sex" discrimination, should be treated differently.

*Franciscan Alliance,* No. 7:16-cv-00108, Doc. 154 at p. 1.[2] As evidenced by the 2020 Rule's preamble, the 2020 Rule was promulgated with the very same intent described above.

Defendants should not be permitted to manipulate the judicial process to establish a pretext for discrimination. Although Defendants had a right to appeal the injunction in *Franciscan Alliance*, they declined to do so (after a change to the current Administration). Rather, at summary judgment, Defendants asked the court for additional time to "reevaluate the regulation." *Id*. at Doc. 92, at p. 1. They then argued a position not only inconsistent with existing law, but their own then-existing regulation (the 2016 Rule), by stating that "the relevant provisions of Title IX and Section 1557 unambiguously exclude gender-identity discrimination." *Id*. at Doc. 154, p. 14. Defendants orchestrated their desired outcome in *Franciscan Alliance*, used it as a predicate to revisit the 2016 Rule, and issued the 2020 Rule so that they could clarify the apparent confusion (that they fostered) about "the meaning of sex in civil rights law." 85 Fed. Reg. at 37,164, 37,180. This flagrantly self-serving rulemaking is unlawful.

---

[2] Defendants' argument here is belied by its rhetoric in more litigations than *Franciscan Alliance*. For example, the government believes that "Title IX and its implementing regulations prohibit discrimination solely 'on the basis of sex,' not on the basis of transgender status." *Soule v. Connecticut Ass'n of Schools, Inc.*, Case No. 3:20-cv-00201, Doc. 75 at p. 2 (D. Conn. March 24, 2020).

## IV.    THE UNLAWFUL 2020 RULE IGNORES SYSTEMIC DISCRIMINATION AGAINST THE LGBTQ COMMUNITY IN HEALTH CARE

This Court need not "substitute [its] judgment for that of the agency," Opp. at 14, to conclude that Defendants promulgated the 2020 Rule without the diligence required by the APA. Defendants claim that the 2020 Rule was "supported by a copious record containing thorough reasoning," Opp. at 20; however, such statement is entirely unsupported and unsubstantiated, and the referenced "copious record" is nowhere to be found.  The Opposition asserts that HHS promulgated the 2020 Rule after receiving approximately 200,000 comments and only "[a]fter carefully evaluating the extensive record," Opp. at 5, but the 2020 Rule says that the Department "knows of no data showing that the proper enforcement of Federal nondiscrimination law according to statutory text will disproportionately burden individuals on the basis of sexual orientation and/or gender identity."  85 Fed. Reg. at 37,182.

Defendants cannot have it both ways.  They either never read the comments and statistics evidencing the systemic discrimination faced by LGBTQ individuals in seeking and receiving health care or they considered and ignored them without any supportable justification—in either case, the 2020 Rule is unlawful.  The record evidence shows that LGBTQ individuals suffer discrimination at a disproportionately high rate as compared to their cisgender and heterosexual counterparts, and Defendants' failure to account for this in their rulemaking is irrational and unlawful under the APA.  Complaint, ¶¶ 132–41, 201–05; PI Motion at 15–16.

By ignoring this systemic discrimination, HHS also ignores the non-discriminatory intent of the ACA.  As articulated by the House of Representatives' Amicus Brief, Congress enacted the ACA to address, amongst other things, the reality that "the insurance and health care industries were riddled with discriminatory policies and practices" (Amicus at 6), and "LGBTQ individuals were particularly harmed by these problems with the health insurance markets and

suffered discrimination in the provision of care." *Id.* at 7.[3]  Accordingly, the ACA was passed to

expand access to care and to reduce costs.  However, in promulgating the 2020 Rule, Defendants

made clear that it goes beyond just "reverting" to the language of Title IX by explicitly stating

that it does not consider sexual identity or gender orientation to fall within the definition of "on

the basis of sex," effectively carving them out from protection under the ACA.  This is in direct

contravention of *Bostock*, case law, and Congressional intent.

     Defendants are not writing on a blank slate here and must consider the "serious reliance

interests" that may have developed based on the 2016 Rule and plain statutory language.  *Encino*

*Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016); *see New York v. U.S. Dep't of Health*

*and Human Servs.*, 414 F. Supp. 3d 475, 547 (S.D.N.Y. 2019) (explaining that a "more detailed

justification than would suffice for a new policy created on a blank slate" is needed when "the

new policy rests upon factual findings that contradict those which underlay its prior policy")

(internal quotation and citation omitted).  Because they have entirely failed to do so, the 2020

Rule is arbitrary and capricious. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140

S. Ct. 1891, 1913 (2020).[4]

     Finally, Defendants claim the PI Motion infringes upon the deference they are owed and

improperly asks the Court to "substitute its judgment" for that of the government.  Opp. at

---

[3] *See* Amicus Brief from House of Representatives, ECF Docket No. 14-1, Page 7:
> LGBTQ individuals were particularly harmed by these problems with the health insurance markets and suffered discrimination in the provision of care. According to one study, "before the ACA's coverage reforms came into effect, 1 in 3 LGBT people making less than $45,000 per year . . . were uninsured." And for transgender individuals, even if they had coverage, insurance companies routinely excluded coverage for transition-related care, resulting in transgender individuals being unable to obtain medically necessary treatment for gender dysphoria." *See* 81 Fed. Reg. at 31,460.

