UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------x
TANYA ASAPANSA-JOHNSON
WALKER,

              Plaintiff,

    -against-

ROBERT F. KENNEDY, JR., in his
official capacity as the Secretary of the
United States Department of Health and
Human Services, and UNITED STATES
DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

              Defendants.
----------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 20-CV-2834 (FB) (VMS)

*Appearances:*
*For the Plaintiff:*
JASON E. STARR
Human Rights Campaign Foundation
1640 Rhode Island Avenue, NW
Washington, DC 20036-3278

EDWARD J. JACOBS
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111-0100

*For the Defendants:*
LIAM C. HOLLAND
United States Department of Justice
Civil Division, Federal Programs Branch
Washington, DC 20005

**BLOCK, Senior District Judge:**

    Tanya Asapansa-Johnson Walker seeks judicial review of a 2020 rulemaking

("the 2020 Rule") by the United States Department of Health and Human Services

("HHS").   HHS moves to dismiss Walker's complaint as moot in light of a 2024

rulemaking ("the 2024 Rule") that ostensibly replaced the 2020 Rule. Because HHS is currently subject to nationwide injunctions preventing the 2024 Rule from taking effect, the Court concludes that the legality of the 2020 Rule remains a live controversy and, accordingly, denies HHS's motion to dismiss.

# I

Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), makes it unlawful for any healthcare program that either receives federal funds or is administered by a federal agency to discriminate on any "ground prohibited under . . . title IX of the Education Amendments of 1972." 42 U.S.C. § 18116(a). Title IX, in turn, prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681(a). HHS has repeatedly attempted, without success, to implement this statutory prohibition.

## A. The 2016 Rule

In 2016, HHS finalized a rulemaking ("the 2016 Rule") generally requiring entities covered by the rule to "provide individuals equal access to its health programs or activities without discrimination on the basis of sex." Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375, 31,471 (May 18, 2016) (codified at 45 C.F.R. § 92.206). The 2016 Rule provided that "[o]n the basis of sex includes, but is not limited to, discrimination on the basis of pregnancy, false pregnancy, termination of pregnancy, or recovery therefrom,

childbirth or related medical conditions, sex stereotyping, and gender identity."
*Id.* at 31,467 (codified at 45 C.F.R. § 92.4).

A few months after the 2016 Rule took effect, a district court in Texas held
that Title IX "unambiguously prevented discrimination [only] on the basis of the
biological differences between males and females," and that the rule's "expanded"
definition "exceeds the grounds incorporated by Section 1557." *Franciscan All.,
Inc. v. Burwell*, 227 F. Supp. 3d 660, 688-89 (N.D. Tex. 2016). The court
preliminarily enjoined HHS from enforcing the 2016 Rule's prohibition against
discrimination on the basis of gender identity. *See id.* at 696. Three years later,
it vacated "the unlawful portions" of the rule and remanded for "further
consideration." *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 945 (E.D.
Tex. 2019). On appeal, the Fifth Circuit "le[ft] the district court's vacatur of the
2016 Rule in effect" to ensure that another district court would not "breathe new
life" into the vacated portions of the rule. *Franciscan All., Inc. v. Becerra*, 47
F.4th 368, 375-77 (5th Cir. 2022).

## B.  The 2020 Rule

HHS began dismantling the 2016 Rule following the 2016 presidential
election. On June 14, 2019, it proposed the 2020 Rule "to repeal the novel
definition of 'sex' in the [2016 Rule]." Nondiscrimination in Health and Health
Education Programs or Activities, 84 Fed. Reg. 27,846, 27,856 (June 14, 2019).

The agency declined to substitute a different definition but noted that the Supreme Court had granted certiorari to address "whether Title VII's prohibition on discrimination on the basis of sex also bars discrimination on the basis of gender identity or sexual orientation." *See id.* at 27,855 & n.62 (citing *Bostock v. Clayton Cnty., Ga.*, 723 F. App'x 964 (11th Cir. 2018), *cert. granted*, 587 U.S. 960 (Apr. 22, 2019)). "Because Title IX adopts the substantive and legal standards of Title VII," it reasoned, "a holding by the U.S. Supreme Court on the definition of 'sex' under Title VII will likely have ramifications for the definition of 'sex' under Title IX." *Id.* at 27,855.

