UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

TANYA ASAPANSA-JOHNSON
WALKER,

                        *Plaintiff*,

      -against-                            Case No. 20-cv-2834 (FB) (VMS)

ROBERT F. KENNEDY, JR., in his
official capacity as the Secretary of the
United States Department of Health
and Human Services, and UNITED
STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

                        *Defendants*.

---------------------------------------------------------X

## AMICUS CURIAE BRIEF OF CATHOLIC MEDICAL ASSOCIATION IN SUPPORT OF DEFENDANTS

| | |
|---|---|
| Edward T. Mechmann | Matthew S. Bowman* |
| 488 Madison Avenue | Alliance Defending Freedom |
| New York, NY 10022 | 440 First Street NW, Suite 600 |
| Telephone: (646) 794-2807 | Washington, DC 20001 |
| Facsimile: (212) 421-1801 | Telephone: (202) 393-8690 |
| Email: EMechLaw@gmail.com | Facsimile: (202) 347-3622 |
| | Email: mbowman@ADFlegal.org |
| | *Admitted pro hac vice* |

*Counsel for Amicus Curiae Catholic Medical Association*

# TABLE OF CONTENTS

Table of Authorities ............................................................................................ iii

Statement of Identification and Interest of Amicus Curiae .......................................... 1

Introduction .......................................................................................................... 2

Background ........................................................................................................... 3

    I.     2016 Rulemaking ......................................................................................... 3

    II.    The *Franciscan Alliance* Injunction and Vacatur ............................................. 4

    III.   2020 Rulemaking ......................................................................................... 5

    IV.   This Litigation ............................................................................................. 6

    V.    2024 Rulemaking ......................................................................................... 7

    VI.   Litigation Over the 2024 Rule ...................................................................... 8

    VII.  Current Status of the Rule .......................................................................... 9

Argument .............................................................................................................. 9

    I.     The Court can no longer grant relief against the 2020 Rule's changes to the 2016 Rule, because the 2024 Rule overwrote the code ............................... 9

    II.    HHS did not act arbitrarily in not withdrawing the 2020 Rule because the APA prohibited it from doing so ................................................................. 11

    III.   *Franciscan Alliance* vacated the 2016 Rule's gender-identity mandate to the extent included in sex-stereotypes discrimination .................................... 13

Conclusion ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Akiachak Native Community v. U.S. Department of Interior*,
    827 F.3d 100 (D.C. Cir. 2016) ...................................................................................... 9

*Alaska v. USDA*,
    17 F.4th 1224 (D.C. Cir. 2021) ..................................................................................... 9

*American Hospital Association v. Bowen*,
    834 F.2d 1037 (D.C. Cir. 1987) .................................................................................. 11

*Asapansa-Johnson Walker v. Azar*,
    480 F. Supp. 3d 417 (E.D.N.Y. 2020) ................................................... 3, 5, 10, 15

*Asapansa-Johnson Walker v. Kennedy*,
    790 F. Supp. 3d 138 (E.D.N.Y. 2025) ..................................................................... 2, 7

*Bostock v. Clayton County*,
    590 U.S. 644 (2020) .................................................................................. 3, 6, 11–13

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
    140 S. Ct. 1891 (2020) ................................................................................................ 13

*EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*,
    884 F.3d 560 (6th Cir. 2018) ...................................................................................... 7

*Florida v. Department of Health and Human Services*,
    739 F. Supp. 3d 1091 (M.D. Fla. 2024) ................................................................... 8

*Florida v. Department of Health and Human Services*,
    No. 8:24-cv-1080 (M.D. Fla.), *appeal docketed* No. 25-12095 (11th Cir.) ...... 2, 8

*Franciscan Alliance, Inc. v. Azar*,
    414 F. Supp. 3d 928 (N.D. Tex. 2019) .......................................... 3, 5, 6, 13–15

*Franciscan Alliance, Inc. v. Burwell*,
    227 F. Supp. 3d 660 (N.D. Tex. 2016) .............................................. 4–7, 13, 14

*Franciscan Alliance, Inc. v. Burwell*,
    No. 7:16-cv-00108 (N.D. Tex.) ............................................................... 4, 5, 14

*Humane Society of the United States v. USDA*,
    41 F.4th 564 (D.C. Cir. 2022) ............................................................... 3, 11, 12

