**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x

TANYA ASAPANSA-JOHNSON WALKER,

                              *Plaintiff*,

                 v.

ROBERT F. KENNEDY JR., in his official capacity
as the Secretary of the United States Department of
Health and Human Services, and

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

                             *Defendants*.

--------------------------------------------------------------x

Civil Action No.
20-CV-02834 (FB) (SMG)

 

**MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS-MOTION**
**FOR SUMMARY JUDGMENT AND IN OPPOSITION TO**
<u>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

Date of Service: January 15, 2026

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARDS ....................................................................................................... 5

ARGUMENT ...................................................................................................................... 5

 I. Walker's Private Right of Action under Section 1557 Forecloses this APA Suit. ........................................................................................................................ 5

 II. Defendants are Entitled to Judgment on Walker's APA Claims for Declaratory or Injunctive Relief Precluding HHS Enforcement of Agency Regulations that Were on the Books Until 2024. .................................................. 6

  A. Walker Fails to Show Success on the Merits. ........................................... 7

   1. The Now-Replaced Regulation Was Substantively Valid. ............. 7

   2. When Promulgating the Now-Replaced Regulation, HHS Made Reasonable Judgments. ........................................................ 8

   3. Walker Has Not Demonstrated That Each Specific Argument Advanced in this Case Was Raised During the Comment Period. ......................................................................... 14

   4. Walker Has Not Shown Prejudicial Error. .................................... 14

   5. Walker Has Not Shown Discriminatory Intent and Effect Rendering Section 92.2 (2020) Unconstitutional or Otherwise Invalid. ....................................................................... 14

  B. Walker Fails to Satisfy the Remaining Equitable Factors. ...................... 15

 III. The Preamble Statements Walker Challenges Are Not Reviewable Agency Actions. ................................................................................................................. 16

 IV. Walker is Not Entitled to "Vacatur." .................................................................... 18

  A. The APA Does Not Authorize Vacatur of Rules. .................................... 18

  B. Even if Vacatur is Available, it is Subject to Equitable Principles. .......... 20

 V. Walker Is Not Entitled to a Mandatory Injunction Compelling the Secretary to Prescribe Any Regulations That Were on the Books Long Ago. ..................... 22

i

CONCLUSION ................................................................................................................ 23

# TABLE OF AUTHORITIES

**CASES**

*Am. Sch. of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902)......................................................................................... 19

*Arizona v. Biden*,
40 F.4th 375 (6th Cir. 2022) ..................................................................... 19, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................... 9

*Baeder v. Heckler*,
768 F.2d 547 (3d Cir. 1985)............................................................................ 20

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020)........................................................................................ 22

*Bennett v. Donovan*,
703 F.3d 582 (D.C. Cir. 2013) ........................................................................ 23

*Bennett v. Spear*,
520 U.S. 154 (1997)................................................................................... 16, 17

*Biden v. Texas*,
597 U.S. 785 (2022)..................................................................................... 7, 23

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) .......................................................................................... 7

*Bradley Lumber Co. of Ark. v. NLRB*,
84 F.2d 97 (5th Cir. 1936) ................................................................................ 6

*Brock v. Cathedral Bluffs Shale Oil Co.*,
796 F.2d 533 (D.C. Cir. 1986)..................................................................... 16, 17

*Cal. Cmtys. Against Toxics v. EPA*,
934 F.3d 627 (D.C. Cir. 2019)......................................................................... 17

*California v. Texas*,
593 U.S. 659 (2021)........................................................................................ 21

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*,
846 F.3d 492 (2d Cir. 2017).............................................................................. 8

*Chinese Am. Citizens All. of Greater N.Y. v. Adams*,
116 F.4th 161 (2d Cir. 2024) ........................................................................... 15

*City of Olmsted Falls v. FAA*,
292 F.3d 261 (D.C. Cir. 2002) ......................................................................... 10

*Coker v. Sullivan*,
902 F.2d 84 (D.C. Cir. 1990) ............................................................................. 6

*Comm. on Judiciary of U.S. House of Representatives v. Miers*,
542 F.3d 909 (D.C. Cir. 2008) ........................................................................... 6

*Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*,
77 F.4th 679 (D.C. Cir. 2023) ......................................................................... 14

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
596 U.S. 212 (2022) ........................................................................................... 5

*Davis v. Shah*,
821 F.3d 231 (2d Cir. 2016) ............................................................................... 6

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ............................................................................................. 15

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ........................................................................................... 6

*Econ. Opportunity Comm'n of Nassau Cnty. v. Weinberger*,
524 F.2d 393 (2d Cir. 1975) ........................................................................... 14

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ................................................................................... 10, 11

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) ........................................................................................... 8

*FDA v. Wages & White Lion Invs., LLC*,
604 U.S. 542 (2025) ......................................................................................... 15

*FERC v. Elec. Power Supply Ass'n*,
577 U.S. 260 (2016) ........................................................................................... 8

*Fla. Power & Light Co v. Lorion*,
470 U.S. 729 (1985) ......................................................................................... 23

*Gaines v. Thompson*,
74 U.S. 347 (1868) ........................................................................................... 22

iv

*Hecht Co. v. Bowles*,
   321 U.S. 321 (1944) ................................................................................ 20, 21

*Illinois v. Ferriero*,
   60 F.4th 704 (D.C. Cir. 2023) ............................................................................ 22

*In re Cheney*,
   406 F.3d 723 (D.C. Cir. 2005) ............................................................................ 22

*In re Nat'l Nurses United*,
   47 F.4th 746 (D.C. Cir. 2022) ............................................................................ 23

*Koretoff v. Vilsack*,
   707 F.3d 394 (D.C. Cir. 2013) ............................................................................ 14

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) ............................................................................................ 8

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) .......................................................................................... 21

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) .......................................................................................... 19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .......................................................................................... 15

*Miguel v. McCarl*,
   291 U.S. 442 (1934) .......................................................................................... 22

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
   429 U.S. 274 (1977) .......................................................................................... 15

*NASD Disp. Resol., Inc. v. Judicial Council of Cal.*,
   488 F.3d 1065 (9th Cir. 2007) ............................................................................. 4

*Nat. Res. Def. Council v. EPA*,
   559 F.3d 561 (D.C. Cir. 2009) ............................................................................ 16

*Nat'l Ass'n of Regul. Util. Comm'rs v. FERC*,
   964 F.3d 1177 (D.C. Cir. 2020) ........................................................................... 5

*Nat'l Council of Agric. Emps. v. DOL*,
   143 F.4th 395 (D.C. Cir. 2025) .......................................................................... 12

*Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*,
   752 F.3d 999 (D.C. Cir. 2014) ............................................................................ 17

v

*Nat'l Mining Ass'n v. McCarthy*,
    758 F.3d 243 (D.C. Cir. 2014)...................................................................... 17

*Nat'l Wildlife Fed'n v. United States*,
    626 F.2d 917 (D.C. Cir. 1980)..................................................................... 22

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
    366 F.3d 930 (D.C. Cir. 2004)....................................................................... 5

*Neb. Dep't of Health & Hum. Servs. v. HHS*,
    435 F.3d 326 (D.C. Cir. 2006)..................................................................... 20

*New York v. Dep't of Just.*,
    951 F.3d 84 (2d Cir. 2020).................................................................... 11, 12

*Nken v. Holder*,
    556 U.S. 418 (2009)..................................................................................... 16

*Olin Indus. v. NLRB*,
    192 F.2d 799 (5th Cir. 1952) ....................................................................... 14