[4] One other component of HHS's support for the 2020 Rule was the cost savings it would realize if the 2020 Rule were to go into effect.  As the Opposition notes, the Department is not claiming that "all of these savings come from its decision not to define 'on the basis of sex.'"  Opp. at 20.  If this is the case, it appears *Franciscan Alliance*—a case that is no longer good law under *Bostock*—is the *only* rationale relied upon by Defendants to support the 2020 Rule's revisions on gender identity, which only renders the 2020 Rule more unsupported, irrational, arbitrary and capricious.

14. But Plaintiffs have shown the 2020 Rule is unlawful under the "arbitrary and capricious" standard (in addition to several others). Indeed, deference owed does not overcome the APA's clear mandate that rules like this one, which ignore mountains of evidence and look away from binding authority, of which Defendants were well aware, are to be set aside. *Motor Vehicle Mfts Ass'n v. State Farm Ins.*, 463 U.S. 29, 43 (1983) ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made.") (internal quotation omitted).

A. **Defendants' equal protection defense ignores their own conduct and incorrectly characterizes *Romer v. Evans*.**

Just as *Bostock* resolves the APA claims, the Supreme Court's decision in *Romer v. Evans* resolves the constitutional question.[5] Defendants' only argument against *Romer's* applicability is that the Colorado constitutional provision at issue repealed and rescinded particular ordinances *and* prohibited state and local governments from protecting the LGBTQ community. Opp. at 23–24. In contrast, Defendants say, the 2020 Rule only rescinds definitions. This is wrong.

*First*, the 2020 Rule does not just rescind definitions or create some neutral environment; instead, and as explained above, it expressly removes LGBTQ individuals from the protective ambit that the ACA guarantees.

---

[5] The government tries to argue about the applicable standard of review, even though the court need not decide that issue because the case can be resolved under *Romer's* rational basis standard. Opp. at 21, n.5. In any event, as Plaintiffs highlighted in their initial brief, there is governing law requiring heightened scrutiny for government actions targeting sexual orientation and gender identity. PI Motion at 28–29. But, even if there was not, *Bostock* would also require heightened scrutiny since sex discrimination engenders heightened scrutiny, and since sex discrimination comprises discrimination on the basis of gender identity and sexual orientation. *See Adams*, No. 18-13592, Slip Op. at 12–13 (citing *Bostock* when holding that discrimination against a transgender individual is sex discrimination that engenders heightened scrutiny); *Doe v. Triangle Doughnuts, LLC*, 2020 WL 4013409, at *12 ("As a transgender woman, Doe is a member of a protected class.") (citing *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020)).

*Second*, this purported distinction did not drive the analysis in *Romer*. There, the conduct was not unconstitutional just because it prohibited localities from adopting protective ordinances, but because it constituted a "general announcement that gays and lesbians shall not have any particular protections from the law," that "lack[ed] a rational relationship to legitimate state interests." *Romer v. Evans*, 517 U.S. at 631–32. Here, in the face of contrary statutory text and intent, governing case law at the time the ACA was enacted, and *Bostock*, Defendants have similarly rescinded protections for LGBTQ individuals and enacted extra-statutory policy that removes this population's ACA discrimination protections. This is the precise type of singling-out that "raise[s] the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected." *Id*. at 634–35.

Perhaps recognizing this problem, Defendants say they are not drawing a classification based on LGBTQ status. Opp. at 20–21. But again, to reach this conclusion, the Court must ignore all of Defendants' statements in the 2020 Rule explicitly targeting LGTBQ individuals (and past expressions of animus in other court filings). The Court must also ignore all of the instances in the 2020 Rule in which it specifically strips protections for "gender identity" and "sexual orientation" from various other regulations. *See, e.g.*, 85 Fed. Reg at 37,218 (explaining that the Department was making "conforming amendments to ten regulations of CMS that prohibited discrimination on the basis of gender identity and/or sexual orientation"). If Defendants want to put their head in the sand, so be it; the Court should decline to join.

Finally, Defendants argue that the 2020 Rule was not driven by animus. On this, their brief is more notable for what it does not include than what it does. Specifically, the Opposition fails to address the systematic and pernicious efforts by this Administration to strip TGNCNB individuals of all their rights. *See* Compl. ¶¶ 163–192. Instead, Defendants focus exclusively on

Mr. Severino's statements and contend that this extra-record evidence is not allowed. Courts, however, routinely consider such evidence upon a "strong showing in support of a claim of bad faith or improper behavior on the part of the agency decision makers." *See Saget v. Trump,* 375 F. Supp. 3d 280, 342 (E.D.N.Y. 2019).[6] It is respectfully submitted that the Court do so here.