That holding came a year later. Writing for a majority of six, Justice Gorsuch assumed, for the sake of argument, that Title VII's prohibition on discrimination "because of . . . sex," 42 U.S.C. § 2000e-2(a)(1), "refer[s] only to biological distinctions between male and female." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 655 (2020). He nevertheless found it "impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id.* at 660.

Four days after *Bostock* was decided, HHS "finalize[d] its repeal of § 92.4 of the 2016 Rule without change." *See* Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37,160, 37,167 (June 19, 2020). The final rule's preamble repeatedly endorsed the United

4

State's position in *Bostock*, going so far as to state that "[t]he U.S. Attorney General and Solicitor General have persuasively argued that [Supreme Court precedent] does not elevate sexual orientation to a protected category using a sex stereotyping theory under Title VII, just as it fails to make gender identity a protected category under Title IX." *Id.* at 37,194; *see also id.* ("Additionally, as the Solicitor General has argued, distinctions made on the basis of sexual orientation are not necessarily based on stereotypes, as they may instead be based on moral or religious beliefs about sexual, marital, and familial relationships." (internal quotation marks omitted)). It completely failed to mention that the Supreme Court had rejected the government's position: "For an employer to discriminate against employees for being homosexual or transgender, the employer must intentionally discriminate against individual men and women in part because of sex. That has always been prohibited by Title VII's plain terms—and that should be the end of the analysis." *Bostock*, 590 U.S. at 662 (internal quotation marks omitted).

HHS refused requests to reconsider the 2020 Rule in light of *Bostock*. Accordingly, opponents of the rule filed several actions seeking judicial review under the Administrative Procedure Act ("APA"). *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, Case No. 20-CV-1630 (D.D.C. filed June 22, 2020); *Walker v. Azar*, Case No. 20-CV-2834 (E.D.N.Y. filed June 26,

2020); *Boston All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*, Case No. 20-CV-11297 (D. Mass. filed July 9, 2020); *New York v. U.S. Dep't of Health & Hum. Servs.*, Case No. 20-CV-5583 (S.D.N.Y. July 20, 2020). In addition to seeking to have the rule set aside as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(a), the plaintiffs in each of those cases sought a stay of its effective date and a preliminary injunction preventing its enforcement, *see id.* § 705.

This Court was the first to address the request for interim relief. On August 17, 2020—one day before the 2020 Rule was scheduled to take effect—it held that Walker had established standing, irreparable harm, and a likelihood of success on the merits of her claim that the rule had to be set aside under the APA. *See Walker*, 480 F. Supp. 3d 417, 425-30 (E.D.N.Y. 2020). With respect to the last requirement, the Court reasoned that the rule's repeal of the 2016 Rule was likely contrary to law because "the premise of the repeal was a disagreement with a concept of sex discrimination later embraced by the Supreme Court," *id.* at 429, and likely arbitrary and capricious because HHS had finalized the repeal "without addressing the impact of the Supreme Court's decision in *Bostock*," *id.* at 430 (citing *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983), for the proposition that agency can act

6

arbitrarily and capriciously if it has "entirely failed to consider an important aspect of the problem").

For those reasons, the Court stayed the repeal and preliminarily enjoined HHS from enforcing it. *See id.* "As a result," the Court noted, "the definitions of 'on the basis of sex,' 'gender identity,' and 'sex stereotyping' currently set forth in 45 C.F.R. § 92.4 will remain in effect." *Id.* It later expanded the stay and preliminary injunction to the 2020 Rule's repeal of 45 C.F.R. § 92.206 because that regulation "was, in essence, a specific implementation of the 2016 Rules' definition of sex discrimination." *Walker v. Azar*, 2020 WL 6363970, at *4 (E.D.N.Y. Oct. 29, 2020).

**C.     The 2024 Rule**

Another presidential election raised the possibility that further judicial review of the 2020 Rule would be unnecessary. On his first day in office, President Biden announced that the incoming administration would, based on *Bostock*, interpret other laws prohibiting sex discrimination to include discrimination based on gender identity and sexual orientation. *See* Exec. Order No. 13,988, § 1, 86 Fed. Reg. 7023 (Jan. 20, 2021). He then directed agency heads to review and, if necessary, replace any regulations inconsistent with that policy. *See id.*, § 2.