*National Ass'n of Home Builders v. Defenders of Wildlife,*
	551 U.S. 644 (2007) ............................................................................................... 13

*Tennessee v. Becerra,*
	739 F. Supp. 3d 467 (S.D. Miss. 2024) ............................................................... 9

*Tennessee v. Kennedy,*
	No. 1:24cv161, 2025 WL 2982069 (S.D. Miss. Oct. 22, 2025).................. 2, 9–11

*Texas v. Becerra,*
	739 F. Supp. 3d 522 (E.D. Tex. 2024), *modified on reconsideration*, No.
	6:24-cv-211, 2024 WL 4490621 (E.D. Tex. Aug. 30, 2024)................................ 8

*Whitman-Walker Clinic, Inc. v. Department of Health and Human Services,*
	485 F. Supp. 3d 1 (D.D.C. 2020) .................................................................. 6, 7

**<u>Statutes</u>**

5 U.S.C. § 551.................................................................................................................11

5 U.S.C. § 553.................................................................................................................11

42 U.S.C. § 18116(c) ....................................................................................................... 3

**<u>Other Authorities</u>**

Nondiscrimination in Health Programs and Activities,
	81 Fed. Reg. 31375 (May 18, 2016) (2016 Rule) ..................................... *passim*

Nondiscrimination in Health and Health Education Programs or Activities,
	Delegation of Authority,
	85 Fed. Reg. 37160 (June 19, 2020) (2020 Rule).................................... *passim*

Nondiscrimination in Health Programs and Activities,
	89 Fed. Reg. 37522 (May 6, 2024) (2024 Rule) ...................................... 2, 7–11

**STATEMENT OF IDENTIFICATION AND INTEREST OF AMICUS CURIAE[1]**

Amicus Curiae is the Catholic Medical Association (CMA), a non-profit organization incorporated in Virginia. CMA is a membership organization of Catholic healthcare professionals, and is the largest association of Catholic individuals in healthcare. CMA has approximately 2,700 members nationwide in all fields of practice, including multiple guilds throughout the State of New York. CMA is a physician-led community of healthcare professionals that informs, organizes, and inspires its members in steadfast fidelity to the Catholic Church's teachings. CMA strives to uphold the principles of the Catholic faith in the science and practice of medicine. Most of CMA's members are regulated by Section 1557 of the Affordable Care Act (ACA) and its implementing regulations, because they receive, or work at entities that receive, or own medical practices that receive, federal financial assistance from the U.S. Department of Health and Human Services (HHS) and are principally engaged in providing healthcare.

CMA members care for all people—without discrimination on the basis of sex or any other characteristic prohibited by law. They believe that a patient with medical needs should be given the best care possible, regardless of the patient's identity. But CMA members cannot harm patients or lie to them. Based on their medical, ethical, and religious beliefs, CMA and its members hold the position that gender-transition procedures are unethical and dangerous, and gender ideology is inconsistent with human dignity. Providing, facilitating, referring for, or endorsing gender-transition efforts, or speaking in ways that affirm the validity of supposed gender transition or gender ideology, violate the core beliefs of CMA's members.

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than amicus and its counsel made any monetary contribution intended to fund the preparation or submission of this brief.

1

CMA's members hold principled positions contrary to the requirements of the 2016 and 2024 Section 1557 regulations not to discriminate on the basis of gender identity, and to the requirements not to discriminate on the basis of sex stereotypes to the extent that ban prohibits discrimination on the basis of gender identity.

It is within CMA's mission to advocate and litigate for its members' right to the conscientious and faithful practice of medicine. On behalf of its members, CMA challenged the 2024 Section 1557 Rule prohibiting gender identity discrimination. *Fla. v. HHS*, No. 8:24-cv-1080 (M.D. Fla. filed May 6, 2024), *appeal docketed* No. 25-12095 (11th Cir.). Because most of CMA's members are regulated under Section 1557, they benefitted from the ruling in the Southern District of Mississippi, so far as it goes, vacating the 2024 Rule's "gender identity" language. *Tennessee v. Kennedy*, No. 1:24-cv-161, 2025 WL 2982069 (S.D. Miss. Oct. 22, 2025). To the extent this Court grants Plaintiff's request to restore a gender-identity nondiscrimination requirement in the Section 1557 regulations, CMA's members would be harmed.