*Or. Nat. Res. Council. v. Harrell*,
    52 F.3d 1499 (9th Cir. 1995) ....................................................................... 22

*Pers. Watercraft Indus. Ass'n v. Dep't of Com.*,
    48 F.3d 540 (D.C. Cir. 1995)....................................................................... 13

*Pub. Citizen v. Bowen*,
    833 F.2d 364 (D.C. Cir. 1987)..................................................................... 18

*Reno v. Flores*,
    507 U.S. 292 (1993)................................................................................. 5, 15

*Sanchez-Espinoza v. Reagan*,
    770 F.2d 202 (D.C. Cir. 1985)....................................................................... 6

*Stilwell v. Off. of Thrift Supervision*,
    569 F.3d 514 (D.C. Cir. 2009)................................................................. 9, 13

*United States v. Rahimi*,
    602 U.S. 680 (2024), *remanded,* 117 F.4th 331 (5th Cir. 2024) ................. 5

*United States v. Texas*,
    599 U.S. 670 (2023)............................................................... 18, 19, 20, 22

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977)..................................................................................... 15

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) ................................................................................ 12, 13

*Wash. Legal Found. v. Alexander*,
    984 F.2d 483 (D.C. Cir. 1993) .................................................................. 6

*Washington v. HHS*,
    482 F. Supp. 3d 1104 (W.D. Wash. 2020) .......................................... *passim*

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ................................................................................ 21

*Weinreb v. Xerox Bus. Servs., LLC Health and Welfare Plan*,
    323 F. Supp. 3d 501 (S.D.N.Y. 2018) ...................................................... 5

*Whitman-Walker Clinic, Inc. v. HHS.*,
    485 F. Supp. 3d 1 (2020) ........................................................................ 8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................... 21

*Women's Equity Action League v. Cavazos*,
    906 F.2d 742 (D.C. Cir. 1990) ................................................................ 6

**STATUTES**

5 U.S.C. § 702 .............................................................................................. 21

5 U.S.C. § 703 .................................................................................... 18, 19, 20

5 U.S.C. § 704 .......................................................................................... 5, 16

5 U.S.C. § 706 ....................................................................................... *passim*

20 U.S.C. § 1682 ............................................................................................ 2

20 U.S.C. § 1683 ............................................................................................ 2

42 U.S.C. § 18114 .......................................................................................... 8

42 U.S.C. § 18116 .................................................................................. 2, 7, 23

44 U.S.C. § 1510 .......................................................................................... 16

**REGULATIONS**

45 C.F.R. § 80.7 ............................................................................................ 2

45 C.F.R. § 86.71 ........................................................................................................... 2

45 C.F.R. § 92.101 ......................................................................................................... 3

45 C.F.R. § 92.2 (2020) ........................................................................................... *passim*

45 C.F.R. § 92.2 (2024) ................................................................................................. 3

45 C.F.R. § 92.303 ........................................................................................................ 2

45 C.F.R. § 92.3 (2020) .............................................................................................. 22

Nondiscrimination in Health and Health Education Programs or Activities,
84 Fed. Reg. 27,846 (Jun. 14, 2019) .................................................................... *passim*

Nondiscrimination in Health and Health Education Programs or Activities, Delegation of
Authority,
85 Fed. Reg. 37,160 (Jun. 19, 2020) .................................................................... *passim*

Nondiscrimination in Health Programs and Activities,
87 Fed. Reg. 47,824 (Aug. 4, 2022) ..................................................................... 17, 18

Nondiscrimination in Health Programs and Activities,
89 Fed. Reg. 37,522 (May 6, 2024) ................................................................... 3, 17, 18

Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act
and Title IX of the Education Amendments of 1972,
86 Fed. Reg. 27,984 (May 25, 2021) ................................................................... 17, 18

## LEGISLATIVE MATERIALS

92 Cong. Rec. 2159 (1946) .......................................................................................... 19

Administrative Procedure Act,
S. Doc. No. 248, 79th Cong., 2d Sess. 36-37 (1946) ...................................................... 18, 19

S. Rep. No. 752, 79th Cong., 1st Sess. 44 (1945) ......................................................... 19

## OTHER AUTHORITIES

*Nondiscrimination in Health and Health Education Programs or Activities, Delegation of
Authority*, Federal Register,
https://www.federalregister.gov/documents/2020/06/19/2020-11758/nondiscrimination
-in-health-and-health-education-programs-or-activities-delegation-of-authority#
page-37244 ............................................................................................................... 12

**INTRODUCTION**

Between 2020 and 2024, the Code of Federal Regulations ("CFRs") included a provision implementing Section 1557 of the Affordable Care Act ("ACA"): 45 C.F.R. § 92.2 (2020). That provision mirrored the language of the statute and thus prohibited precisely as much discriminatory conduct as Section 1557 itself. In 2024, the Department of Health and Human Services ("HHS") replaced § 92.2 (2020). Nevertheless, Plaintiff Tanya Asapansa-Johnson Walker desires a purely advisory opinion as to the validity of § 92.2 (2020) when it was on the books. Defendants respect this Court's determination that Walker's claims are not moot. But the fact remains that § 92.2 (2020) is not on the books and is not law today.[1]

In all events, Walker fails to show entitlement to relief as to the now-replaced 2020 regulations. At the outset, private actions to enforce Section 1557 provide an adequate remedy for Walker, foreclosing Walker from bringing Administrative Procedure Act ("APA") claims for relief against HHS. On the merits, § 92.2 (2020) was not invalid and could have been enforced before it was repealed. Because the regulation had parroted the statutory language, it was not substantively invalid. Moreover, HHS provided a reasoned explanation for declining to place any agency statement on controversial legal issues in a binding regulation, which is all the APA required. Specifically, the agency explained it declined "to propose its own[] definition of 'sex' for purposes of discrimination on the basis of sex in the regulation" "[b]ecause of the likelihood that the Supreme Court will be addressing the issue in the near future[.]" Nondiscrimination in Health and Health Education Programs or Activities, 84 Fed. Reg. 27,846, 27,857 (Jun. 14, 2019). HHS explained that "elimination of a regulatory definition" of a statutory term does not prejudice any legitimate interests because it in no way "preclude[s] application of [any] construction" provided by the Supreme Court or lower courts. *See* Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37,160, 37,168 (Jun. 19, 2020).

---

[1] Defendants preserve for further review the argument that Walker's claims are moot.

1

Rather than grapple with any of this, Walker directs an attack against unreviewable statements that the agency deliberately declined to place in binding regulations. Walker's arguments about those statements therefore provide no basis for the Court to declare unlawful or set aside any part of the 2020 regulations even if they had not been replaced in 2024. The Court should deny Walker's motion and grant Defendants' cross-motion.

## BACKGROUND

Through reference to other civil rights statutes, Section 1557 of the ACA provides that individuals shall not—on the basis of race, color, national origin, sex, age, or disability—be excluded from participation in, denied the benefits of, or subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance. 42 U.S.C. § 18116(a).

Section 1557 incorporates the "enforcement mechanisms provided for and available under" the referenced statutes, such as Title IX. *Id*. Administrative enforcement is effectuated "by the termination of or refusal to grant or to continue [Federal financial] assistance[.]" *E.g.*, 20 U.S.C. § 1682. Administrative enforcement is typically a complaint-driven process, though HHS has authority to initiate investigations on its own. *E.g.*, 45 C.F.R. §§ 80.7 (HHS Title VI procedures), 86.71 (HHS Title IX procedures), 92.303(a) (Section 1557, incorporating by reference § 80.7).