## V.    <u>PLAINTIFFS HAVE STANDING TO CHALLENGE THE 2020 RULE</u>

### A.    <u>Plaintiffs have alleged injuries that are actual and imminent, not hypothetical or conjectural.</u>

Applying faulty logic and ignoring the litany of harm shown in Plaintiffs' Complaint, PI Motion, and Declarations, Defendants pretend that Plaintiffs' allegations are limited to conclusory lines from the PI Motion. Opp. at 8–9. Plaintiffs have shown numerous cognizable injuries to legally protected interests. Plaintiffs' Declarations establish the pervasive discrimination they face from healthcare providers–including, for example, from the VA, upon which Ms. Walker relies for ongoing monitoring and maintenance of her life-threatening health conditions. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."). The Declarations contain dozens of pages proving that such discrimination is, in fact, certain to occur again—yet, Defendants seek to remove some of the most important protections Plaintiffs can rely upon.

Moreover, Plaintiffs' "[p]ast exposure to illegal conduct," as Defendants put it, *is* accompanied here by "continuing, present adverse effects." Opp. at 9 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Plaintiffs establish, for instance, that the 2020 Rule: (i) will cause them to avoid seeking healthcare; (ii) causes them to suffer stigmatization, anxiety, and

---

[6] Defendants briefly note recent U.S. Supreme Court statements about protecting religious liberty. Opp. at 22–23. These statements are irrelevant to this dispute. Whether or not there is a religious exception to the non-discrimination provisions in Section 1557 is a question that is not implicated–at all–by this case. That is, whether or not someone may have such an objection in a specific private lawsuit involving Section 1557, does not give the government license to target a specific group of people, as they have done here.

intense mental anguish; and (iii) removes their recourse for discriminatory treatment. Compl. ¶¶ 217–19, 238–42. These are all continuing and present harms. *See, e.g., New York v. U.S. Dep't of Homeland Sec.*, No. 1:19-cv-07777, Doc. 195, at p. 28 ("No person should hesitate to seek medical care[.]").

The cases relied upon by Defendants are factually inapposite because they do not involve harms in any way akin to the immediate denial of life-saving medical treatment sufficient to confer standing, particularly in the context of a global pandemic. *See Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 762–64 (9th Cir. 2004) (standing to challenge the closure of a rehabilitation center and reduction of hospital beds exists where plaintiffs had chronic health conditions and a history of not receiving care in a timely fashion). For example, in *Lujan*, the alleged harm to plaintiffs involved speculation that denial of government funding may threaten the overseas habitats of certain endangered species, and in *Butler*, the alleged harm depended upon plaintiff's circumstances years in the future. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992); *Butler v. Obama*, 814 F. Supp. 2d 230, 234–35 (E.D.N.Y. 2011).

In contrast, Plaintiffs show current and imminent harms to their health, well-being, and very lives—paramount concerns magnified in the midst of a global pandemic—including:

- Imminent threat to health, safety, and life due to need for ongoing critical monitoring and care of life-endangering chronic health conditions, including, lung conditions and lung cancer (Gentili Decl. ¶¶ 41–42, 45–47, 66, 71; Walker Decl. ¶¶ 51, 75–76, 79, 81–84);

- Grave anxiety and fear about health, safety, and life due to imminent work travel to multiple destinations outside New York (Gentili Decl. ¶¶ 58–59, 63–66);

- Exacerbated risk of receiving improper, abusive, and discriminatory health care and medical treatment, particularly during COVID-19 pandemic, which has led to increased stress and fear of negative health consequences or death (Gentili Decl. ¶¶ 62, 70; Walker Decl. ¶¶ 75–76, 80);

- Impending continued delays and threat to ability of Ms. Walker to obtain gender confirmation surgery, which she has worked towards for years and for which the VA

has repeatedly refused to provide the requisite documentation, and extreme anxiety and mental anguish associated with the same (Walker Decl. ¶¶ 68–73, 78);

- Impending delay in seeking, or refusal to seek, medical care, even in the face of a deadly pandemic (Gentili Decl. ¶¶ 36, 69, 74; Walker Decl. ¶¶ 50, 87);

- Heightened and extreme anxiety, mental anguish, fear, and emotional distress about the availability of health care and the quality of any such care received (Gentili Decl. ¶¶ 59, 71–72; Walker Decl. ¶¶ 82–83, 88);

- Elimination of ability to seek redress for any discrimination or mistreatment from health care providers or insurers, which heightens anxiety and mental distress (Gentili Decl. ¶ 73; Walker Decl. ¶ 90);

- Feelings of shame, hopelessness, and stigma from the 2020 Rule (Gentili Decl. ¶ 72; Walker Decl. ¶¶ 50, 89); and

- Impending refusal of, or change to, coverage of necessary ongoing treatment and medications, and mental anguish, anxiety, and fear related to same (Gentili Decl. ¶¶ 42–43, 54–55, 67; Walker Decl. ¶ 85).