On May 25, 2021, HHS announced that, "consistent with the Supreme

7

Court's decision in *Bostock* and Title IX," it would immediately "interpret and enforce section 1557 of the Affordable Care Act prohibition on discrimination on the basis of sex to include: Discrimination on the basis of sexual orientation; and discrimination on the basis of gender identity." Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972, 86 Fed. Reg. 27,984, 27,984 (May 25, 2021). In addition, at the parties' joint request, the Court stayed this action to allow HHS to carry out President Biden's directive. *See* Elec. Order, *Walker v. Azar*, Case No. 20-CV-2834 (E.D.N.Y. Dec. 6, 2021).

HHS's effort to update the 2020 Rule in light of *Bostock* took nearly three years. On May 6, 2024, the agency published the final version of the 2024 Rule. *See* Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37,522 (May 6, 2024). Like the 2016 Rule, the new rule defines "[d]iscrimination on the basis of sex" to include sexual orientation, gender identity, and sex stereotypes. *Id.* at 37,699 (codified at 45 C.F.R. § 92.101(a)(2)).

Any hope that the 2024 Rule would resolve the issue was short-lived. The rule was scheduled to take effect on July 5, 2024. On July 3, 2024, district courts in Mississippi, Florida, and Texas stayed that effective date to varying extents. The court in Mississippi stayed § 92.101 and enjoined HHS from enforcing it anywhere in the country insofar is it "extend[s] discrimination on the basis of sex

8

to include discrimination on the basis of gender identity." *Tennessee v. Becerra*, 739 F. Supp. 3d 467, 485 (S.D. Miss. 2024). The court in Florida imposed essentially the same stay and injunction "within Florida only." *Florida v. Dep't of Health & Hum. Servs.*, 739 F. Supp. 3d 1091, 1117 (M.D. Fla. 2024). The court in Texas stayed the 2024 Rule in its entirety—but did not separately enjoin HHS from enforcing it—"as to Texas and Montana," *Texas v. Becerra*, 739 F. Supp. 3d 522, 541 (E.D. Tex. 2024); it later concluded that the stay "should apply nationwide" but only as to certain portions of the rule, including § 92.101(a)(2), *see Texas v. Becerra*, 2024 WL 4490621, at *2 (E.D. Tex. Aug. 30, 2024).

**D.    Current Status**

Yet again, a presidential election changed the legal landscape. On January 20, 2025, President Trump issued an executive order declaring that "'[s]ex' is not a synonym for and does not include the concept of 'gender identity.'" Exec. Order 14,168, § 2(a), 90 Fed. Reg. 8615 (Jan. 20, 2025). He directed agencies to "remove all statements, policies, regulations, forms, communications, or other internal and external messages that promote or otherwise inculcate gender ideology," *id.*, § 3(e), and the Attorney General to "immediately issue guidance to agencies to correct the misapplication of the Supreme Court's decision in *Bostock v. Clayton County* (2020) to sex-based distinctions in agency activities," *id.*, § 3(f).

HHS has not yet proposed a repeal of the 2024 Rule. It has, however,

rescinded the 2021 notice that it would interpret § 1557 to include discrimination based on sexual orientation and gender identity. *See* Notification of HHS Documents Identified for Rescission, 90 Fed. Reg. 20,393., 20,394 (May 14, 2025). In addition, it has dropped the prior administration's appeals of the stays and injunctions preventing the 2024 Rule from taking effect. *See Tennessee v. Becerra v. Kennedy*, No. 24-60462 (5th Cir. Mar. 13, 2025) (dismissal order); *Texas v. Kennedy*, No. 24-40568 (5th Cir. Mar. 17, 2025) (dismissal order); *Florida v. Dep't of Health & Hum. Servs.*, No. 24-12826 (11th Cir. Apr. 3, 2025) (dismissal order). Indeed, the district court in Florida recently dismissed the entire challenge to the 2024 Rule as "moot and not capable of repetition within any reasonable time frame." *Florida v. Dep't of Health & Hum. Servs.*, No. 8:24-CV-1080 (M.D. Fla. June 9, 2025).

## II

"[T]o invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted). The Court previously concluded that Walker satisfied each of those requirements and, therefore, "ha[s] standing to seek a stay and a preliminary injunction" of the 2020 Rule. *Walker*, 480 F. Supp. 3d 417, 427 (E.D.N.Y. 2020).