## INTRODUCTION

This Court has lifted the stay in this case and scheduled summary judgment briefing. It is considering whether to vacate parts of the Section 1557 regulations issued in 2020, and thereby restore parts of the Section 1557 regulations issued in 2016. *Cf. Asapansa-Johnson Walker v. Kennedy*, 790 F. Supp. 3d 138, 147 (E.D.N.Y. 2025). But that relief is not available in this case, for three reasons.

First, the mechanism HHS used in 2024 to amend its Section 1557 rule negates the effect of modifying the 2020 Rule. The 2024 Rule fully repealed and replaced the portion of the code containing HHS's Section 1557 rule, and recent court orders have allowed that repeal-and-replace action go into effect. Whatever the 2020 Rule did—even if this Court vacates part of it—the 2024 Rule deleted

2

everything in the code and replaced it with new language. No action taken now against the 2020 Rule can have any effect on the regulation today.

Second, this Court concluded that HHS likely acted arbitrarily and capriciously between June 15–19, 2020, by not withdrawing the 2020 Rule in light of *Bostock v. Clayton County*, 590 U.S. 644 (June 15, 2020). *Asapansa-Johnson Walker v. Azar*, 480 F. Supp. 3d 417, 430 (E.D.N.Y. 2020). But the Administrative Procedure Act (APA) prohibited HHS from doing so without providing the public with a new round of notice and an opportunity to comment. *See Humane Soc'y of the United States v. USDA*, 41 F.4th 564, 575 (D.C. Cir. 2022). HHS could not have acted arbitrarily and capriciously by following the APA.

Third, this Court held that the 2016 Rule's prohibition on gender-identity discrimination through its "sex stereotypes" clause survived the vacatur order in *Franciscan Alliance, Inc. v. Azar*, 414 F. Supp. 3d 928 (N.D. Tex. 2019). *Asapansa-Johnson Walker*, 480 F. Supp. 3d at 427. This was incorrect. *Franciscan Alliance*'s vacatur included all gender-identity discrimination prohibitions from the 2016 Rule, including through sex stereotypes. There was no gender-identity nondiscrimination prohibition remaining in the 2016 Rule to restore by vacating the 2020 Rule.

## BACKGROUND

A background of the rulemaking process would be helpful in understanding the procedural complexities raised by this case.

### I.     2016 Rulemaking

Section 1557 of the ACA allows HHS to enact regulations to enforce its nondiscrimination requirements. 42 U.S.C. § 18116(c). No regulations existed until HHS issued final rules in May 2016. Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31375 (May 18, 2016) (2016 Rule). The 2016 Rule added a new part to volume 45 of the Code of Federal Regulations: Part 92. *Id.* at 31465.

3

That part included prohibitions on discrimination "on the basis of sex" at 45 C.F.R. § 92.101, and prohibitions on "hav[ing] or implement[ing] a categorical [insurance] coverage exclusion or limitation for all health services related to gender transition" at § 92.207(b). The rule also included definitions at § 92.4. "On the basis of sex" was defined to include discrimination on the basis of "sex stereotyping" and "gender identity," and "gender identity" and "sex stereotypes" were also defined. 81 Fed. Reg. at 31466–68. "Sex stereotypes" encompassed "expectations of how individuals represent or communicate their gender to others," "the expectation that individuals will consistently identify with only one gender and that they will act in conformity with the gender-related expressions stereotypically associated with that gender," and "gendered expectations related to the appropriate roles of a certain sex." *Id.* at 31468. The 2016 Rule also specified that covered entities must provide equal program access on the basis of "gender identity" and to "transgender individual[s]" on certain terms. *Id.* at 31471 (codifying 45 C.F.R. § 92.206.)

## II.     The *Franciscan Alliance* Injunction and Vacatur

Groups challenged the 2016 Rule in *Franciscan Alliance, Inc. v. Burwell*, No. 7:16-cv-00108 (N.D. Tex. filed Aug. 23, 2016). At the end of 2016, the court interpreted motions for summary judgment to include motions for preliminary relief and preliminarily stayed "the Rule's prohibition against discrimination on the basis of gender identity or termination of pregnancy." *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 696 (N.D. Tex. 2016). The court specified that it was rejecting the Rule's (and the Defendants') view that "sex stereotypes" encompassed gender-identity nondiscrimination. *Id.* at 689 n.28.