If, following an investigation, an enforcement officer finds a "failure to comply," first, the agency must advise the covered entity of a potential violation and make a good faith effort to come to a voluntary resolution without the need for administrative or judicial review. *E.g.*, 20 U.S.C. § 1682. If that negotiation is unsuccessful, and the agency wishes to proceed further toward an order terminating or suspending Federal financial assistance, the agency must initiate the formal agency adjudication procedures of the APA. *Id*. Moreover, any final order regarding termination or suspension of Federal financial assistance is subject to judicial review. *Id*. § 1683.

Section 1557 authorizes HHS to promulgate implementing regulations. 42 U.S.C. § 18116(c). Those regulations are located in Part 92 of Title 45 of the CFRs. In 2020, the agency entirely revised Part 92. 85 Fed. Reg. at 37,244-47. As relevant here, the regulations had

2

essentially mirrored the language of the statute.  45 C.F.R. § 92.2 (2020).  Specifically, the regulations provided that:

> [A]n individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance . . .

*Id*. § 92.2(a) (2020).

Paragraph (b), in turn, provided that the "grounds are the grounds prohibited under" several statutes including "Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) (sex)[.]" *Id*. § 92.2(b) (2020).

In 2024, the agency again entirely revised and replaced Part 92.  *See* Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37,522, 37,692-702 (May 6, 2024).  For example, § 92.2 now addresses Section 1557's application, as opposed to the grounds of discrimination prohibited.  45 C.F.R. § 92.2 (2024).  The current regulations address prohibited discrimination under § 92.101.  The current version of § 92.101 includes an agency statement that "[d]iscrimination on the basis of sex includes, but is not limited to, discrimination on the basis of: (i) [s]ex characteristics, including intersex traits; (ii) [p]regnancy or related conditions; (iii) [s]exual orientation; (iv) [g]ender identity; and (v) [s]ex stereotypes." *Id*. § 92.101(a)(2).

HHS's administration, implementation, and enforcement of the current version of Part 92 is subject to several district court orders.  For example, HHS is bound by a recent final judgment issued in *Tennessee v. Kennedy*, No. 1:24-cv-00161-LG-BWR (S.D. Miss. Oct. 22, 2025), ECF No. 80.  Under the *Tennessee* Final Judgment, HHS enforcement is subject to a vacatur order with respect to several current Part 92 provisions "to the extent that they expand Title IX's definition of sex discrimination to include gender-identity discrimination[.]" *Id*. at 1.  Another district court order subjects HHS enforcement of the entirety of § 92.101(a)(2), among other provisions, to a nationwide stay.  Order Modifying Stay, *Texas v. Becerra*, No. 6:24-cv-00211-JDK (E.D. Tex. Aug. 30, 2024), ECF No. 41.  HHS must comply with district court orders.  Regardless, however, the new regulations, not anything promulgated in 2020, are currently on the books; HHS has taken

3

no action to change Part 92. *See* 45 C.F.R. Part 92. *Cf. NASD Disp. Resol., Inc. v. Judicial Council of Cal.*, 488 F.3d 1065, 1069 (9th Cir. 2007) (If court opinion is vacated it "will not be ripped from Federal Supplement 2d" and it "will still be available and will still be citable for its persuasive weight[.]").

Walker, a Manhattan resident, seeks relief against 45 C.F.R. § 92.2 (2020), as it was on the books until 2024. Walker alleges that § 92.2 (2020) violated the APA. Compl. ¶¶ 257-314.[2] Walker does not claim to have ever filed a complaint with HHS or in federal district court against any covered entity for an alleged violation of Section 1557.

On August 17, 2020, the Court issued an order granting Walker's motion for a stay and preliminary injunction. Mem. and Order, ECF No. 23. The Court "stay[ed] the repeal of the 2016 definition of discrimination on the basis of sex" and "preliminarily enjoin[ed] the defendants from enforcing the repeal." *Id*. at 25-26.

In October 2020, the Court issued an order finding that Walker lacked standing to challenge many provisions of Part 92 (2020). Mem. and Order, ECF No. 34 at 6-7. The Court's October 2020 order also provided that "the repeal of 45 C.F.R. § 92.206 [(2016)] is stayed and enforcement of the repeal is preliminarily enjoined." *Id*. at 8.

In July 2025, the Court issued an order denying HHS's motion to dismiss the case as moot given that the 2020 rule had been replaced by the 2024 rule. Mem. and Order, ECF No. 62. In the July 2025 order, the Court also stated that it "clarifies . . . that HHS is preliminarily enjoined from enforcing the repeal only insofar as it would deprive Walker of any right, benefit, or remedy under" "the 2016 versions of 45 C.F.R. § 92.4 and 206.206[.]" *Id*. at 21.

---

[2] Despite acknowledging that not all provisions in 45 C.F.R. Part 92 that were on the books before 2024 are "at issue in this case[,]" Pl.'s Mem. of L. in Supp. of Mot. for Summ. J. ("Mem.") at 21, Walker's brief provides no citations to the specific provisions of the CFRs being challenged. Because § 92.2 (2020) provided the agency's binding statement on Section 1557's nondiscrimination requirements that was on the books between 2020 and 2024—specifically that the grounds of discrimination prohibited by Section 1557 include all the "grounds prohibited under" "title IX[,]" 45 C.F.R. § 92.2(b) (2020)—Defendants understand Walker's challenge to be directed at this provision. Insofar as Walker is instead challenging preamble statements, those were and remain nonbinding and unreviewable. *Infra* at pp. 16-18.

**LEGAL STANDARDS**

In a facial challenge to an agency regulation, the plaintiff "must establish that no set of circumstances exists under which the [regulation] would be valid." *Reno v. Flores*, 507 U.S. 292, 301 (1993) (citation omitted). "That means that to prevail, the Government need only demonstrate that [the regulation] is [valid] in some of its applications." *United States v. Rahimi*, 602 U.S. 680, 693 (2024), *remanded,* 117 F.4th 331 (5th Cir. 2024). The Court must "consider the circumstances in which" the challenged provision is "most likely" to be valid. *Id*. at 701. "Where [courts] conclude that a challenged regulatory provision does not exceed [the statute's] limits . . . [they] will uphold the provision and preserve the right of complainants to bring as-applied challenges against any alleged unlawful applications." *Nat'l Ass'n of Regul. Util. Comm'rs v. FERC*, 964 F.3d 1177, 1185 (D.C. Cir. 2020) (citation omitted).

**ARGUMENT**

**I.       Walker's Private Right of Action under Section 1557 Forecloses this APA Suit.**

The availability of a private cause of action directly against entities that violate Section 1557 constitutes an adequate remedy that bars Walker's case against HHS.  The APA authorizes judicial review of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Walker fears being denied medical care or otherwise being discriminated against by medical professionals in violation of Section 1557.  Compl. ¶ 81.  But Walker may bring a private cause of action to enforce Section 1557 against allegedly discriminating medical professionals.  *See*, *e.g., Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 217, 230 (2022); *Weinreb v. Xerox Bus. Servs., LLC Health and Welfare Plan*, 323 F. Supp. 3d 501, 521 n.18 (S.D.N.Y. 2018).  The availability of this private cause of action provides an "adequate remedy in a court," which forecloses Walker's claims against the agency.  5 U.S.C. § 704.