Based on Plaintiffs' past experiences and present harms and fears—together with the overwhelming evidence of systemic discrimination faced by TGNCNB individuals in the record—Plaintiffs have standing to challenge the 2020 Rule.

### B. Plaintiffs' injuries are traceable to the 2020 Rule.

Defendants argue that Plaintiffs cannot meet the second and third requirements of Article III standing—a causal connection between the complained-of conduct and the identified injury that is likely to be redressed by a favorable ruling. This is wrong.

Defendants' reliance upon *Simon v. Eastern Kentucky* is both myopic and misplaced. The *Simon* court noted that plaintiffs alleged an IRS regulation "encouraged" certain hospitals to deny care to indigent patients, which did not lead to a conclusion that, absent the rule, plaintiffs would receive the care they desire. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976). Here, in contrast, the 2020 Rule takes away Plaintiffs' protections against discriminatory treatment—their very right to receive the same medical care as cisgender patients. Defendants

should not be permitted to target a group by removing its protections and then disclaim all responsibility when the harms protected against occur. *See e.g.*, *Romer v. Evans*, 517 U.S. at 627 ("The amendment withdraws from homosexuals, but no others, specific legal protection from the injuries caused by discrimination, and it forbids reinstatement of these laws and policies.").

Further, Plaintiffs allege several injuries flowing directly from the 2020 Rule itself, including elimination of their right to a federal cause of action to redress injuries along with their fear of seeking care, and their mental and emotional anguish. *See e.g., Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (affirming preliminary injunction issued by district court based, in part, on plaintiff's emotional harm); *Chalk v. U.S. Dist. Court C.D. Cal.*, 840 F.2d 701, 709 (9th Cir. 1988) (concluding plaintiff suffered non-compensable irreparable injury when the county department of education sought to remove him from his teaching position because of his AIDS diagnosis, which caused him emotional stress and a reduced sense of well-being); *In re Big Apple Volkswagen, LLC*, 571 B.R. 43 (S.D.N.Y. 2017) ("In general . . . emotional distress plainly constitutes a concrete injury for purposes of Article III standing"). Defendants gloss over these real and direct injuries, but the Court should not do the same.

Defendants are also wrong on traceability: it can be established where a plaintiff's injuries involve wrongful acts of a third party. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019) ("Respondents' theory of standing thus does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties."). Plaintiffs have established the certainty of discrimination they will face, from which they have been protected at least in part by the 2016 Rule. It requires no speculation to conclude that the removal of this protection will lead to discrimination. Indeed, Defendants' own statements establish the point. In its Notice of Proposed Rulemaking in 2019,

HHS acknowledged that the 2016 Rule "likely induced many covered entities to conform their policies and operations" in a way that protected gender identity.  84 Fed. Reg. at 27,876 (June 14, 2019).  Even more tellingly, HHS admitted its removal of these protections would cause some covered entities to "revert to the policies and practices they had in place before," including changing nondiscrimination policies and training materials.  *Id*.  HHS even admitted that this change would eliminate the right of victims of discrimination to file grievances related to gender identity—"because such claims would not be cognizable under the [2020] Rule."  *Id*.

C.     **Plaintiffs' injuries are redressable.**

Defendants create another straw man again using *Franciscan Alliance* in arguing that there is no remedy the Court can fashion that will redress Plaintiffs' harm "because the prior inclusion of 'gender identity' in the definition of 'on the basis of sex' was vacated by another court . . . . Enjoining the challenged 2020 Rule would leave plaintiffs with the non-vacated portions of the 2016 Rule and Section 1557 itself . . . ."  Opp. at 12.  Precisely—and this would provide redress for Plaintiffs.  We now know that any definition of "on the basis of sex" to include protections for gender identity, sexual orientation, and sex stereotyping is not necessary because that interpretation of Section 1557 is compelled by *Bostock*, which the Defendants pretend does not exist.  Put another way, were the Court to provide Plaintiffs with the relief sought by the PI Motion (and Complaint), whether the definition in the 2016 Rule is vacated or not is irrelevant to Plaintiffs' ability to seek redress for discrimination under Section 1557.