It is not enough, however, "that a dispute was very much alive when suit was filed; the parties must continue to have a personal stake in the ultimate disposition of the lawsuit." *Chafin*, 568 U.S. at 172 (internal quotation marks omitted). "There is thus no case or controversy, and a suit becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* (internal quotation marks omitted). "But a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (internal quotation marks omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (internal quotation marks omitted).

In the context of judicial review under the APA, the general principles of mootness can be reduced to a "well-established principle of law": "[W]hen an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot." *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1226 (D.C. Cir. 2021) (internal quotation marks omitted). Even Walker concedes that she would be "ready and willing to accept that the 2024 Rules—*if in effect*—resolve this dispute." Pl.'s Mem. of Law at 13 (emphasis in original).

But that "if" carries dispositive weight because the 2024 Rule's definition of sex discrimination has never taken effect. The rule's preamble unequivocally

states that "[t]he 2020 Rule remains in effect, save for the parts enjoined or set aside by courts, until the effective date of this final rule." 89 Fed. Reg. at 37,523. The nationwide stays and injunctions indefinitely postpone that effective date.

As a result, the viability of the 2020 Rule remains a live issue. The Court has already concluded that the rule's repeal of parts of the 2016 Rule is likely arbitrary, capricious, and contrary to law. It has further explained the effect of that ruling: "the definitions of 'on the basis of sex,' 'gender identity,' and 'sex stereotyping' currently set forth in [the 2016 version] of 45 C.F.R. § 92.4 will remain in effect." *Walker*, 480 F. Supp. 3d at 430.

If the Court were to omit the qualifier "likely" and reach the same conclusion as a final matter, the repeal would be set aside. As a result, the 2016 Rule's definitions would remain in effect unless and until the 2024 Rule is allowed to take effect.

When the parties briefed the issue of mootness, only the nationwide stays and injunctions prevented that from happening. It is now clear, in light of HHS's preliminary response to President Trump's directive to exclude gender identity from the definition of sex discrimination, that the 2024 Rule will never take effect. Thus, as a practical matter, the 2020 Rule will remain in effect until it is superseded by something else.

The Court cannot speculate as to the substance of a hypothetical new rule, of

12

course, and agrees with HHS that it would only be subject to judicial review once promulgated. *See Alaska v. U.S. Dep't of Agric.*, 14 F.4th at 1229 (declining to "take the wholly novel action of reviewing regulations not yet promulgated" (internal quotation marks omitted). But unlike the regulation at issue in *Alaska*, the 2020 Rule remains in effect. Unless and until it is replaced, vacating its repeal of the 2016 Rule would leave the latter's definitions in place and would, therefore, afford Walker "effectual relief." *Chafin*, 568 U.S. at 172. Thus, as matters now stand, the case is not moot.

The Court acknowledges that the other challenges to the 2020 Rule have all been dismissed. The plaintiffs in *William-Walker Clinic* voluntarily dismissed their complaint—perhaps unwisely—shortly after the 2024 presidential election. *See* No. 20-CV-1630 (D.D.C. Nov. 18, 2024) (notice of voluntary dismissal). At about the same time, Judge Hellerstein of the Southern District of New York and Judge Saris of the District of Massachusetts dismissed the cases before them as moot. *See New York v. U.S. Dep't of Health & Hum. Servs.*, 2024 WL 5346057, at *1 (S.D.N.Y. Nov. 12, 2024); *Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*, 2024 WL 5346305, at *1 (D. Mass. Dec. 6, 2024). The Court respectfully disagrees with its colleagues' conclusions in those cases.

Judge Hellerstein relied on *American College of Pediatricians v. Becerra*,

2024 WL 3206579 (6th Cir. June 27, 2024), in which two medical associations challenged HHS's 2021 notice that it would interpret § 1557 to prohibit gender-identity discrimination notwithstanding the *Franciscan Alliance*'s vacatur of the 2016 Rule in that regard. *See id.* at *1. The Sixth Circuit concluded that the 2024 Rule would take effect "in a few weeks," leaving "[no] credible threat of enforcement of the old rules in the meantime." *Id.* at *1-*2. The circuit court did not mention the imminent nationwide stays and injunctions, which, in any event, did not cover the portion of the 2024 Rule at issue in the case before it. Although Judge Hellerstein acknowledged the "orders preliminary enjoining parts of the 2024 Rule," he reasoned that the plaintiffs in his case "ha[d] not identified any specific provision of the 2020 Rule that is still in force." *New York v. U.S. Dep't of Health & Hum. Servs.*, 2024 WL 5346057, at *1. As the Court has explained, however, the 2020 Rule's repeal of the 2016 Rule's definition of sex discrimination remains in effect as a result of those orders.