The *Franciscan Alliance* plaintiffs alleged they suffered injuries to their religious and procedural rights by the Rule requiring nondiscrimination on the basis of gender identity. *Id.* at 674–76. The plaintiffs' first amended complaint

4

specified that it encompassed the 2016 Rule's "sex stereotypes" language. No. 7:16-cv-00108 (N.D. Tex. Oct. 17, 2016), Dkt. No. 21. The state plaintiffs' motion for partial summary judgment and proposed order explicitly encompassed the "sex stereotypes" definition. No. 7:16-cv-00108 (N.D. Tex. Oct. 21, 2016), Dkt. Nos. 22 & 22-1.

Subsequently, *Franciscan Alliance* "converted" its preliminary injunction into vacatur. *Asapansa-Johnson Walker*, 480 F. Supp. 3d at 422 (citing *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928 (N.D. Tex. 2019)). *Franciscan Alliance* characterized its decision as adopting its previous reasoning. *Franciscan Alliance*, 414 F. Supp. 3d at 942–44 (repeating and adopting its previous analysis). *Franciscan Alliance* said it was vacating "the unlawful portions of the Rule." *Id.* at 945. In this context, the Court spoke broadly against gender-identity discrimination prohibitions in the rule: "Defendants now 'agree with Plaintiffs and the Court that the Rule's prohibitions on discrimination on the basis of gender identity and termination of pregnancy conflict with Section 1557 and thus are substantively unlawful under the APA.'" *Id.* at 946 (quoting No. 7:16-cv-00108 (N.D. Tex. Apr. 5, 2019), Dkt. No. 154. The state plaintiffs' motion for partial summary judgment encompassed sex stereotypes. No. 7:16-cv-00108 (N.D. Tex. Feb. 4, 2019), Dkt. No. 133 at 34. Likewise the religious challengers opposed encompassing gender identity within sex stereotypes and sought relief against any gender identity nondiscrimination mandate. No. 7:16-cv-00108 (N.D. Tex. Feb. 4, 2019), Dkt. Nos. 135-1 at 4, 136 at 24–27.

**III.    2020 Rulemaking**

The next administration changed its Section 1557 regulations in June 2020. HHS promulgated the rule by filing it on public inspection through the Office of the

5

Federal Register on June 12, 2020.[2] The document was scheduled to be published in the formal edition of the Federal Register on June 19, 2020.[3] On Monday, June 15, 2020, the U.S. Supreme Court issued *Bostock v. Clayton County*, 590 U.S. 644. Then, as scheduled, the final rule appeared in the June 19 edition of the Federal Register. Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37160 (June 19, 2020) (2020 Rule).

The 2020 Rule expressed agreement with *Franciscan Alliance*. 85 Fed. Reg. at 37168 & n.28 (citing the final and preliminary rulings). In the rule HHS acted by saying it was "[r]evis[ing] part 92 to read as follows," and then setting forth an entirely new version of Part 92. *Id.* at 37244. This language repealed and replaced the version of Part 92 created by the 2016 Rule. The 2020 Rule was structured differently than the 2016 Rule. It had no definitions section at § 92.4, and no equal program access section at § 92.206. Its prohibition of discrimination was located at § 92.2, not § 92.101. With respect to Title IX, § 92.2 said discrimination was prohibited simply on the basis of "sex." 85 Fed. Reg. at 37,244.

## IV. This Litigation

Plaintiffs here challenged the 2020 Rule and moved for a preliminary injunction. A similar case was filed in the district court in the District of Columbia. *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1 (D.D.C. 2020). This Court conceded that it "has no power to revive a rule vacated by another district court"

---

[2] Office of the Federal Register, Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, https://www.federalregister.gov/documents/2020/06/19/2020-11758/nondiscrimination-in-health-and-health-education-programs-or-activities-delegation-of-authority (choose "Public Inspection" tab on left) ("This PDF is FR Doc. 2020-11758 as it appeared on Public Inspection on 06/12/2020 at 4:15 pm.").

[3] https://public-inspection.federalregister.gov/2020-11758.pdf [perma.cc/6KHS-EHTG].

6

(referring to *Franciscan Alliance*), but concluded that *Franciscan Alliance* "did not address the concept of 'sex stereotyping' embodied in the 2016 Rule." *Asapansa-Johnson Walker*, 480 F. Supp. 3d at 430. Concluding that gender identity discrimination "necessarily implicates" sex-stereotyping discrimination, and that one "cannot discriminate on the basis of transgender status without imposing its stereotypical notions of how sexual organs and gender identity ought to align," this Court held that it could provide plaintiffs relief. *Id.* at 427 (quoting *EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 576 (6th Cir. 2018)).