Courts have established that an APA claim challenging agency action regulating third parties is unavailable if the plaintiff has an adequate, even if imperfect, direct remedy against the third party.  *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945-48 (D.C. Cir. 2004).  When statutory beneficiaries can proceed directly against regulated entities, "federal courts

5

will not oversee the overseer." *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 748 (D.C. Cir. 1990) (quoting *Coker v. Sullivan*, 902 F.2d 84, 89 (D.C. Cir. 1990)).  Thus, under the doctrine, it does not matter if Walker's remedy against the third-party entities has "no effect upon the challenged agency action[.]" *Wash. Legal Found. v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993) (quoting *Coker*, 902 F.2d at 90 n.5).

Here, Walker sues HHS challenging a regulation that parroted the statutory language and previously governed the agency's enforcement of Section 1557 against third party covered entities. Compl., Prayer for Relief.  Because Walker may seek adequate relief for any alleged discrimination in a private suit filed directly against any entity covered under Section 1557, Walker may not bring an APA suit against HHS with the hope that it will, in turn, affect covered entity conduct.  *See supra* at pp. 5-6 (and cases cited).

## II.  Defendants are Entitled to Judgment on Walker's APA Claims for Declaratory or Injunctive Relief Precluding HHS Enforcement of Agency Regulations that Were on the Books Until 2024.

Walker's claims for declaratory or injunctive relief from any HHS regulations fail.  Compl. ¶ 26 & Prayer for Relief.  A "plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id*.  Walker must also "succeed on the merits" of the underlying APA claims.  *Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016).  Walker has not satisfied any of these requirements.[3]

_____

[3] "[T]he discretionary relief of declaratory judgment is, in a context such as this where federal officers are defendants, the practical equivalent of specific relief such as injunction or mandamus, since it must be presumed that federal officers will adhere to the law as declared by the court. Such equivalence of effect dictates an equivalence of criteria for issuance." *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985) (Scalia, J.); *see also Comm. on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (similar); *Bradley Lumber Co. of Ark. v. NLRB*, 84 F.2d 97, 100 (5th Cir. 1936).

A.    **Walker Fails to Show Success on the Merits.**

1.    **The Now-Replaced Regulation Was Substantively Valid.**

Walker fails to establish that any provision of 45 C.F.R. Part 92 that was on the books before 2024 was in excess of statutory authority or otherwise not in accordance with law.  Section 92.2 (2020) parroted the language in Section 1557 and was thus consistent with the statute.  *Compare* 45 C.F.R. § 92.2 (2020), *with* 42 U.S.C. § 18116(a).

Section § 92.2 (2020) also was not substantively invalid for failing to include a statement defining further the scope of prohibited discrimination on the basis of sex.  Section 1557 is clear that the "Secretary *may* promulgate regulations to implement" the statute.  42 U.S.C § 18116(c) (emphasis added).  And "'the word 'may' *clearly* connotes discretion.'"  *Biden v. Texas*, 597 U.S. 785, 802 (2022) (citation omitted).

Walker is wrong to argue that § 92.2 (2020) somehow "contradict[ed] *Bostock*."  Mem. at 15.  There is no statement in former § 92.2 foreclosing application of *Bostock*'s reasoning.  In the words of another court, if Walker "is correct that *Bostock* means that Title IX and Section 1557 must incorporate protection for gender identity and sexual orientation discrimination, then that means that the 2020 Rule [did], in fact, extend protection against discrimination to LGBTQ individuals via the Rule's incorporation of Title IX by reference."  *Washington v. HHS*, 482 F. Supp. 3d 1104, 1116 (W.D. Wash. 2020).[4]

Rather than engage with the text of the old regulations, Walker argues that they were in excess of HHS's statutory authority because of *reasons* for the regulations that the agency included in the preamble.  Mem. at 9-16 (arguing that the regulation was promulgated "without the diligence required" and with an insufficient "justification").  But whether an agency action issued within an agency's "sphere of delegated authority" is nonetheless invalid for failing to give a reasoned

---

[4] Walker also errs in arguing that *Bostock* "clarifies that the meaning of 'sex' [is] inclusive of gender identity . . . consistent with the 2016 Rule's definitions[.]"  Mem. at 16.  The Supreme Court in *Bostock* "proceed[ed] on the assumption that 'sex' signified what the employers suggest, referring only to biological distinctions between male and female."  *Bostock v. Clayton Cnty.,* 590 U.S. 644, 655 (2020).

explanation raises an arbitrary and capricious question; it does not render the agency action substantively invalid. *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 591 U.S. 657, 706-07 (2020) (Kagan, J., concurring); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 521 (2d Cir. 2017) (criticizing the district court for "incorporating the *State Farm* standard into its [statutory] analysis").

The *Whitman-Walker* court recognized this distinction. *Whitman-Walker Clinic, Inc. v. HHS.*, 485 F. Supp. 3d 1, 43 (2020). That court explained that it did "not hold that the agency decision here was substantively invalid" and that "[n]othing prevents HHS from . . . issu[ing] a regulation that parrots Section 1557's prohibition on sex discrimination." *Id*. at 42-43 (citation omitted).

Nor has Walker shown that 45 C.F.R. § 92.2 (2020) violated Section 1554 (42 U.S.C. § 18114). Mem. at 8. Former § 92.2 (2020) covered precisely as many claims of discrimination as Section 1557 itself. Walker thus entirely fails to explain how that regulation "prevent[ed LGBTQ people] from being denied care or coverage solely because of their sexual orientation and/or gender identity[,]" Mem. at 9, insofar as the same language in Section 1557 itself precludes that very discrimination, *Washington*, 482 F. Supp. 3d at 1114.

### 2. When Promulgating the Now-Replaced Regulation, HHS Made Reasonable Judgments.

Walker has not shown that the agency's promulgation of § 92.2 (2020) violated 5 U.S.C. § 706(2)(A). "Judicial review under [the arbitrary-and-capricious] standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "A court is not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016). "Rather, an agency has to justify its rule with a reasoned

8

explanation." *Stilwell v. Off. of Thrift Supervision*, 569 F.3d 514, 519 (D.C. Cir. 2009) (Kavanaugh, J.).

HHS provided a reasoned explanation for replacing provisions that had been on the books between 2016 and 2020 with 45 C.F.R. § 92.2 (2020). And that explanation satisfies the minimal requirements of 5 U.S.C. § 706(2)(A). Principally, the agency recognized that the Supreme Court had granted certiorari in a case determining the scope of prohibited sex discrimination under Title VII and it therefore crafted regulations that could be construed consistently with the Supreme Court's decision regardless of its outcome, insofar as its reasoning was applicable to Section 1557. *See* 84 Fed. Reg. at 27,857 & n.75. Specifically, HHS explained that "[b]ecause of the likelihood that the Supreme Court will be addressing the issue in the near future, [HHS] declines, at this time, to propose its own[] definition of 'sex' for purposes of discrimination on the basis of sex in the regulation." *Id*. at 27,857. Instead, the regulation "relies upon . . . the plain meaning of the term[s] in the statute" as construed by the courts. 85 Fed. Reg. at 37,178; *see also id.* at 37,168.

The agency also explained that hewing to the statutory language "may minimize litigation risk." 84 Fed. Reg. at 27,849. Defending HHS's prior definition of "on the basis of sex" in the 2016 regulations resulted in "lawsuits and court orders blocking enforcement of significant parts of the Final Rule for over two years." *Id*. By "declin[ing] . . . to propose its own[] definition of 'sex' for purposes of discrimination on the basis of sex in the [2020] regulation," *id*. at 27,857, HHS hoped to "minimize litigation risk," *id*. at 27,849, because the agency would not be taking a position in either direction on the meaning of the statutory phrase by regulation. *See id*.; *see also id*. at 27,857. Resources saved could be used for other matters, like investigating claims of discrimination in covered health programs and activities. *See id*. at 27,849; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (explaining that litigation "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed at the proper execution of the work of the Government").