Moreover, Defendants fail to understand the impact of their own rulemaking authority in arguing that—at best—the 2020 Rule may merely "encourage individuals to engage in allegedly objectionable conduct."  *Id.*  Again, the 2020 Rule explicitly sanctions the denial of potentially life-saving care to LGBTQ individuals and—even assuming, arguendo, that the Court accepts Defendants' fallacious argument that the 2020 Rules is neutral as to whether Section 1557

includes such protections—provides an unsubtle directive as to how Section 1557 will (or will not be) enforced that contradicts Supreme Court precedent. Also, the federal government is not a third-party "individual." In the case of Plaintiff Walker, the actor engaging in "allegedly objectional conduct" will be the federal government itself via Veterans Affairs. Walker Decl. ¶¶ 70–73. Prohibiting Defendants' discriminatory efforts to deprive Plaintiffs of their Section 1557 protections will provide redress. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 229 (2d Cir. 2012) ("[A] litigant must demonstrate that favorable action by the agency is likely to result in favorable action by the regulated party . . . ."); *Nat. Res. Def. Council v. United States Consumer Prod. Safety Comm'n*, No. 16-CV-9401 (PKC), 2017 WL 3738464, at *6 (S.D.N.Y. Aug. 18, 2017) ("A litigant challenging agency procedure may show redressability even if it 'cannot establish with any certainty' that agency action will result in relief.").

Further, Defendants' argument that Plaintiffs cannot show redress because any private right of action must come from the underlying statute, Opp. at 26, is mere double speak. Under the 2016 Rule, Plaintiffs have a private right of action. 81 Fed. Reg. at 31,472. This is the law as it exists today. Defendants concede that the 2020 Rule removes that provision from the 2016 Rule, but argues that in so doing, they do not "intend[] to take a position . . . on the issue of whether Section 1557 provides a private right of action." Opp. at 26. But—conveniently— Defendants fail to explain what that means as a practical matter. Defendants' desire to avoid taking a position is tantamount to opposition—it does not change the fact that the private right of action found in the 2016 Rule will be eliminated on August 18, 2020, unless this Court grants the instant PI Motion. That is redress. *Cooper v. Salazar*, 196 F.3d 809, 817 (7th Cir. 1999).

Finally, Defendants are wrong to say that the 2016 Rule provided no protection on the basis of sexual orientation. Instead, HHS made plain that it incorporated protections on the basis

of sexual orientation through its definition of "sex stereotyping," a definition that was not subject to *Franciscan Alliance*, but that was removed by HHS regardless. Defendants' arguments again overlook those injuries that arise directly from the passage of the 2020 Rule, including the elimination of a private right of action and Plaintiffs' extreme mental distress, anguish, and stigmatization. These injuries will be directly redressed by eliminating the 2020 Rule.

## VI.  DEFENDANTS' CONDUCT HAS CAUSED, IS CAUSING, AND WILL CONTINUE TO CAUSE PLAINTIFFS IRREPARABLE HARM

Defendants repackage many of their same arguments related to standing in their irreparable harm analysis, but fare no better here. Defendants claim Plaintiffs cannot establish irreparable harm because the 2016 Rule "[P]laintiffs prefer" was vacated in relevant part in *Franciscan Alliance* and would not control even if the 2020 Rule were invalidated. Opp. at 24–25. As set forth above, Defendants' use of *Franciscan Alliance* is a red herring: this case is irrelevant to Plaintiffs' ability to establish harm and injury capable of being redressed.

Defendants also claim that Plaintiffs' alleged harms from the 2020 Rule are speculative, Opp. at 24–25, but as set forth above, they are actual, imminent, and concrete. *See supra. V.A.* Defendants even claim that Plaintiffs' allegations of marginalization, "distress, anxiety, discomfort and humiliation" constitute nothing more than mere "subjective feelings of disagreement and unhappiness with a federal regulation." Opp. at 27. This framing—which highlights Defendants' animus towards Plaintiffs and the rest of the LGBTQ community—is belittling, but not surprising; Defendants' failure to consider the harm to LGBTQ individuals in enacting the 2020 Rule seemingly infects the way it views Plaintiffs' allegations of irreparable harm. Plaintiffs' Declarations detail the extraordinary emotional distress, anxiety, fear, and humiliation the 2020 Rule has already caused and will continue to cause—irreparable harms that go far beyond mere "disagreement" and "unhappiness." *See* Walker Decl. ¶¶ 50, 68–73, 75–76,

78, 80, 82–83, 85, 87–89; Gentili Decl. ¶¶ 43, 55, 58–67, 70–72.  Further, Defendants'

arguments ignore the litany of other irreparable harm that the 2020 Rule has caused and will

cause if it goes into effect.  *See supra II.A*.  And while Defendants try to distinguish Plaintiffs'

authorities by claiming they are inapplicable because they involve individuals "who were singled

out for disfavored governmental treatment," it is simply disingenuous for Defendants to suggest

they are doing anything different here.

Finally, Defendants minimize Plaintiffs' fear of discrimination as a result of the 2020

Rule, which will lead them to avoid seeking medical care, because such fear is of "hypothetical

future harm."  Opp. at 27.  But Plaintiffs have established that based on their prior experiences

and the overwhelming evidence of systemic discrimination faced by LGBTQ individuals in

seeking health care, this fear is anything but hypothetical.  In fact, this harm is particularly

pernicious given the on-going COVID-19 pandemic.  Indeed, even where harms are based "in

part on mistaken belief, the Supreme Court has recognized injury where the plaintiff's harms are

based on 'the predictable effect of Government action on the decisions of third parties,' even if

such decisions are 'motivated by unfounded fears."  *New York*, No. 1:19-cv-07777-GBD, at Doc.