Judge Saris assumed, for the sake of argument, "that those preliminary orders mean that parts of the 2020 Rule remain in effect" but was "not persuaded that [she had] the power to reanimate the 2016 Rule's provisions." *Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth*, 2024 WL 5346305, at *1. She also expressed concern that "granting injunctive or declaratory relief in Plaintiffs' favor with respect to the aspects of the 2020 Rule that may remain in effect would not

14

plausibly alter Defendants' conduct because such relief would conflict with the nationwide orders issued by other district courts in response to the 2024 Rule." *Id.*

The Court has no such qualms. "Reanimating" parts of the 2016 Rule is the ineluctable result of setting aside the 2020 Rule's repeal, which the Court undoubtedly has the power—indeed, the obligation—to do if it concludes that the repeal violates the APA. *See* 5 U.S.C. § 706(2)(a) ("The reviewing court *shall* . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." (emphasis added). And that relief would not require HHS to disobey the nationwide stays and injunctions any more than those orders require it to disobey this Court's stay and injunction. The district court in *Tennessee v. Becerra* concluded that "[a] stay of the effective date of the . . . 2024 Rule will not harm either HHS or the public interest because it will merely preserve the status quo." 739 F. Supp. 3d at 484. The Court stayed the 2020 Rule for the same reason. *See Walker*, 480 F. Supp. 3d at 430 ("When the Supreme Court announces a major decision, it seems a sensible thing to pause and reflect on the decision's impact."). Since the 2020 Rule causes as much concern as the 2024 Rule, the appropriate status quo is reflected in the 2016 version of 45 C.F.R. §92.4—subject, of course, to *Franciscan Alliance*'s vacatur.

With the dismissal of the other cases challenging the 2020 Rule, only Walker's remains. If the Court were to conclude that her case is moot, it would have to lift the stay and dissolve the preliminary injunction, thus allowing that rule's repeal of the 2016 Rule's definition of sex discrimination to take effect.

But Walker argues that the repeal is unlawful, and the Court has tentatively agreed. So long as the 2020 Rule remains in effect, her challenge is not moot.

### III

As the Court was preparing to sign this memorandum and order, the Supreme Court rendered two decisions with potential implications for this case. On June 18, 2025, it decided *United States v. Skrmetti*, ___ S. Ct. ___, 2025 WL 1698785 (U.S. June 18, 2025), holding that a Tennessee statute prohibiting healthcare providers from providing gender-affirming treatment to transgender minors did not constitute sex discrimination because "neither [the plaintiffs'] sex nor [their] transgender status is the but-for-cause of [their] inability to obtain testosterone." *Id.* at *12. Since the case was brought under the Equal Protection Clause, the Court did not address the applicability of *Bostock* to Title IX. *See id.* ("We have not yet considered whether *Bostock*'s reasoning reaches beyond the Title VII context, and we need not do so here.").

Then, on the last day of its term, the Supreme Court held that injunctions "asserting the power to prohibit enforcement of a law or policy against *anyone* . . .

likely exceed the equitable authority that Congress has granted to federal courts." *Trump v. CASA, Inc.*, ___ S. Ct. ___, 2025 WL 1773631, at *4 (U.S. June 27, 2025). It directed the lower courts that had issued the preliminary injunctions at issue to "move expeditiously" to make their injunctions "[no] broader than necessary to provide complete relief to each plaintiff with standing to sue." *Id.* at *15. It was careful to note, however, that "[n]othing we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate agency action." *Id.* at *9 n.10.

*Skrmetti* will play an important role in this Court's assessment of the merits of Walker's challenge to the 2020 Rule, but *CASA* has a more immediate impact. First, it requires the Court to restrict its preliminary injunction to the parties to the case. Second, the district court in *Tennessee v. Becerra* will no doubt reach the same conclusion and limit its nationwide injunction preventing enforcement of the 2024 Rule.