This Court proceeded to "stay[ ] the repeal of the 2016 definition of discrimination on the basis of sex." *Id.* at 430. Despite stating that this Court had no power to revive gender-identity language vacated by *Franciscan Alliance*, and that redressability was limited to "sex stereotyping," this Court's order said that it not only kept in place the "sex stereotyping" language from § 92.4, but also the definitions of "gender identity" and "on the basis of sex." *Id.* at 430. The Court in *Whitman-Walker Clinic* issued a similar injunction. 485 F. Supp. 3d at 64.

In October 2020, this Court extended its order to encompass the repeal of the 2016 Rule's equal program access section at § 92.206. *Asapansa-Johnson Walker v. Azar*, No. 20-cv-2834-FBS-MG, 2020 WL 6363970, at *4 (E.D.N.Y. Oct. 29, 2020). In other respects, this Court and *Whitman-Walker Clinic* did not enjoin the 2020 Rule. Defendants withdrew their appeal after the 2020 election.

V.     **2024 Rulemaking**

This Court stayed this action in 2021, with all parties expecting new rulemaking. *Asapansa-Johnson Walker v. Kennedy*, 790 F. Supp. 3d 138, 142 (E.D.N.Y. 2025). As occurred in previous rulemakings, new Section 1557 rules did not issue until the final year of the four-year presidential term, and they were promptly enjoined in relevant respects.

7

The 2024 Rule was issued on May 6, 2024. Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37522. Although the 2024 Rule took a different ideological approach than the 2020 Rule, it used a similar technical mechanism to modify the regulatory code. The 2024 Rule fully repealed and replaced Part 92 of the code, declaring that it "[r]evise[d] part 92 to read as follows." 89 Fed. Reg. at 37692. As in 2020, what followed that phrase was a full replacement of Part 92 with a new regulatory structure. *Id.* The new Part 92 was also different from the 2016 Rule. Compare, for example, the tables of contents at 81 Fed. Reg. at 31465 with 89 Fed. Reg. at 37692, which are more extensive. The 2024 Rule included definitions at § 92.4, but no longer defined "gender identity," "sex stereotypes," or "on the basis of sex." 89 Fed. Reg. at 37693–96. Section 92.101 again prohibited nondiscrimination, but asserted there that discrimination was prohibited on the basis of "Gender identity" and, separately, "Sex stereotypes." *Id.* at 37699. Section 92.206 was a much more elaborate, eight-part section. *Id.* at 37700–01.

## VI. Litigation Over the 2024 Rule

In Texas, a court preliminarily stayed the 2024 Rule nationwide, but not entirely—the injunction ran only to "the Rule's interpretation of § 1557's prohibition on sex discrimination to include discrimination on the basis of gender identity." *Texas v. Becerra*, 739 F. Supp. 3d 522, 540 (E.D. Tex. 2024), *modified on reconsideration*, No. 6:24-cv-211, 2024 WL 4490621 (E.D. Tex. Aug. 30, 2024). The court later stayed and administratively closed the case. *Texas v. Becerra*, No. 6:24-cv-211-JDK (E.D. Tex. Apr. 17, 2025), Dkt. No. 52.

In Florida, a court stayed the 2024 Rule's discrimination "on the basis of sex" interpretation, but only in Florida. *Fla. v. HHS*, 739 F. Supp. 3d 1091, 1117 (M.D. Fla. 2024). The court later dismissed the case. *Fla. v. HHS*, No. 8:24-cv-01080-WFJ-TGW (M.D. Fla. June 5, 2025), Dkt. Nos. 71, 76.

Finally, in Mississippi, a court preliminarily stayed the 2024 Rule nationwide, but only "in so far as this final rule is intended to extend discrimination on the basis of sex to include discrimination on the basis of gender identity in the following regulations." *Tennessee v. Becerra*, 739 F. Supp. 3d 467, 486 (S.D. Miss. 2024). Later, that court vacated specific sections of the 2024 Rule nationwide, and again its order applied only "to the extent that they expand Title IX's definition of sex discrimination to include gender-identity discrimination." *Tennessee v. Kennedy*, 2025 WL 2982069, at *13. In all other respects, the Mississippi court left the 2024 Rule in place. The vacatur order's appeal deadline expired with no appeal.