In sum, at the time of HHS's action, the agency "could rationally decide it needed to step away from its old regime," which included explicit definitions that were the subject of

9

longstanding litigation, and replace that regime with one that could flexibly apply regardless of how courts interpreted the scope of Title IX or Section 1557. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 518 (2009). Walker, who bears the burden, *see City of Olmsted Falls v. FAA,* 292 F.3d 261, 271 (D.C. Cir. 2002), argues that the agency's reasoning was nonetheless arbitrary. But Walker's objections come nowhere close to clearing the high bar that the § 706(2)(A) standard sets.

*First*, Walker's arguments based on her assertion that former § 92.2 (2020) had been promulgated to achieve cost savings, Mem. at 10, fail at the outset because the agency's explanation for § 92.2 (2020) was not premised on cost savings at all. As Walker elsewhere acknowledges, Mem. at 21, the cited preamble pages state that "savings would result from repealing the 2016 Rule's provisions related to mandatory notices" for people with limited English proficiency, as well as other provisions, none of which are at issue in this lawsuit. 85 Fed. Reg. at 37,162. As for § 92.2 (2020), the agency instead explained that "any possible costs are not calculable based on available data[,]" *id*. at 37,163, before "the Supreme Court" weighs in and "address[es] the issue" of the statute's scope, 84 Fed. Reg. at 27,857.

*Second*, Walker claims that the agency "ignored thousands of comments from concerned individuals detailing harms they could suffer if Section 1557's antidiscrimination protections for the LGBTQ community were eroded." Mem. at 10. *See id*. at 18-29. Not so. HHS acknowledged that some "[c]ommenters expressed concern that the proposed rule would" leave patients "in danger of harm." 85 Fed. Reg. at 37,181. And HHS explained that it "is concerned with the health of all Americans" and will act "to the fullest extent of its statutory authority in its efforts to improve the health and wellbeing of all." *Id*. But it knew "of no data showing that the proper enforcement of Federal nondiscrimination law according to statutory text will disproportionately burden individuals on the basis of sexual orientation and/or gender identity." *Id*. at 37,182. *See Washington*, 482 F. Supp. 3d at 1116 (noting that plaintiff had no evidence that enforcing Section 1557's language "will yield an increase in discrimination against LGBTQ individuals or a decrease in available healthcare or health insurance coverage for that population").

10

Similarly, Walker claims that HHS "fail[ed] to account for the consequences [§ 92.2 (2020)] would inflict." Mem. at 12. But these arguments again wrongly assume the key premise—that enforcing the full scope of § 92.2 (2020), which is identical in scope to Section 1557 itself, would have somehow authorized discrimination that Congress prohibited when it enacted the statute. It would not have. *Washington*, 482 F. Supp. 3d at 1115.[5]

*Third*, Walker claims that HHS did "not consider the abundance of cases contradicting" § 92.2 (2020) including *Bostock*. Mem. at 14-15. But because § 92.2 (2020) parroted the language of the statute, it was not possible for caselaw interpreting the statute to contradict its enforcement. Walker does not specify any provision of § 92.2 (2020) that could not have been enforced consistently with the identified caselaw. *Id*. at 13-15. Failure to adequately discuss Supreme Court cases is an insufficient basis to declare a rule unlawful. *Fox Television*, 556 U.S. at 526 ("We are unaware that we have ever before reversed an executive agency, not for violating our cases, but for failure to discuss them adequately.").

*Fourth*, as Walker concedes, Mem. at 15, the agency explicitly considered that *Bostock* might have implications for Section 1557's interpretation and enforcement. 84 Fed. Reg. at 27,857 & n.75. It is for that very reason that HHS "decline[d] . . . to propose its own[] definition of 'sex' for purposes of discrimination on the basis of sex in the regulation." *Id*. at 27,857; *see also id*. at 27,857 n.75. Instead, the Rule "relies upon . . . the plain meaning of the term in the statute." 85 Fed. Reg. at 37,178; *see also id*. at 37,168 (If "a Supreme Court decision is applicable in interpreting the meaning of a statutory term, the elimination of a regulatory definition of such term would not preclude application of the Court's construction."). Walker thus cannot fairly argue that HHS entirely failed to consider this aspect of the problem. *See New York v. Dep't of Just.*, 951

---

[5] Walker asserts that the "Administrative record is *replete* with . . evidence of harm in the forms of thousands of personal testimonials and public comments." Mem. at 19. But Walker only cross-references three comments, *id*. at 11, none of which analyze any provisions of the proposed regulations and all of which wrongly assume that § 92.2 (2020) could not have been enforced consistently with *Bostock*'s reasoning.

11

F.3d 84, 122 (2d Cir. 2020) ("a court will not 'lightly' reach th[e] conclusion" that agency entirely failed to consider problem) (citation omitted).

Insofar as Walker argues that HHS failed to consider the *outcome* of *Bostock*, that argument "displays a lack of understanding of the historical setting within which the agency action took place and of the nature of the [action] itself." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 533 (1978). Walker's argument that HHS improperly "continued to promulgate the 2020 Rule" after *Bostock* was issued on June 15, 2020, Mem. at 15, entirely misunderstands the timeline. HHS issued the proposed rule on June 14, 2019, opening the administrative record to comments for sixty days. 84 Fed. Reg. at 27,846. It took HHS nearly a year to diligently consider the 198,845 comments it received before the Secretary executed the Final Rule on May 20, 2020. *See* 85 Fed. Reg. at 37,164, 37,248. The Final Rule "appeared on Public Inspection on 6/12/2020[,]" three days before the *Bostock* opinion was released.[6] It is this "[p]ublic inspection" and not publication in the Federal Register, that "ordinarily denotes the time when a rule is authoritatively established." *Nat'l Council of Agric. Emps. v. DOL*, 143 F.4th 395, 406 (D.C. Cir. 2025). To "withdraw[] a rule that has been filed for public inspection but not yet published in the Federal Register,' the agency must 'provide notice and an opportunity for comment.'" *Id*. at 400 (citation omitted). Accordingly, after June 12, 2020, HHS could not have withdrawn the regulations without another round of notice and comment. *See id*. at 400, 406. It is thus irrelevant that the Office of the Federal Register published the regulations in the Federal Register on June 19, 2020, four days after the Supreme Court released its opinion in *Bostock*. 85 Fed. Reg. at 37,244.

Moreover, given that the agency had crafted regulations that could be enforced consistently with *Bostock* no matter its outcome, *see* 84 Fed. Reg. at 27,857; *Washington*, 482 F. Supp. 3d at 1114-18, any suggestion that the APA compelled a last-minute reconsideration in light of *Bostock* would be inconsistent with administrative law principles:

---

[6] https://www.federalregister.gov/documents/2020/06/19/2020-11758/nondiscrimination-in-health-and-health-education-programs-or-activities-delegation-of-authority#page-37244 (public inspection link) (last accessed Jan. 12, 2026).

> Administrative consideration of evidence always creates a gap between the time the record is closed and the time the administrative decision is promulgated and we might add, the time the decision is judicially reviewed. If upon the coming down of the order litigants might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening.