195, at p. 24.  Here, Plaintiffs' fears are well-founded, and the impact of the 2020 Rule on their

behavior and emotions is "more than predictable, [it is] are already occurring."  *Id*.; *see also*

Walker Decl. ¶¶ 76, 87–89; Gentili Decl. ¶¶ 58–59, 64–65, 70–72.[7]

## VII.  DEFENDANTS' ARGUMENTS ON THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST ARE MISPLACED

Defendants' unlawful conduct is not in the public interest.  Defendants argue that "there

is inherent harm to an agency in preventing it from implementing regulations that Congress has

---

[7] Notably, Defendants do not dispute the underlying premise of Plaintiffs' argument that if they succeed on their equal protection argument that would, *per se*, constitute irreparable harm.

found to be in the public interest to direct that agency to develop." Opp. at 28. This presumes that the government is faithfully executing the statutory directive. But, as Plaintiffs and the United States House of Representatives *amici* demonstrate, Defendants are acting in contravention of the statutory text, Congress's intent, and Supreme Court precedent. It is never in the public interest for "the Government [to] ham-handedly exercise[] its responsibilities." *Minney v. U.S. Office of Pers. Mgmt.,* 130 F. Supp. 3d 225, 236 (D.D.C. 2015).

Defendants also point to the "repeal of burdensome notice and tagline requirements, and HHS has documented that those notice requirements imposed hundreds of millions of dollars a year of unanticipated and unnecessary costs on covered entities and provided little, if any, benefit. 84 Fed. Reg. at 27,857–58." Opp. at 28. Here, however, Defendants fail to show how these purported harms outweigh the harm to LGBTQ individuals' health and lives, particularly during a global pandemic.

## VIII. NATIONWIDE RELIEF IS APPROPRIATE

The 2020 Rule's preamble repeatedly recites that uniform applicability, consistency, and predictability of the law were the driving forces behind Defendants' development of the rule. Yet in their Opposition, their mantra changed: nationwide, uniform action is not warranted here and instead, only a limited injunction should be considered. Opp. at 30. A limited injunction, however, will not address the entirety of the widespread, nationwide harms detailed in the record and declarations. And under its equitable authority, this Court has broad discretion to issue a nationwide injunction to remedy the wrongs Defendants committed in rescinding the 2016 Rule wholesale and replacing it with the discriminatory 2020 Rule.

Indeed, these broad powers are commonly applied in cases involving facial challenges to agency rules that are found to be unlawful. *See New York v. U.S. Dep't of Homeland Sec.*, 408 F. Supp. 3d 334, 351–53 (S.D.N.Y. 2019) (granting a nationwide injunction to enjoin rule

establishing new criteria for applying to become a citizen); *Make the Rd. New York v. Cuccinelli*, 419 F. Supp. 3d 647, 668 (S.D.N.Y. 2019) (same); *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 677–78 (S.D.N.Y. 2019) (granting a nationwide injunction to prevent the government from including a citizenship question on the 2020 census questionnaire); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 438 (E.D.N.Y. 2018) (granting a nationwide injunction to prevent the nationwide rescission of DACA because "there is a strong federal interest in the uniformity of federal immigration law" and a more limited injunction "would likely create administrative problems for the Defendants."). More curiously, Defendants' Opposition fails to address the Supreme Court's recent affirmance of a nationwide injunction where the agency's rescission of a prior rule was found to be unlawful. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. at 1913 (finding agency's attempt to terminate Deferred Action for Childhood Arrivals (DACA) was improper under the APA).

Here, a nationwide injunction is both necessary and appropriate given the immediate and irreparable harm to Plaintiffs and the LGBTQ community if the 2020 Rule goes into effect. First, the federal government is itself a healthcare provider, and its reach is nationwide. Plaintiff Walker obtains her healthcare from Veterans Health Administration, and as detailed in her Declaration, has suffered past discrimination at the VA. Walker Decl. ¶¶ 68–73, 78. Second, Plaintiff Gentili travels for work, often to states and localities that lack non-discrimination protections for TGNCNB individuals, and health emergencies (and the stigma imparted by the government's imprimatur on discrimination) do not observe any geographic boundary. Gentili Decl. ¶¶ 58, 64–65. Finally, there is nothing speculative about both Plaintiffs' detailed, extensive, shocking, and egregious mistreatment by health care providers in the past, and the

2020 Rule deprives them of any federal government remedial protections against discrimination by covered hospitals, providers, and insurers throughout the nation.