As the Court has previously explained, however, a stay pursuant to the APA and a preliminary injunction "embody distinct concepts." *Walker*, 480 F. Supp. 3d at 427. "A stay halts or postpones some portion of the proceeding, or temporarily divests an order of enforceability," while "an injunction is a judicial process or mandate operating *in personam*; that is, it is directed at someone, and governs that party's conduct." *Id.* at 427-28 (cleaned up). Judge Cogan recently

made a similar point in the context of orders of removal: "Orders pursuant to 5 U.S.C. § 706(2) set aside unlawful agency actions without foreclosing future agency actions. These orders are different in nature from injunctions, which prohibit an agency from taking a certain action at all, ever." *Haitian Evangelical Clergy Ass'n v. Trump*, 2025 WL 1808743, at \*7 (E.D.N.Y. July 1, 2025).

Thus, *CASA* does not require the Court to reconsider its stay of the 2020 Rule. Nor does it require the district court in *Tennessee v. Becerra* to reconsider its stay of the 2024 Rule. In any event, as explained above, the current administration would not enforce the 2024 Rule even if were allowed to take effect.

In sum, neither *Skrmetti* nor *CASA* changes the fact that the 2024 Rule has not replaced the 2020 Rule. While the Supreme Court's latest pronouncements may have other impacts on this case, they do not detract from the Court's conclusion that Walker's challenge is not moot.

## IV

The executive and judicial branches have been engaged in a decade-long debate over whether Title IX—and, by extension, § 1557—prohibits discrimination based on sexual orientation and gender identity. The answer to that question lies ultimately, of course, with the Supreme Court.

It was the Court's sincere belief that the high court's statement in *Bostock*

that one cannot discriminate against people for being homosexual or transgender without "intentionally discriminat[ing] against individual men and women in part because of sex," 590 U.S. at 662, at least pointed to a resolution of the issue. Other courts agreed.  *See A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023) (holding that assigning school bathrooms based on biological sex violated Title IX and noting that "*Bostock* thus provides useful guidance here, even though the particular application of sex discrimination it addressed was different"); *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023) ("The Court [in *Bostock*] held that discrimination 'because of' sexual orientation is a form of sex discrimination under Title VII.  We conclude that the same result applies to Title IX."); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616-17 (4th Cir. 2020) (applying *Bostock* in a Title IX case to conclude that a school board's policy "excluded [a transgender student] from the boys restrooms 'on the basis of sex'").

Other courts, however, have relied on differences between Title VII and Title IX to conclude that *Bostock* did not govern interpretation of the latter.  *See Tennessee v. Becerra*, 739 F. Supp. at 479 ("*Bostock*'s ruling concerning Title VII does not apply to Title IX because Congress used different causation language in Title IX ("on the basis of sex") and Title VII ("because of ... sex").").  Still others have used formal logic.  *See Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791,

808–09 (11th Cir. 2022) ("While *Bostock* held that discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex, [t]his appeal centers on the converse of that statement—whether discrimination based on biological sex necessarily entails discrimination based on transgender status.   It does not." (citation and internal quotation marks omitted)).

Unfortunately, *Skrmetti* did not resolve the debate.   The Court will eventually have to rejoin the fray and decide, based on *Bostock*, *Skrmetti*, and any other binding or persuasive authorities—as well as whatever analytical abilities it has acquired over the course of more than thirty years on the bench—whether § 1557 requires HHS to recognize discrimination based on sexual orientation and/or gender identity as prohibited forms of sex discrimination.   Its answer will almost certainly not be the final word on the matter.

But those are issues for a later date.   For now, the Court need only decide whether Walker's challenge to the 2020 Rule is moot.   For the foregoing reasons, it concludes that it is not.

Accordingly, HHS's motion to dismiss is denied. The stay of the 2020

Rule's repeal of the 2016 versions of 45 C.F.R. §§ 92.4 and 206.206 remains in

effect. The Court clarifies, however, that HHS is preliminarily enjoined from

enforcing the repeal only insofar as it would deprive Walker of any right, benefit,

or remedy under those provisions.

**SO ORDERED.**


    /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 8, 2025