## VII. Current Status of the Rule

The 2024 Rule is fully in effect, including its full repeal and replacement of Part 92 of 45 C.F.R., except to the extent certain sections identified by the Mississippi court included gender-identity discrimination—to that extent, those new parts were vacated.

## ARGUMENT

### I. The Court can no longer grant relief against the 2020 Rule's changes to the 2016 Rule, because the 2024 Rule overwrote the code.

It is not possible to grant Plaintiff the relief she seeks. The 2024 Rule overwrote the entire code at Part 92, and recent rulings left that replacement in effect. There is no 2020 Rule or 2016 Rule left to modify.

It is a "well-settled principle of law" that "when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot." *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016) (quoting *Alaska v. USDA*, 17 F.4th 1224, 1226 (D.C. Cir. 2021)). Plaintiff asks this Court to vacate the 2020 Rule to the extent it deleted definitions and language contained in the 2016 Rule. Plaintiff seems to hope that by

9

such an order, the 2016 language at §§ 92.4, 92.101, and 92.206 will "remain in effect," as this Court's preliminary injunction declared. *Asapansa-Johnson Walker*, 480 F. Supp. 3d at 430. But that result is not possible. The 2024 Rule fully repealed and replaced the entire code section that came before it, declaring that the agency was "[r]evis[ing] part 92 to read as follows," and setting forth an entirely new and self-contained Part 92. 89 Fed. Reg. at 37,692. The 2020 Rule used a similar mechanism. 85 Fed. Reg. at 37244. And the court in Mississippi did not vacate this aspect of the 2024 Rule. It allowed the repeal-and-replace action of the 2024 Rule to go into effect. It simply vacated the gender identity portions from that new version of Part 92. *Tennessee v. Kennedy*, 2025 WL 2982069, at *13. In other words, *Tennessee v. Kennedy* did not vacate the 2024 Rule's statement that HHS was "[r]evis[ing] part 92 to read as follows." So nothing this Court does to the 2020 Rule will change what Part 92 says today.

Part 92 should not be conceived as if it contains a "gender identity" or "sex stereotypes" light switch that rules and court orders can simply flip on or off. But that is not how this rulemaking occurred. Rather than flipping a light switch, the 2024 Rule tore down and rebuilt the Section 1557 building contained in this part of the code. There is no gender-identity or sex-stereotypes nondiscrimination structure from 2016 or 2020 to toggle into an "on" position. If someone wishes to change how Part 92 handles gender-identity discrimination (or any other subject), a lawsuit against the 2020 Rule will do nothing. Tinkering with the 2020 Rule now is like editing old blueprints. It does not affect how the building functions today.

The details of the 2024 Rule also render Plaintiff's request for relief impossible. Take for example the 2020 Rule's repeal of the 2016 Rule's definitions of "on the basis of sex," "gender identity," and "sex stereotypes" in § 92.4. Vacating the 2020 Rule's deletions cannot restore definitions from 2016 because the 2024 Rule replaced § 92.4 and also provided no definitions of "on the basis of sex," "gender

10

identity," or "sex stereotypes." Even if the 2020 Rule had never happened, the 2024 Rule would leave none of these definitions in the code. Likewise § 92.206 is a far different code section under the 2024 Rule than the 2016 Rule. Vacating the 2020 Rule's changes would have no effect because the 2024 Rule replaced that section, and *Tennessee v. Kennedy*'s vacatur operated on the new version.

Ultimately, Plaintiff no longer suffers any injury from the 2020 Rule, because its changes are irrelevant. If the Plaintiff dislikes the language of Part 92 today, she cannot be helped by challenging the 2020 Rule—it has been overwritten.

## II. HHS did not act arbitrarily in not withdrawing the 2020 Rule because the APA prohibited it from doing so.

Even if relief against the 2020 Rule were possible, this Court was incorrect in concluding that HHS had the option of withdrawing the rule after the Supreme Court issued *Bostock*. That would have violated the Administrative Procedure Act.

An agency cannot repeal or withdraw a final rule without undergoing the notice-and-comment process required by the APA. 5 U.S.C. § 551(5), 553; *Am. Hospital Ass'n v. Bowen*, 834 F.2d 1037, 1044 (D.C. Cir. 1987). No one disputes that the 2016, 2020, and 2024 Rules, and any changes thereto, required notice and comment.