*Vt. Yankee*, 435 U.S. at 554-55 (citation omitted). If the administrable rules articulated in *Vermont Yankee* were replaced with Walker's nebulous framework, which precludes issuance of final rules while potentially related Supreme Court litigation is pending, "[r]ulemaking proceedings would never end[.]" *See Pers. Watercraft Indus. Ass'n v. Dep't of Com.*, 48 F.3d 540, 543 (D.C. Cir. 1995) (citation omitted). Indeed, HHS's Section 1557 regulations cover a broad swath of civil rights law addressed in the many statutes referenced in Section 1557—areas the Supreme Court addresses nearly every term.

*Fifth*, Walker complains that HHS failed to "advance *any* evidence that [§ 92.2 (2020)] advances the purposes of Section 1557 or the ACA[.]" Mem. at 20. *See also id*. at 21 (arguing that HHS was required to engage in "fact finding"). But "[t]he APA imposes no general obligation on agencies to produce empirical evidence. Rather, an agency has to justify its rule with a reasoned explanation." *Stilwell*, 569 F.3d at 519. And it is far from clear how § 92.2 (2020) could plausibly fail to advance "the purpose of Section 1557 and the ACA as a whole," Mem. at 20, given that it parrots the language of Section 1557.

*Sixth*, Walker argues that nonbinding statements in the preamble indicating that "Title IX . . . consistently understands 'sex' to refer to the biological binary categories of male and female only[,]" 85 Fed. Reg. at 37,179, were a "justification" for § 92.2 (2020) that "falters because [92.2 (2020)] directly contradicts" *Bostock*. Mem. at 20 (referring to HHS statement that lower courts caused confusion as to the meaning of the term "sex"). But these nonbinding statements were mere responses to various "[c]ommenters" who had "offered different points of view on the definition of the term 'sex,'" 85 Fed. Reg. at 37,177; they were not justifications for the regulation that HHS actually promulgated. HHS deliberately determined not to place a statement on this issue in the challenged regulations. *Supra* at pp. 7-12; *infra* at pp. 16-18.

13

**3.      Walker Has Not Demonstrated That Each Specific Argument Advanced in this Case Was Raised During the Comment Period.**

A person challenging an agency rule must show that the "specific argument" advanced on judicial review was "raised before the agency" during the comment period. *Koretoff v. Vilsack*, 707 F.3d 394, 398 (D.C. Cir. 2013). Walker's brief identifies only three comments and each addresses only putative "harms LGBTQ individuals would suffer[.]" Mem. at 11. Again, the agency considered these objections. *See supra* at pp. 10-11. Walker fails to show that all other specific arguments were raised during the comment period.

**4.      Walker Has Not Shown Prejudicial Error.**

The APA compels the Court to take "due account" of "the rule of prejudicial error[,]" 5 U.S.C. § 706, and it is Walker's burden to show that any error by the agency is prejudicial, *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 690 (D.C. Cir. 2023). Error is prejudicial if it "affect[ed Walker's] substantial rights." *Olin Indus. v. NLRB*, 192 F.2d 799, 799 (5th Cir. 1952). *See Econ. Opportunity Comm'n of Nassau Cnty. v. Weinberger*, 524 F.2d 393, 399-400 (2d Cir. 1975). Here, any error had no impact on Walker's substantial rights, benefits, or remedies under Section 1557. Under § 92.2 (2020), Walker was free to file a complaint with HHS against any covered entity raising claims of prohibited discrimination. And if Walker is "correct that *Bostock* means that Title IX and Section 1557 must incorporate protection for gender identity and sexual orientation discrimination," then "the 2020 Rule [did] in fact, extend protection against discrimination to LGBTQ individuals via the Rule's incorporation of Title IX by reference." *Washington*, 482 F. Supp. 3d at 1115. HHS had committed to acting "to the fullest extent of [this] statutory authority in its efforts to improve the health and wellbeing of all." 85 Fed. Reg. at 37,181.

**5.      Walker Has Not Shown Discriminatory Intent and Effect Rendering Section 92.2 (2020) Unconstitutional or Otherwise Invalid.**

Walker has not shown that Section 92.2 (2020) was unlawful as allegedly adopted with discriminatory intent. Mem. at 16-17, 22-23. Because § 92.2 (2020) parrots the language of Section 1557 itself, which is facially neutral, Walker would have to show that it "was adopted with

14

discriminatory intent and resulted in a discriminatory effect." *Chinese Am. Citizens All. of Greater N.Y. v. Adams*, 116 F.4th 161, 170 (2d Cir. 2024).

Walker fails to make the required showings. Walker acknowledges that § 92.2 (2020) was supported by "non-discriminatory justification[s.]" Mem. at 17. And conduct that is "as consistent with [a] permissible" motivation "does not, standing alone, support an inference" of an impermissible one. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

Walker claims the agency's justifications from 2020 are "undermined by the slew of executive orders recently issued" in 2025. Mem. at 17. But statements that post-date the challenged action by five years "do not qualify as 'contemporary statements' probative of the decision at issue." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 35 (2020) (citation omitted). Walker thus offers no evidence of discriminatory intent—and has made no effort to show discriminatory effect. *Washington*, 482 F. Supp. 3d at 1115. Indeed, Walker could not plausibly show discriminatory effect in § 92.2's application by HHS insofar as it was enjoined by this Court before it took effect, has since been replaced, and thus "had not . . . been applied in a particular instance[.]" *Reno*, 507 U.S. at 300.

Moreover, even if § 92.2 (2020) had some discriminatory motivation, that would not have required its invalidation if "the same decision would have been reached" even had the impermissible purpose not been considered. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285 (1977); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 n.21 (1977). Here, § 92.2 (2020) would have been promulgated for reasons HHS provided. *Supra* at pp. 8-10. *See FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 577 (2025) (For courts "to peel back the curtain on [an agency's] representation would have required respondents to make a 'strong showing of bad faith or improper behavior.'" (citation omitted)).

### B. Walker Fails to Satisfy the Remaining Equitable Factors.

Walker makes no showing on the remaining equitable factors. Walker's brief does not show future irreparable injury due to Defendants' possible prospective enforcement of § 92.2

15

(2020).  Nor could Walker make such a showing given the replacement of § 92.2 (2020) in 2024.

Moreover, Walker has an adequate legal remedy, foreclosing equitable relief against Defendants.

*See supra* at pp. 5-6.  And Walker's brief does not even attempt to make the necessary showing

on the final factors, which "merge when the Government is the opposing party."  *Nken v. Holder*,

556 U.S. 418, 435 (2009).

### III.     The Preamble Statements Walker Challenges Are Not Reviewable Agency Actions.

Insofar as Walker is challenging preamble statements rather than the prior regulation itself,

the Court should enter judgment for Defendants for failure to challenge a reviewable agency

action.

Only "final agency action" is reviewable under the APA.  5 U.S.C. § 704.  Finality involves

a two-part test: (1) "the action must mark the 'consummation' of the agency's decisionmaking

process," rather than being "of a merely tentative or interlocutory nature[;]" and (2) "the action

must be one by which 'rights or obligations have been determined,' or from which 'legal

consequences will flow[.]"  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted).

Walker appears to challenge preamble statements rather than the agency's prior regulations

themselves.  For example, citing only preamble statements and no regulatory provision, Walker

argues that "HHS took and continues to take the position that gender identity discrimination is not

encompassed within Title VII or Title IX."  Mem. at 16.  But statements in the preamble (even to

a regulation that is on the books, unlike the 2020 Rule) are not themselves a reviewable final

agency action because they satisfy neither *Bennett* prong.