Defendants casually suggest that if the 2020 Rule is enjoined, health care providers may forego federal funds to avoid compliance with Section 1557 altogether. Opp. at 13. Aside from being an admission that the 2020 Rule gives covered entities a blank check to deny treatment to LGBTQ individuals, Defendants cite no evidence to support this.

Defendants further urge the Court to deny the instant motion on the basis that there are challenges pending to the 2020 Rule in other courts, Opp. at 29–30, but do not cite a single case to support this position. Courts routinely enter simultaneous nationwide injunctions to halt unlawful agency action. This can be seen in the nationwide injunctions with respect to this administration's transgender military ban (*see Stockman v. Trump*, No. EDCV 17-1799, 2017 WL 9732572, at *16 (C.D. Cal. Dec. 22, 2017); *Karnoski v. Trump*, No. C17-1297-MJP, 2017 WL 6311305, at *10 (W.D. Wash. Dec. 11, 2017); *Stone v. Trump*, 280 F. Supp. 3d 747, 769 (D. Md. 2017); *Doe 1 v. Trump*, 275 F. Supp. 3d 167, 216–17 (D.D.C. 2017)), its efforts to insert a citizenship question on the census (*see Kravitz v. U.S. Dep't of Commerce*, 366 F. Supp. 3d 681, 755 (D. Md. 2019); *State v. Ross*, 358 F. Supp. 3d 965, 1050–51 (N.D. Cal. 2019); *New York*, 351 F. Supp. 3d at 676–77, and its rescission of DACA (*see Batalla Vidal*, 279 F. Supp. 3d at 437–38; *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1048–49 (N.D. Cal. 2018)). If unlawful conduct causes widespread harm, prompting numerous plaintiffs to simultaneously sue across the country, broader relief would be even *more* appropriate.

Defendants also point to the 2020 Rule's severability provision as a reason for this Court to sever and enjoin only portions of the 2020 Rule. Opp. at 30. Such provisions, however, are

"an aid merely; not an inexorable command." *New York*, 414 F. Supp. at 577 (quoting *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2319 (2016)). Defendants offer no argument as to why any other portion of the 2020 Rule should remain in effect, other than to argue that HHS intended the 2020 Rule to be severable and points to the repeal of "costly notice-and-tagline provisions relating to language access." Opp. at 30. Severability is improper under these circumstances. Plaintiffs have identified numerous ways in which passage of the 2020 Rule violated the APA. "In these circumstances, a decision to leave standing isolated shards of the Rule that have not been found specifically infirm would ignore the big picture: that the rulemaking exercise here was sufficiently shot through with glaring legal defects as to not justify a search for survivors." *New York*, 414 F. Supp. 3d at 577.

## CONCLUSION

This country is in the midst of a health crisis and Defendants are attempting to make it harder—not easier—for Plaintiffs to access necessary care. Defendants have issued a rule that is inconsistent with Supreme Court precedent, targets vulnerable populations with health care discrimination during a pandemic health crisis, and is not supported by any rational justification or evidence. Defendants have not defended this conduct on its actual terms, but rather sidestepped the factual and legal issues implicated by Plaintiffs' PI Motion. Plaintiffs have established all elements for a preliminary injunction and the Court should grant the PI Motion.

Dated: August 7, 2020                                         Respectfully submitted,


 */s/ Jason E. Starr*
Jason E. Starr                                               Edward J. Jacobs
(New York Bar No. 5005194)                                   (New York Bar No. 4168126)
*jason.starr@hrc.org*                                        *ejacobs@bakerlaw.com*
Sarah Warbelow*                                              Kathryn M. Zunno-Freaney
*sarah.warbelow@hrc.org*                                     (New York Bar No. 4572004)
Alphonso B. David                                            *kzunno@bakerlaw.com*

(New York Bar No. 4056230)
*alphonso.david@hrc.org*
**THE HUMAN RIGHTS CAMPAIGN**
1640 Rhode Island Ave, NW
Washington, DC 20036-3278
Telephone: (202) 628-4160
Facsimile: (202) 347-5323

*Counsel for Plaintiffs*
*Tanya Asapansa-Johnson Walker*
*and Cecilia Gentili*


\* *Motion for pro hac vice admission*
*forthcoming*

Michael A. Sabella
(New York Bar No. 4555504)
*msabella@bakerlaw.com*
Lauren E. Sternbach
(New York Bar No. 576974)
*lsternbach@bakerlaw.com*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111-0100
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Joshua D. Rovenger (*pro hac vice*)
*jrovenger@bakerlaw.com*
**BAKER & HOSTETLER LLP**
Key Tower, 127 Public Square,
Suite 2000
Cleveland, OH 44114-1214
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

Katrina M. Quicker (*pro hac vice*)
(Georgia Bar No. 590859)
*kquicker@bakerlaw.com*
Ryan E. Harbin (*pro hac vice*)
(Georgia Bar No. 370658)
*rharbin@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, NE, Suite 2400
Atlanta, GA 30309-7676
Telephone: (404) 459-0050
Facsimile: (404) 459-5734

*Counsel for Plaintiffs Tanya Asapansa-*
*Johnson Walker and Cecilia Gentili*

**Appendix A**

- Vacate from the 2020 Rule and/or enjoin application of the changes summarized in I.B.(1)a. *Elimination of Overbroad Provisions Related to Sex and Gender Identity*, 85 Fed. Reg. 37,160 at 161–62, to the interpretation of 42 U.S.C. 18116, and any provision of 42 C.F.R. Parts 438, 440, and 460 and 45 C.F.R. Parts 86, 92, 147, 155, and 156.