A rule becomes final so that changing it requires notice and comment when it is filed for public inspection by the Office of the Federal Register (OFR). The D.C. Circuit resolved this question in 2022 in *Humane Society*, 41 F.4th 564. There the USDA underwent notice-and-comment rulemaking to regulate show horses. *Id.* at 566. The agency finalized a rule that established independent inspectors to ensure horses were not "sored" before competition. *Id.* The agency placed the final rule on public inspection at OFR on January 19, 2017, and OFR scheduled it for publication in the Federal Register "in the coming days." *Id.* at 567. At the same time, the first Trump administration took office. Before the Federal Register had a chance to

11

publish the rule, the new administration withdrew it from the publication schedule, and no further action was taken. *Id.*

The Humane Society sued, contending that under the APA the agency could not withdraw the rule without a new round of notice and comment. The D.C. Circuit agreed. It explained that under the Federal Register Act—which governs the legal significance of actions taken by OFR—making a document available for public inspection is what "give[s] notice of the contents of the document to a person subject to or affected by it" and makes it "'valid' against the public at large." *Id.* at 569–70 (quoting 44 U.S.C. § 1507). Later "publication" in the Federal Register merely creates a "rebuttable presumption" that the prior, legally significant action of public inspection has occurred. *Id.* at 569 (quoting 44 U.S.C. § 1507). The "critical date" is not the date of "publication," but "the date a rule is filed for public inspection." *Id.* at 570. As a result, "agencies may repeal a rule made available for public inspection in the [OFR] only after complying with the APA's procedural requirements." *Id.* at 575.

Under *Humane Society* the APA prohibited HHS from withdrawing the 2020 Rule when this Court said HHS could have done so. HHS filed the rule for public inspection at OFR on Friday, June 12, 2020.[4] The Supreme Court issued *Bostock* on Monday, June 15, and this Court faulted HHS for not withdrawing the rule before it was published on June 19. But the rule was final and valid against the public the moment it went on public inspection at OFR on June 12. HHS could not withdraw it without a new round of notice and comment, and "withdrawing" it after June 12 would not have negated the final rule.

Consequently, the basis for this Court's preliminary injunction was incorrect. HHS cannot be deemed to have acted arbitrarily and capriciously for not

---

[4] *See* OFR, Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, *supra* n. 2.

withdrawing the 2020 Rule before June 19 after reading *Bostock*. Such an action would have violated the APA because no meaningful comment process could have been resolved in four days. An agency does not act arbitrarily or capriciously by choosing not to violate the law. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 673 (2007) (reversing an arbitrary and capricious holding where the agency had no discretion to act otherwise). And nothing HHS failed to do after June 12 can be used against the already-final rule. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1909, (2020) (rejecting *post hoc* evidence).

### III. *Franciscan Alliance* vacated the 2016 Rule's gender-identity mandate to the extent included in sex-stereotypes discrimination.

In its preliminary injunction opinion, this Court conceded it could not restore gender-identity discrimination prohibitions from the 2016 Rule that *Franciscan Alliance* had vacated. This Court also concluded that *Franciscan Alliance* did not vacate the 2016 Rule's prohibition on gender-identity discrimination to the extent it exists within the rule's prohibition on sex-stereotypes discrimination. Thus this Court held that relief was available to prevent the 2020 Rule from negating the 2016 Rule's gender-identity discrimination ban within its sex-stereotypes clause.

This analysis was incorrect. *Franciscan Alliance* vacated all of the gender-identity discrimination prohibitions in the 2016 Rule. As a result Plaintiff cannot receive relief in her attempt to protect gender-identity discrimination prohibitions eliminated by the 2020 Rule, since those had already been eliminated.