Start with *Bennett* prong two.  It is "not the norm" for "preamble statements" to "constitute

binding, final agency action susceptible to judicial review."  *Nat. Res. Def. Council v. EPA*, 559

F.3d 561, 564-65 (D.C. Cir. 2009).   That is because agency statements "having general

applicability and *legal effect*" must be published in the CFRs, 44 U.S.C. § 1510(a) (emphasis

added).  *See Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 539 (D.C. Cir. 1986).  Indeed,

to consider preamble statements about the scope of prohibited sex discrimination to themselves be

reviewable agency action would be directly contrary to HHS's justification for *not* including those

16

very positions in a binding regulation: "[b]ecause of the likelihood that the Supreme Court will be addressing the issue in the near future[.]"  84 Fed. Reg. at 27,857.  *See Brock*, 796 F.2d at 539 (finding statements to be nonbinding when "it was specifically (in part) the Secretary's belief in the *impracticality* of a binding regulation on this subject that caused him to . . . publish the policy in the Federal Register only").  "By treating [nonbinding statements] as a regulation, [Walker] render[s] this considered distinction useless, and plainly frustrat[es] the Secretary's intent."  *Id.*

Although a statement not published in the CFRs may be reviewable, that is only if the agency treats it as binding, and only if it has appreciable legal consequences for a plaintiff.  *See, e.g., Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 638-40 (D.C. Cir. 2019); *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014).  And Walker entirely fails to identify any "events" since the preamble statements were issued showing that HHS "has applied [them] as if [they were] binding on regulated parties."  *Nat'l Mining*, 758 F.3d at 253.  Walker does not cite any HHS hearing examiner opinion claiming to be bound by a 2020 preamble statement.  Indeed, Walker does not cite anything from any HHS enforcement action "rel[ying] on" any preamble statement.  *See, e.g., Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1007 (D.C. Cir. 2014).  To the contrary, the agency has since issued additional statements that are not consistent with the 2020 statements Walker references.  *See* Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37,522 (May 6, 2024); Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47,824 (Aug. 4, 2022); Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972, 86 Fed. Reg. 27,984 (May 25, 2021).

The preamble statements also fail to satisfy *Bennett* prong one.  In context, these statements bore considerable indicia that they were tentative positions.  Walker ignores the agency's explanation that it deliberately declined to include those positions in a binding regulation after "conclud[ing] it [was] inappropriate to do so *at this time*" in light of ongoing litigation before the Supreme Court, leaving the issues to be addressed in a future distinct final agency action.  84 Fed. Reg. at 27,874 (emphasis added).  Indeed, the "positions" that Walker refers to were little more

17

than HHS's references to the Government's litigation positions in pending Supreme Court litigation, *e.g., id*. at 27,856-57; those positions were inherently tentative given that the Supreme Court is the ultimate arbiter of the law.

Moreover, "later proceedings" that are "at least the equivalent of proceedings on a motion for reconsideration" can "clearly deprive[]" an agency statement "of any finality it may have enjoyed." *Pub. Citizen v. Bowen*, 833 F.2d 364, 366 (D.C. Cir. 1987). And the agency's decision to follow through and again re-address these issues in later agency actions confirm that the 2020 statements were tentative or at least deprived the 2020 statements of finality. *See* 89 Fed. Reg. 37,522; 87 Fed. Reg. 47,824; 86 Fed. Reg. 27,984.

## IV.    Walker is Not Entitled to "Vacatur."

### A.    The APA Does Not Authorize Vacatur of Rules.

Although some courts have come to treat vacatur as the default remedy for errors in agency rules, that practice has no basis in the APA. Indeed, the APA "does not say anything about 'vacating' agency action ('wholesale' or otherwise)." *United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring).

Rather, the APA addresses judicial remedies in Section 703. Section 703 specifies that "[t]he form of proceeding for judicial review is the special statutory review proceeding [as] specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus[.]" 5 U.S.C. § 703.

Section 703 thus sets out the "form[s] of proceeding" by which a plaintiff may pursue an APA claim. Absent a special statutory review proceeding, Section 703 specifies that a plaintiff may proceed by "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction." *Id*. As this formulation makes clear, the APA does not itself create new remedies, but instead looks to pre-existing remedies available in the "form[s] of legal action" known at the time of the APA's enactment. *See, e.g.*, Administrative Procedure Act, S. Doc. No. 248 at 8, 79th

18

Cong., 2d Sess. 36-37 (1946); 92 Cong. Rec. 2159 (1946) (referring to Section 703 as governing remedies); S. Rep. No. 752, at 44, 79th Cong., 1st Sess. 44 (1945) (explaining that the APA "declares the existing law concerning the scope of judicial review"). And in the absence of a special review statute, the ordinary method of review before the APA was a suit in equity against a federal official, typically seeking a prohibitory injunction. *E.g.*, *Am. Sch. of Magnetic Healing* v. *McAnnulty*, 187 U.S. 94 (1902).

Notably absent from Section 703 is any reference to a traditional "form of legal action" for vacatur of agency rules. *Texas*, 599 U.S. at 698 (Gorsuch, J., concurring). Nor are Defendants aware of any pre-APA historical tradition of equitable actions for vacatur of rules.

The statutory provision most often cited as the textual basis for an APA vacatur remedy is 5 U.S.C. § 706(2), which provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be[,]" *e.g.*, arbitrary or capricious. But Section 706, titled "Scope of review," is not a remedy provision at all—it directs courts concerning the proper ambit of review. In this context, the APA's direction to a reviewing court to "set aside" unlawful agency action means to disregard it—to set it to the side—in resolving the claim for the relief identified in Section 703, in the same way a court would set aside and disregard an unconstitutional statute. It is well settled that courts "have no power per se to review and annul acts of Congress on the ground that they are unconstitutional." *Massachusetts* v. *Mellon*, 262 U.S. 447, 488 (1923). Instead, judicial review "amounts to little more than the negative power to disregard an unconstitutional enactment." *Id.* Judicial review of agency rules under Section 706 functions the same way. *See Texas*, 599 U.S. at 696 (Gorsuch, J., concurring); *Arizona* v. *Biden*, 40 F.4th 375, 397 (6th Cir. 2022) (Sutton, C.J., concurring).

This usage also makes sense of the phrase "set aside" in all settings where Section 706(2) applies. The APA expressly permits, for example, challenges to agency action to be raised in "actions for declaratory judgment" or "habeas corpus" actions, 5 U.S.C. § 703, but "no one thinks a court adjudicating a declaratory action or a habeas petition 'vacates' agency action along the way." *Texas*, 599 U.S. at 699 (Gorsuch, J., concurring). Instead, courts simply ignore—set aside—

19

the regulation in determining whether to grant habeas relief or judicial enforcement. The same principle holds in judicial review of agency adjudications, which are party-specific actions that may rely on an agency rule, but that would not provide any occasion for a reviewing court to vacate the underlying rule. *See Neb. Dep't of Health & Hum. Servs. v. HHS*, 435 F.3d 326, 330 (D.C. Cir. 2006); *Baeder v. Heckler*, 768 F.2d 547, 553 (3d Cir. 1985). And the same point holds true for the APA's instruction that a court should disregard unfounded "findings" or "conclusions"; it makes little sense to say that a court "vacates" those as opposed to simply disregarding them for purposes of resolving the case before it. *Texas*, 599 U.S. at 697 (Gorsuch, J., concurring).

In sum, absent a special statutory review proceeding, a reviewing court considers an APA claim in the context of the "applicable form of legal action," 5 U.S.C. § 703, and may issue the remedies traditionally used to restrain or compel agency action in the proceeding before it. If, in adjudicating the case, the court concludes that agency action was unlawful, the court will "set aside" that action and decide the plaintiff's rights without reference to it. But the remedy given to the plaintiff at the end of the case will still be dictated by the applicable form of legal action, and not by the substantive scope of the court's review as defined in Section 706.