- Vacate from the 2020 Rule and/or enjoin application of the changes summarized in I.B.(1)c. *Elimination of Unnecessary or Duplicative Language on Civil Rights Enforcement*, 85 Fed. Reg. at 37,162, to the interpretation of 42 U.S.C. 18116, and any provision of 42 C.F.R. Parts 438, 440, and 460 and 45 C.F.R. Parts 86, 92, 147, 155, and 156.

- Vacate from the 2020 Rule and/or enjoin application of the changes summarized in I.B.(1)d, *Elimination of Unnecessary Regulatory Burdens*, 85 Fed. Reg. at 37,162, to the interpretation of 42 U.S.C. 18116, and any provision of 42 C.F.R. Parts 438, 440, and 460 and 45 C.F.R. Parts 86, 92, 147, 155, and 156, insofar as it removes the provision of health insurance from the definition of "health program or activity."

- Vacate from the 2020 Rule and/or application of I.B(2)b. *CMS*, 85 Fed. Reg. at 37,162, to the interpretation of 42 U.S.C. 18116, and any provision of 42 C.F.R. Parts 438, 440, and 460 and 45 C.F.R. Parts 86, 92, 147, 155, and 156.

- Vacate from the 2020 Rule and/or enjoin application of I.C. *Summary of the Costs and Benefits of the Major Provisions,* 85 Fed. Reg. at 37,162–63, to the interpretation of 42 U.S.C. 18116, and any provision of 42 C.F.R. Parts 438, 440, and 460 and 45 C.F.R. Parts 86, 92, 147, 155, and 156.

- Vacate from the 2020 Rule and/or enjoin application of the change summarized in III.B.(1), *Proposed Repeal of Definitions in § 92.4 of the 2016 Rule*, repealing section 92.4 of the 2016 Rule, and enjoining the change to the interpretation of 42 U.S.C. 18116, and any provision of 42 C.F.R. Parts 438, 440, and 460 and 45 C.F.R. Parts 86, 92, 147, 155, and 156.

- Vacate from the 2020 Rule and/or enjoin application of the changes summarized in III.B.(3), *Scope of Application in Proposed § 92.3; Repeal of §92.208,* insofar as it removes health insurance from the scope of the Rule, insofar as it otherwise removes protections from the 2016 Rule on the basis of sex stereotyping, gender identity, or sexual orientation, 85 Fed. Reg. 37,160 at 172–174.

- Vacate from the 2020 Rule and/or enjoin application of the changes summarized in IIII.B.(4), *Nondiscrimination Requirements in Proposed Revisions to § 92.2, and Repeal of § 92.8(d), 92.101, 92.206, 92.207, 92.209, and Appendix B of the 2016 Rule*, insofar as it repeals § 92.101, 92.206, 92.207, and 92.209, and insofar as it otherwise removes protections from the 2016 Rule on the basis of sex stereotyping, gender identity, or sexual orientation, 85 Fed. Reg. 37,160 at 177–201.

- Vacate from the 2020 Rule and/or enjoin application of the changes summarized in III.B. (6), *Enforcement Mechanisms in Proposed § 92.6, and Repeal of §§ 92.6, 92.7, 92.8, 92.101, 92.301, 92.302, 92.303, and Appendices A and C of the 2016 Rule*, insofar as it repeals §§ 92.301(b), 92.302(d), 92.303(d), and insofar as it otherwise removes protections from the 2016 Rule on the basis of sex stereotyping, gender identity, or sexual orientation, 85 Fed. Reg. 37,160 at 202–204.

- Vacate from the 2020 Rule and/or enjoin application of the changes summarized in III.E, *Conforming Amendments to CMS Regulations*, insofar as it removes protections from the 2016 Rule on the basis of sex stereotyping, gender identity, or sexual orientation, 85 Fed. Reg. 37,160 at 218–221.

- Vacate from the 2020 Rule and/or enjoin application of the changes insofar as the Rule otherwise removes or limits protections on the basis of sex stereotyping, gender identity, or sexual orientation.

- Enjoins the Department's interpretation excluding "gender identity" and "sexual orientation" from the definition of "on the basis of sex" in 42 U.S.C. 18116, and as applied to any provision of 42 C.F.R. Parts 438, 440, and 460 and 45 C.F.R. Parts 86, 92, 147, 155, and 156.