A closer look at *Franciscan Alliance* shows that it did not leave in place a ban on gender-identity discrimination through the 2016 Rule's sex-stereotypes clause. *Franciscan Alliance* specified that its relief ran broadly against the 2016 Rule's "prohibition against discrimination on the basis of gender identity." 227 F. Supp. 3d at 696; 414 F. Supp. 3d at 946 (rejecting the rule's "prohibitions on discrimination on the basis of gender identity"). This language encompassed all of the 2016 Rule's

13

gender-identity discrimination prohibitions—including under sex stereotypes. The 2016 Rule's sex-stereotypes definition explicitly includes "how individuals represent or communicate their gender," "identify[ing] with [ ] gender," "gender-related expressions," and "gendered expectations." 81 Fed. Reg. at 31468. So rulings against gender-identity nondiscrimination in the rule necessarily encompass gender identity in the sex-stereotypes definition. *Franciscan Alliance* also singled out sex stereotypes as wrongly encompassing gender-identity discrimination in footnote 28, where it rejected HHS's importation of gender identity nondiscrimination through sex stereotypes. 227 F. Supp. 3d at 689 n.28. The court's vacatur order adopted its preliminary injunction analysis. 414 F. Supp. 3d at 942–44. Thus when *Franciscan Alliance* said it was vacating "the unlawful portions of the [2016] Rule," 414 F. Supp. 3d at 945, it included the 2016 Rule's sex-stereotypes discrimination prohibition which encompasses gender-identity discrimination.

The parties, in addition to the *Franciscan Alliance* court, framed their arguments to include the 2016 Rule's sex stereotypes prohibition on gender identity discrimination. The first amended complaint specified that it encompassed "sex stereotypes." No. 7:16-cv-00108 (N.D. Tex. Oct. 17, 2016), Dkt. No. 21. The motion and proposed order leading to preliminary relief explicitly encompassed "sex stereotypes." No. 7:16-cv-00108 (N.D. Tex. Oct. 21, 2016), Dkt. Nos. 22 & 22-1. *Franciscan Alliance* "granted" the motion. 227 F. Supp. 3d at 689. The motions leading to the vacatur order also discussed sex stereotypes and sought vacatur of any gender-identity nondiscrimination mandates in the rule. No. 7:16-cv-00108 (N.D. Tex. Feb. 4, 2019), Dkt. No. 133 at 34; No. 7:16-cv-00108 (N.D. Tex. Feb. 4, 2019), Dkt. Nos. 135-1 at 4, 136 at 24–27.

It does not make sense to read *Franciscan Alliance* as leaving a gender-identity discrimination prohibition in place under the 2016 Rule's sex-stereotypes definition. Doing so would render all of the relief *Franciscan Alliance* provided

14

superfluous. If the 2016 Rule contained two independent bans on gender-identity discrimination—under the "gender identity," and separately under "sex stereotyping"—and if *Franciscan Alliance* vacated only one of them, the relief given to the *Franciscan Alliance* plaintiffs would be meaningless. They would have continued to be injured from the 2016 Rule prohibiting gender identity discrimination. The entire purpose of their requests for relief, and of the court's orders granting those motions, was to eliminate the 2016 Rule's prohibitions on gender-identity discrimination.

Because *Franciscan Alliance* vacated all gender-identity discrimination prohibitions in the 2016 Rule, including under "sex stereotypes," this Court cannot give Plaintiff the relief she seeks by negating the 2020 Rule. There were no gender-identity discrimination bans left in the 2016 Rule for the 2020 Rule to actually repeal. Vacating the 2020 Rule would not restore any such prohibitions.

Finally, even though this Court said that it could not restore language from the 2016 Rule that *Franciscan Alliance* had vacated, and explained this Court's relief was limited to "sex stereotypes" language from the 2016 Rule, its preliminary order nevertheless appeared to restore gender-identity language from that rule's "gender identity" and "on the basis of sex" definitions. *Asapansa-Johnson Walker*, 480 F. Supp. 3d at 430. A final order here should not purport to vacate the 2020 Rule's deletion of gender-identity language that *Franciscan Alliance* vacated.

## CONCLUSION

For these reasons, this Court should grant summary judgment to Defendants and deny summary judgment to Plaintiff.

Respectfully submitted on this 9th day of February, 2026.

|  |  |
|---|---|
| Edward T. Mechmann | */s/ Matthew S. Bowman* |
| 488 Madison Avenue | Matthew S. Bowman* |
| New York, NY 10022 | Alliance Defending Freedom |
| Telephone: (646) 794-2807 | 440 First Street NW, Suite 600 |
| Facsimile: (212) 421-1801 | Washington, DC 20001 |
| Email: EMechLaw@gmail.com | Telephone: (202) 393-8690 |
|  | Facsimile: (202) 347-3622 |
|  | Email: mbowman@ADFlegal.org |

*Admitted pro hac vice*

*Counsel for Amicus Curiae Catholic Medical Association*