Thus, insofar as the Court concludes that § 92.2 (2020) is substantively invalid, the Court should not "vacate" the provision but instead issue a judgment declaring that HHS may not treat § 92.2 (2020) as binding when adjudicating any complaint that Walker was allegedly subjected to discrimination under any covered program or activity in violation of Section 1557.

**B.      Even if Vacatur is Available, it is Subject to Equitable Principles.**

Even if a court is of the view that vacating a rule is an available remedy under the APA, nothing about the term "set aside" requires that vacatur function universally or that party-specific declaratory or injunctive relief cannot be granted instead. If it is an available remedy at all, vacatur is an equitable remedy subject to ordinary equitable principles, including principles supporting party-specific relief.

Congress enacted the APA against a background rule that statutory remedies should be construed in accordance with "traditions of equity practice." *Hecht Co. v. Bowles*, 321 U.S. 321,

20

329 (1944). Courts "do not lightly assume that Congress has intended to depart from established principles" of equity, *Weinberger* v. *Romero-Barcelo*, 456 U.S. 305, 313 (1982), and ordinarily courts expect that Congress will make "an unequivocal statement of its purpose" if it intends to make "a drastic departure from the traditions of equity practice," *Hecht Co.*, 321 U.S. at 329. The "set aside" language of Section 706(2) does not meet this standard. It neither refers to vacatur nor specifies as to whom the agency action should be set aside. *See Arizona*, 40 F.4th at 397 (Sutton, C.J., concurring). Elsewhere, the APA makes explicit that it does not upset "the power or duty of the court to . . . deny relief on any . . . equitable ground[.]" 5 U.S.C. § 702(1).

Even if vacatur of rules were a permissible remedy, therefore, it would be subject to ordinary equitable principles, two of which are particularly relevant here. First, in fashioning equitable relief, courts ordinarily weigh equitable considerations that may make any particular relief inappropriate. This includes the power to withhold relief altogether even after success on the merits has been conclusively shown. *See, e.g.*, *Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) (Injunctions do "not follow from success on the merits as a matter of course."); *Romero-Barcelo*, 456 U.S. at 313 (Judges are "not mechanically obligated to grant an injunction for every violation of law."). There is thus no obligation to issue vacatur where other remedies (such as a tailored injunction or declaratory judgment) would provide adequate relief to the complaining party, assuming the complaining party establishes its entitlement to such relief. A similar principle operates in the context of what has been described as "remand without vacatur," where courts withhold immediate relief altogether on equitable grounds.

Second, remedies "ordinarily 'operate with respect to specific parties,'" rather than "'on legal rules in the abstract,'" *California* v. *Texas*, 593 U.S. 659, 672 (2021) (citation omitted). Equitable remedies are no exception. *Madsen* v. *Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). The text of the APA does not demonstrate the clear intent by Congress that would be required to "upset the bedrock practice of case-by-case judgments with respect to the parties in each case." *Arizona*, 40 F.4th at 396 (Sutton, C.J., concurring).

21

Thus, even if a court wishes to issue an order styled as a "vacatur," that order should be tailored to the plaintiff's interest in the lawsuit, in accordance with traditional equitable principles. *Texas*, 599 U.S. at 702-04 (Gorsuch, J., concurring). Here, insofar as the Court concludes that § 92.2 (2020) is substantively invalid, the Court could afford complete relief to Walker by entering a judgment declaring that HHS may not treat § 92.2 (2020) as binding—or must treat it as "vacated"—when adjudicating any complaint that Walker was allegedly subjected to discrimination under any covered program or activity in violation of Section 1557.[7]

### V.    Walker Is Not Entitled to a Mandatory Injunction Compelling the Secretary to Prescribe Any Regulations That Were on the Books Long Ago.

Insofar as Walker is seeking an order compelling the Secretary to prescribe regulations that mirror those that were on the books before 2020, such an order is not appropriate. Because that relief would require the Secretary to take a specific action, it would constitute a mandatory rather than prohibitory injunction. And a request for "a mandatory injunction against a federal official is analyzed as one requesting mandamus." *Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 918 n.1 (D.C. Cir. 1980); *Or. Nat. Res. Council. v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995) (same).

"To establish entitlement to mandamus relief, the plaintiff must demonstrate 1) a clear and indisputable right to the particular relief sought against the federal official, 2) that the federal official is violating a clear duty to act, and 3) that the plaintiff has no adequate alternate remedy." *Illinois v. Ferriero*, 60 F.4th 704, 713 (D.C. Cir. 2023). The "question becomes whether [Walker has] 'demonstrated a clear and indisputable right to relief based on a clear and compelling duty to act, as required to support mandamus relief.'" *Id.* at 715 (citation omitted).[8]

---

[7] If the Court were to determine that any portion of the old regulations were invalid as to Walker, it should give effect to the severability clause, *see* 45 C.F.R. § 92.3(d) (2020), and tailor any relief narrowly to the provision challenged by Walker. *See, e.g.*, *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 623-28 (2020).

[8] Walker cannot avoid the applicable standard through artful pleading. *See Miguel v. McCarl*, 291 U.S. 442, 452 (1934); *Gaines v. Thompson*, 74 U.S. 347, 352 (1868); *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005).

Walker cannot establish that Section 1557 imposes a "crystal-clear legal duty" on HHS, *see In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022), to promulgate any specific regulations. Again, the statute provides that the "Secretary *may* promulgate regulations to implement th[e] section[,]" 42 U.S.C. § 18116(c) (emphasis added), and the word "may" clearly connotes discretion, *Biden*, 597 U.S. at 802.[9]

True, the APA compels HHS to exercise its discretion reasonably. But the Supreme Court has held that the "proper" remedy for an agency's failure to do so is a "remand to the agency for additional investigation or explanation," not for the Court to order a particular result. *Fla. Power & Light Co v. Lorion*, 470 U.S. 729, 744 (1985). *See also Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013) (After determining "that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency.") (citation omitted). This case presents a "rare circumstance" in which the Secretary has no such clear duty to reconsider, *see Lorion*, 470 U.S. at 744, because the agency already reconsidered the challenged 2020 regulations when it promulgated the 2024 regulations that are now on the books. A compulsory remand would therefore be unwarranted, even if the Court concludes that the agency acted unreasonably in violation of 5 U.S.C. § 706(2)(A) when prescribing § 92.2 (2020).

## CONCLUSION

The Court should deny Walker's motion and grant Defendants' cross-motion.

Dated: January 15, 2026                    Respectfully submitted,

                                           BRETT A. SHUMATE
                                           Assistant Attorney General

                                           MICHELLE R. BENNETT
                                           Assistant Director, Federal Programs Branch

                                           */s/ Liam C. Holland*
                                           LIAM C. HOLLAND
                                           Trial Attorney
                                           United States Department of Justice

---

[9] Walker's adequate alternate remedy also forecloses mandamus. *See supra* at pp. 5-6.

23

Civil Division, Federal Programs Branch
Washington, D.C. 20005
Tel.: (202) 514-4964
Fax: (202) 616-8470
Email: liam.c.holland@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATION OF WORD COUNT</u>

As required by Local Civil Rule 7.1, I certify that the word count of the word-processing program used to prepare this memorandum of law shows that it includes 8,701 words, not including the caption, table of contents, table of authorities, signature blocks, or this certificate.

Dated January 15, 2026

<u>*/s/ Liam C. Holland*</u>
Liam C. Holland
