**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| TANYA ASAPANSA-JOHNSON WALKER, | Civil Action No. 20-cv-02834-FB-SMG |
| *Plaintiff,* | |
| v. | |
| ROBERT F. KENNEDY, JR., in his official capacity as the Secretary of the United States Department of Health and Human Services, and | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
| *Defendants.* | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER**
**MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS'**
<u>**CROSS-MOTION FOR SUMMARY JUDGMENT**</u>

**HUMAN RIGHTS**
**CAMPAIGN FOUNDATION**

Cynthia C. Weaver
1640 Rhode Island Ave, NW
Washington, DC 20036-3278
Telephone: (202) 527-3669
Facsimile: (202) 347-5323
*cynthia.weaver@hrc.org*

*Counsel for Plaintiff*
*Tanya Asapansa-Johnson Walker*

**BAKER & HOSTETLER LLP**

Edward J. Jacobs
Kathryn M. Zunno-Freaney
Michael A. Sabella
45 Rockefeller Plaza
New York, New York 10111-0100
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
*ejacobs@bakerlaw.com*
*kzunno@bakerlaw.com*
*msabella@bakerlaw.com*

Saidah A. Grimes**
One North Wacker Drive
Suite 3700
Chicago, Illinois 60606-2841
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
*sgrimes@bakerlaw.com*

Gregory A. Tanner**
1170 Peachtree Street, NE, Suite 2400
Atlanta, Georgia 30309-7676
Telephone: (404) 459-0050
Facsimile: (404) 459-5734
*gtanner@bakerlaw.com*

*Counsel for Plaintiff*
*Tanya Asapansa-Johnson Walker*

**Admitted pro hac vice*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ............................................................................................................... 2

    I.    Plaintiff's Claims Are Not Moot. ..................................................................... 2

    II.    Plaintiff Continues to Face the Likelihood of Discrimination in Health Care Under the 2020 Rule. ............................................................................................... 2

    III.    Plaintiff Is Entitled to Injunctive Relief and Declaratory Relief on Her Administrative Procedure Act Claims Because HHS's Actions Were Arbitrary and Capricious. ....................... 5

        A.    The 2020 Rule Contradicts *Bostock* and Is Contrary to Law. ....................... 5

        B.    The 2020 Rule is Procedurally and Substantively Invalid. ............................ 7

        C.    Timing of the 2020 Rule Contradicts HHS's Articulated Reasons for Implementation. 8

        D.    HHS Offers No Reasoned Justification for the 2020 Rule. ......................... 10

    IV.    The 2020 Rule's Preamble Statements Evidence HHS's Intent. ................... 11

    V.    Plaintiff Is Entitled to Vacatur under the APA. ........................................... 12

CONCLUSION ......................................................................................................... 16

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A.C. by M.C. v. Metro Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023) ............................ 7

*Baur v. Veneman*, 352 F.3d 625 (2d Cir. 2003) ............................................................. 3

*Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020) ...................................................... *passim*

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492 (2d Cir. 2017) ......... 10

*Chicago, Rock Island & Pacific Railway Co. v. United States*, 284 U.S. 80 (1931) ................... 13

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) ............................................................ 4

*CHW West Bay v. Thompson*, 246 F.3d 1218 (9th Cir. 2001) ............................................... 11

*Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 132 F.4th 535 (D.C. Cir. 2025) ...................... 14

*City of Chicago v. United States Dep't of Homeland Sec.*, 25 C 5463 (N.D. Ill. Nov 13, 2025) .. 14

*Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407 (1942) ...................................... 14

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799 (2024) ....................... 13

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) ............................ 7

*District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1 (D.D.C. 2020) ....................... 15

*E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962 (9th Cir. 2020) ................................... 14

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ............................................. 7

*Fed. Sec. Admin. v. Quaker Oats Co.*, 318 U.S. 218 (1943) .............................................. 14

*Flack v. Wisc. Dep't of Health Servs.*, 331 F.R.D. 361 (W.D. Wis. 2019) ............................... 3

*Florida v. Dep't of Health & Hum. Servs.*, No. 24-12826 (11th Cir. Apr. 3, 2025) ..................... 6

*Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110 (9th Cir. 2023) ................................... 7

*Grim v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020) ...................................... 7

*Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42 (2d Cir. 2016) ..... 12

*Harman Min. Co. v. Director*, 678 F.3d 305 (4th Cir. 2012) ........................................................ 11

*Illinois v. Fed. Emergency Mgmt. Agency*, C. A. 25-206 WES (D.R.I. Sept. 24, 2025) ............... 14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ............. 7, 10, 11

*Nat'l Wrestling Coaches Assoc. v. Dep't of Educ.*, 366 F.3d 930 (D.C. Cir. 2004) ........................ 4

*Norsworthy v. Beard*, 87 F. Supp. 3d 1165 (N.D. Cal. 2016) ......................................................... 3

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ...................................................................................... 3

*Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92 (2015) ................................................................. 4

*Rest. Law Ctr. v. U.S. Dep't of Labor*, 120 F.4th 163 (5th Cir. 2024) .......................................... 14

*Tennessee v. Becerra*, 131 F.4th 350 (6th Cir. 2025) ................................................................... 6

*Texas v. Kennedy*, No. 24-40568 (5th Cir. Mar. 17, 2025) ............................................................ 6

*United States v. Baltimore & Ohio R.R. Co.*, 293 U.S. 454 (1935) ............................................... 13

*United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279 (D.C. Cir. 2019) ........................... 14

*Vermont Yankee Nuclear Power Corp. v. Nat'l Res. Def. Council, Inc.*, 435 U.S. 519 (1978) ....... 8

*Walker v. Azar*, 480 F. Supp. 3d 417 (E.D.N.Y. 2020) .......................................................... *passim*

*Walker v. Kennedy*, 1:20-cv-02834-FB-VMS (E.D.N.Y. July 8, 2025) ................................... *passim*

*Washington Legal Foundation v. Alexander*, 984 F.2d 483 (D.C. Cir. 1993) ................................ 4

*Whitman-Walker Clinic v. HHS*, 485 F. Supp. 3d 1 (D.D.C. 2020) ..................................... 7, 8, 10

*Women's Equity Action League v. Cavazos*, 906 F.2d 742  (D.C. Cir. 1990) ................................ 4

*World Shipping Council v. Fed. Mar. Comm'n*, 152 F.4th 215 (D.C. Cir. 2025) .......................... 15

*Wyo. Outdoor Council v. U.S. Forest Serv.*, 164 F.3d 43 (D.C. Cir. 1999) ................................... 11

**STATUTES**

42 U.S.C. § 18116 ........................................................................................................................ 4

5 U.S.C. § 706 ................................................................................................................ 15

**REGULATIONS**

84 Fed. Reg. 27,846, 27,849 (June 14, 2019) .................................................................. 6

85 Fed. Reg. 37160, 37,203 (June 19, 2020) ................................................................... 5

89 Fed. Reg. 37522, 37,523 (May 6, 2024) ..................................................................... 2

90 Fed. Reg. 20,393, 20,393–20,394 (May 14, 2025) ..................................................... 7

Plaintiff Tanya Asapansa-Johnson Walker, by and through her undersigned attorneys, submits this memorandum of law in support of her Reply in support of her Motion for Summary Judgment (the "Motion") and Opposition to Defendants' cross-motion for summary judgment (the "Cross-Motion").

## PRELIMINARY STATEMENT

The Cross-Motion, for the most part, is Defendants' attempt at take "another bite at the apple." It advances many of the same arguments previously considered and rejected by this Court. Principally, Defendants again argue that Plaintiff's suit was mooted because the 2020 Rule is no longer in effect and was replaced by the 2024 Rule. However, this Court explicitly rejected that argument in its Memorandum and Order denying Defendants' motion to dismiss. *Walker v. Kennedy*, 1:20-cv-02834-FB-VMS (E.D.N.Y. July 8, 2025) [ECF No. 62] ("MTD Decision").

Defendants further argue that they provided a reasoned justification for repealing the definition of "sex" set forth in the 2016 Rule and that the preamble statements cited by Plaintiff in her Motion are unavailing. Again, this Court previously heard and rejected these arguments. *See Walker v. Azar*, 480 F. Supp. 3d 417 (E.D.N.Y. 2020). Specifically, this Court found unavailing Defendants' contention that the 2020 Rule merely parroted the statutory language of Section 1557 and thus could have been enforced in a manner consistent with the Supreme Court's ruling in *Bostock*. As detailed, *infra*, HHS's repeal of the 2016 Rule in favor of the 2020 Rule evidences HHS's intent to exclude from Section 1557 protections against discrimination in health care based on a person's sexual orientation, gender identity, or gender non-conforming status.

Finally, Defendants again state that Plaintiff is not entitled to vacatur, which was also previously argued before and rejected by this Court. *See Walker*, 480 F. Supp. 3d at 427.

In sum, Defendants fail to advance any new arguments with respect to Plaintiff's challenge of the 2020 Rule under the APA. Accordingly, Plaintiff respectfully requests that this Court grant her Motion and deny the Cross-Motion.

## ARGUMENT

### I.    Plaintiff's Claims Are Not Moot.

The Cross-Motion reasserts arguments on mootness previously rejected by this Court. *See* Cross-Motion at 1. As this Court previously explained, "the viability of the 2020 Rule remains a live issue." MTD Decision at 12. The 2024 Rule was subject to multiple nationwide stays and preliminary injunctions once promulgated, which in effect, blocked implementation of the 2024 Rule. Moreover, the 2024 Rule's preamble even acknowledges that "[t]he 2020 Rule remains in effect, save for the parts enjoined or set aside by courts, until the effective date of this final rule." 89 Fed. Reg. 37522, 37,523 (May 6, 2024). As a result, the 2020 Rule remains in effect, as this Court recognized in the MTD Decision and presents "a live issue." MTD Decision at 11–12.

Moreover, this Court stated that "in light of HHS's preliminary response to President Trump's directive to exclude gender identity from the definition of sex discrimination, that the 2024 Rule will never take effect," and concluded that "the 2020 Rule will remain in effect until it is superseded by something else." *Id.* This is further supported by the slew of executive orders recently issued by the current Administration supporting its position that "sex" is defined as only pertaining to a person's sex assigned at birth. Accordingly, "[s]o long as the 2020 Rule remains in effect, [Plaintiff's] challenge is not moot." *Id.* at 16.

### II.    Plaintiff Continues to Face the Likelihood of Discrimination in Health Care Under the 2020 Rule.

Plaintiff is likely to continue to face discrimination when receiving health care because of the 2020 Rule. Plaintiff's Complaint details the history of discrimination she has suffered when

seeking health care. *See Walker Decl.* ¶¶ 18, 20–21, 29–31 37–38, 58–64, 70–73, ECF No. 1. As previously recognized by this Court, Plaintiff's past experiences with discrimination in receiving health care constitute an injury in fact. *See id.* at 14-15; *see also Baur v. Veneman*, 352 F.3d 625, 631-34 (2d Cir. 2003) (recognizing that an increased risk of contracting food-borne illness is a cognizable injury); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.").

In arguing that Plaintiff may have a private right of action to redress discrimination against her, HHS disregards that its own 2020 Rule is a potential barrier to any future cause of action Plaintiff may have. The 2020 Rule's repeal of explicit protections for individuals based on their gender identity or transgender status threatens Plaintiff's ability to receive the critical care she needs, thereby increasing the likelihood of irreparable harm she would suffer. *See Flack v. Wisc. Dep't of Health Servs.*, 331 F.R.D. 361, 373 (W.D. Wis. 2019) (explaining that denying coverage for gender-conforming surgeries cannot be fully rectified by a final judgment after trial); *Norsworthy v. Beard*, 87 F. Supp. 3d 1165, 1193 (N.D. Cal. 2016) (finding that continuation of suffering from denial of medically necessary treatment constitutes an irreparable injury).

Moreover, HHS cites no authority for its position that Plaintiff "may seek adequate relief for any alleged discrimination in a private suit filed directly against any entity covered under Section 1557[,]" (Cross-Motion at 6), nor authority permitting its very own unlawful regulation to stand with the force of law. HHS does not explain how Plaintiff may seek adequate relief if the 2020 Rule erodes protections for discrimination based on gender identity when receiving health care. HHS (i) ignores that the ACA was enacted to prohibit discrimination on the basis of sex in health care, *see* 42 U.S.C. § 18116, (ii) that several courts have interpreted "sex" to be inclusive

3

of sexual orientation, gender identity, and transgender status, *see* Mot. at 4–5, and (iii) that the 2020 Rule obstructs the clear intent of the ACA, creating more confusion and uncertainty, and increasing the likelihood that Plaintiff will face discrimination in health care. This Court acknowledged the practical impact of the 2020 Rule and "easily conclude[d] that the harm would be irreparable" because monetary damages "could hardly compensate plaintiffs for the detrimental effect of discrimination on their health and, perhaps, their lives." *Walker*, 480 F. Supp. 3d at 428. Accordingly, Plaintiff may be unable to obtain "adequate relief" by filing suit and seeking monetary damages.

HHS cites *National Wrestling Coaches Association v. Department of Education*, 366 F.3d 930, 945–48 (D.C. Cir. 2004), *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 748 (D.C. Cir. 1990), and *Washington Legal Foundation v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993) for the general proposition that Plaintiff has no claim under the APA if Plaintiff has an adequate remedy available against a third party. The cases cited in HHS's Cross-Motion are not binding on this Court, nor can their holdings be extended to the issues in this case.

Further, these cases are inapposite when considering this case because they challenge a lack of agency enforcement of an enacted rule. Here, the 2020 Rule, assuming without deciding that it was promulgated under proper authority and procedure, has the same force and effect of law. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 92 (2015) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 302–03 (1979) (explaining that legislative rules issued through notice-and-comment rulemaking have the "force and effect of law"). Removing broader non-discrimination protections, releasing insurance providers from requirements under Section 1557, and removing Section 93.302(d) providing parties with a private right of action and mechanism through which

4

to assert claims of discrimination, 85 Fed. Reg. 37160, 37,203 (June 19, 2020), all of which are permissible under the 2020 Rule, leave Plaintiff without any adequate remedies.

**III.    Plaintiff Is Entitled to Injunctive Relief and Declaratory Relief on Her Administrative Procedure Act Claims Because HHS's Actions Were Arbitrary and Capricious.**

This Court recognized that the 2020 Rule is in excess of statutory authority or otherwise not in accordance with law. *See* MTD Decision at 6 ("the Court reasoned that the rule's repeal of the 2016 Rule was likely contrary to law because 'the premise of the repeal was a disagreement with a concept of sex discrimination later embraced by the Supreme Court and likely arbitrary and capricious because HHS had finalized the repeal 'without addressing the impact of the Supreme Court's decision in Bostock'") (quoting *Walker*, 480 F. Supp. 3d at 425–30).

In the Cross-Motion, Defendants advance the same arguments previously considered and rejected by this Court. Accordingly, the 2020 Rule is arbitrary and capricious and Plaintiff should be granted summary judgment.

**A.  The 2020 Rule Contradicts *Bostock* and Is Contrary to Law.**

Defendants erroneously argue that the 2020 Rule does not conflict with the reasoning and holding in *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020). HHS states that the 2020 Rule "'declin[es] . . . to propose its own[] definition of 'sex' for purposes of discrimination on the basis of sex in the [2020] regulation'" because it "hoped to 'minimize litigation risk,'" by not "taking a position in either direction on the meaning of the statutory phrase by regulation." *See* Cross-Motion at 9 (quoting 84 Fed. Reg. 27,846, 27,849 (June 14, 2019)). This justification falters because the 2020 Rule implements a position rejected by *Bostock*. Logically, taking a position contrary to Supreme Court precedent would increase the risk of litigation.

Moreover, Defendants offer no justification for the position that the 2020 Rule and *Bostock*'s holding are congruent and can be applied simultaneously. The 2020 Rule repealed the

5

2016 Rule's definition of "sex," which was inclusive of a person's transgender status, sexual orientation, and/or gender identity. Doing so was in direct contradiction to *Bostock*'s holding that "to discriminate against" another individual "for being homosexual or transgender," they must "discriminate against individual men and women in part because of sex." *Id.* at 662. As this Court recognized, although HHS has not yet promulgated a new rule, it rescinded the 2021 notice that would interpret Section 1557 to include discrimination based on sexual orientation and gender identity. *See* MTD Decision at 9–10 (citing Notification of HHS Documents Identified for Rescission, 90 Fed. Reg. 20,393, 20,393–20,394 (May 14, 2025)). Furthermore, Defendants dismissed their appeals of the stays and injunctions preventing the 2024 Rule from taking effect. *See Tennessee v. Becerra*, 131 F.4th 350 (6th Cir. 2025); *Texas v. Kennedy*, No. 24-40568 (5th Cir. Mar. 17, 2025); *Florida v. Dep't of Health & Hum. Servs.*, No. 24-12826 (11th Cir. Apr. 3, 2025). HHS's actions demonstrated that it does not intend to include protections for discrimination based on gender identity within the 2020 Rule, leaving Plaintiff subject to discrimination in the administration of her health care without adequate recourse.

The 2020 Rule directly contradicts *Bostock* and thus is arbitrary and capricious. *See* MTD Decision at 18–19. ("It was the Court's sincere belief that the high court's statement in *Bostock* that one cannot discriminate against people for being homosexual or transgender without 'intentionally discriminat[ing] against individual men and women in part because of sex,' . . . at least pointed to resolution of the issue.") (quoting *Bostock*, 590 U.S. at 662). This Court, in denying HHS's motion to dismiss on mootness grounds, recognized that several other courts also interpreted *Bostock*'s holding to support that discrimination on the basis of sex also includes discrimination on the basis of sexual orientation, gender identity, and gender nonconforming status. *See id.* at 19 (citing *A.C. by M.C. v. Metro Sch. Dist. of Martinsville*, 75 F.4th 760, 769

(7th Cir. 2023) (assigning bathrooms based on biological sex was contrary to *Bostock*'s holding); *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023) (applying the *Bostock*'s holding to Title IX); *Grim v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616–17 (4th Cir. 2020) (same).

Accordingly, HHS's repeal of the 2016 Rule was contrary to law because the premise for the repeal—disagreement with the concept of sex discrimination—was later embraced by the Supreme Court's decision in *Bostock*. It was also arbitrary and capricious because the 2020 Rule did not address *Bostock*. *See* MTD Decision at 6–7, ECF No. 62. HHS's failure to address *Bostock* in the 2020 Rule thus "entirely failed to consider an important aspect of the problem." *Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983) ("State Farm").

### B. The 2020 Rule is Procedurally and Substantively Invalid.

HHS erroneously relies on *Whitman-Walker Clinic v. HHS*, 485 F. Supp. 3d 1, 42–43 (D.D.C. 2020) ("*Whitman-Walker*") to argue that the 2020 Rule was not substantively invalid. But there, the court did not reach the merits of the dispute but rather declined to conclude that the 2020 Rule was invalid. Instead, the court "'address[ed] only whether the agency complied with the procedural requirement that it provide a reasoned explanation for its action.'" *Id.* at 43 (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 35 (2020)).

Here, and as recognized by *Whitman-Walker*, HHS "has not fulfilled its obligation to provide either 'good reasons,' *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) or a 'reasoned analysis' supporting its policy change in promulgating the 2020 Rule and rescinding definitions for sex discrimination under the 2016 Rule." *Id.* at 38 (quoting *State Farm*, 463 U.S. at 42. This is because "[d]iscrimination based on transgender status—*i.e.*, gender identity—often

cannot be meaningfully separated from discrimination based on sex stereotyping because the belief that an individual should identify with only their birth-assigned sex is such a sex-based stereotype." *Whitman-Walker*, 485 F. Supp. 3d at 38.

To date, HHS still has not explained why the 2020 Rule did not acknowledge the holding in *Bostock* nor how *Bostock*'s holding might impact the proposed regulation. *See id.* at 40 (explaining that HHS's failure to consider the import of *Bostock* on the 2020 Rule "before it eliminated regulatory language providing for precisely what *Bostock* seemed to guarantee"). Even the court in *Whitman-Walker* recognized that *Bostock*, "at the very least, has significant implications for the meaning of Title IX's prohibition on sex discrimination, and that it was arbitrary and capricious for HHS to eliminate the 2016 Rule's explication of that prohibition without even acknowledging—let alone considering—the Supreme Court's reasoning or holding." *Id.* at 42 (citing *Walker*, 480 F. Supp. 3d at 430).

### C. Timing of the 2020 Rule Contradicts HHS's Articulated Reasons for Implementation.

Although HHS claims it "could not have withdrawn the regulations without another round of notice and comment," Cross-Motion at 12, HHS offers no explanation for why it proceeded to promulgate the 2020 Rule after the *Bostock* decision.

HHS cites *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 555 (1978) for the general proposition that a gap necessarily exists between when the administrative record closes and when a regulation is promulgated. However, no "new circumstance has arisen . . . or some new fact discovered" in the instant case warranting HHS's lack of reasoned justification. *Id.*

The administrative record contains evidence of the same harms Plaintiff, and countless others experienced, and, as HHS concedes, *Bostock*'s ruling was pending before the 2020 Rule

went into effect. Rather than contend with Plaintiff's arguments that (i) repealing the 2016 Rule's definitions were never calculated to provide cost savings and (ii) that the thousands of comments submitted (of which Plaintiff highlighted only three for the sake of efficiency and judicial economy) reflected grave concerns that repealing the definition of "sex" in the 2016 Rule would subject LGBTQ people to increased discrimination in the administration of health care, HHS claims it knew of no data evidencing the 2020 Rule's disproportionate impact on LGBTQ people. Cross-Motion at 10. HHS's argument that the 2020 Rule merely restates statutory language and thus cannot be contrary to law is equally unavailing because, as this Court noted, it already conceded that *Bostock* would impact its interpretation of "sex." *See Walker*, 480 F. Supp. 3d at 429 (noting that HHS recognized that *Bostock*'s interpretation of "sex" would have "ramifications" on the 2020 Rule because "'Title VII case law has often informed Title IX case law with respect to the meaning of discrimination 'on the basis of sex'" (citing 85 Fed. Reg at. 37,168).

HHS's decision to "continue[] on the same path even after *Bostock* was decided . . . . satisfies the Court that the premise of the repeal was a disagreement with a concept of sex discrimination later embraced by the Supreme Court." *Walker*, 480 F. Supp. 3d at 429. In fact, this Court acknowledged that HHS's decision not to re-evaluate the 2020 Rule after the Supreme Court's decision in *Bostock* "might even suggest to a cynic that the agency pushed ahead specifically to avoid having to address an adverse decision." *Id.* at 430. Plaintiff reiterates that HHS has provided no reason for failing to revise the 2020 Rule considering the Supreme Court's decision in *Bostock*, which was arbitrary and capricious and contrary to HHS's stated arguments for repealing the 2016 Rule's definitions.

9

**D.  HHS Offers No Reasoned Justification for the 2020 Rule.**

This Court previously rejected HHS's attempt to justify the 2020 Rule, finding that "[w]hile HHS surely has an interest in its preferred policy . . . that interest cannot outweigh the harm to the many non-gender conforming members of the public for whom discrimination imposes a very concrete cost[.]" *Walker*, 480 F. Supp. 3d at 428. The Cross-Motion asserts similar arguments that are equally unavailing. *See* Cross-Motion at 8–13.

HHS's contention that the 2020 Rule merely mirrors the statutory language of Section 1557 was previously considered and rejected by this Court as "disingenuous." *See id.* at 21. Because HHS opted to repeal the 2016 Rule, it needed to provide a "reasoned analysis" and "satisfactory explanation" for its change. *State Farm*, 463 U.S. at 42–43; *see also Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 521 (2d Cir. 2017) (recognizing that *State Farm* provides the applicable standard when an agency sets for a changed interpretation of a rule).

HHS's failure to address *Bostock* is inexplicable and bears on "the validity and coherence of the reasons HHS provided for its action." *Whitman-Walker*, 485 F. Supp. 3d at 42. HHS cannot simply assert that eliminating the definition of "sex" would not preclude application of the Supreme Court's construction of that term's meaning. *Id.* The Cross-Motion argues that HHS considered *Bostock* by stating, in the preamble to the 2020 Rule, that *Bostock* may have implications for Section 1557's interpretation and enforcement. Cross-Motion at 11. However, despite this acknowledgement, HHS inexplicably ignored that very decision when it promulgated the 2020 Rule four days after *Bostock* was decided. HHS cannot have it both ways. Either it never considered *Bostock* when promulgating the 2020 Rule, or it did consider *Bostock* and decided to ignore it. Either way, the 2020 Rule is unlawful.

10

Nor is HHS entitled to deference on this issue. Cross-Motion at 8–10. As explained, *supra* Part II.B and C, HHS was required to offer a reasoned justification for its proposed rule change and failed to do so. And any alleged deference owed to HHS does not overcome the APA's clear mandate to consider binding authority and the mountains of evidence before an agency when promulgating a new rule. Accordingly, HHS failed to "examine relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. 29, 43 (1983) (internation quotation omitted).

**IV.    The 2020 Rule's Preamble Statements Evidence HHS's Intent.**

This Court previously found that the 2020 Rule's preamble evidences HHS's intent when promulgating the new rule. *See Walker*, 480 F. Supp. 3d at 429 (citing 85 Fed. Reg. at 37,185 (explaining that the 2020 Rule's preamble advances HHS's belief that "reasonable distinctions on the basis of sex, as the biological binary of male and female, may, and often must, play a part in the decision-making process—especially in the field of health services"). Similarly, other courts also hold that a rule's preamble reflects the agency's understanding of its proposed rules and may serve "as a source of evidence concerning contemporaneous agency intent." *Wyo. Outdoor Council v. U.S. Forest Serv.*, 164 F.3d 43, 53 (D.C. Cir. 1999); *Harman Min. Co. v. Director*, 678 F.3d 305, 315-16 (4th Cir. 2012) (explaining that the preamble to a regulation may explain an agency's rationale for amending its regulations); *CHW West Bay v. Thompson*, 246 F.3d 1218, 1226-27, 1230 (9th Cir. 2001) (noting that a regulation's preamble is evidence of agency action that was arbitrary and capricious). Thus, this Court can and should consider statements made in the preamble to the 2020 Rule as evidence of HHS's understanding and intent when promulgating the 2020 Rule. *See Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*,

11

819 F.3d 42, 52 (2d Cir. 2016) (stating that "it does not make sense to interpret the text of a regulation independently from its" preamble).

This Court stated that "the unmistakable basis for HHS's action [in promulgating the 2020 Rule] was a rejection of the position taken in the 2016 Rules that sex discrimination includes discrimination based on gender identity and sex stereotyping." *Walker*, 480 F. Supp. 3d at 430. The preamble to the 2020 Rule states that the prior definition of "on the basis of sex" discrimination in the 2016 Rule "exceeded the scope of authority delegated by Congress in Section 1557," 85 Fed. Reg. at 37,191 and "cannot be justified by the text of Title IX, and in fact are in conflict with express exemptions in Title IX." *Id.* at 36,162. Many references in the preamble denote HHS's interpretation that "sex" means only "biological binary of male and female." *See, e.g.*, 85 Fed. Reg. at 37,175-37,189. The 2020 Rules take the position that "sex" encompasses neither sexual orientation nor gender identity. *See id.* at 37,194. The preamble here gives meaning to the language in the 2020 Rule and reflects HHS's new interpretation that Section 1557 allows discrimination in health care on the basis of sexual orientation, gender identity, and gender nonconforming status. Accordingly, this Court may consider the preamble statements as evidence of HHS's intention when promulgating the 2020 Rules.

## V.    Plaintiff Is Entitled to Vacatur under the APA.

Agency rules often have broad, prospective application, affecting parties beyond the immediate litigants. Vacatur of unlawful rules ensures that invalid regulations do not continue to govern the conduct of regulated parties, maintaining the rule of law and uniformity. Limiting remedies to specific litigants alone would allow unlawful rules to remain in effect for non-parties, undermining the purpose of judicial review. Vacatur is necessary to prevent invalid rules from perpetuating ongoing harms and to provide complete relief to all affected parties, not just those

12

before the court. The APA's remedial scheme, as interpreted by the courts, is designed to ensure that unlawful agency action is removed from the legal landscape, not merely disregarded in individual cases.

As Defendants noted, the key provision of the APA says that a reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions" found to be arbitrary, capricious, an abuse of discretion, contrary to law, or otherwise defective. 5 U.S.C. § 706. However, the Defendants' interpretation of "set aside" is incorrect. Justice Kavanaugh's words from another case equally apply here: "The Government's position would revolutionize long-settled administrative law—shutting the door on entire classes of everyday administrative law cases. The Government's newly minted position is both novel and wrong. It 'disregards a lot of history and a lot of law.'" *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 827 (2024) (Kavanaugh, J., concurring) (quoting M. Sohoni, The Past and Future of Universal Vacatur). Defendants' understanding of "set aside" in the APA is incorrect because "the text and history of the APA authorize vacatur . . . . When Congress enacted the APA in 1946, the phrase 'set aside' meant 'cancel, annul, or revoke.'" *Id.* at 829 (quoting M. Sohoni, The Past and Future of Universal Vacatur).

Even prior to the APA, courts understood they had the power to vacate and nullify executive agency rules as void. *See e.g.*, *Chicago, Rock Island & Pacific Railway Co. v. United States*, 284 U.S. 80, 100 (1931) (the Court agreed with the plaintiffs in "disapproving" one portion of an Interstate Commerce Commission ("ICC") rule that plaintiffs sought to "be declared void and perpetually set aside, suspended and annulled"); *United States v. Baltimore & Ohio R.R. Co.*, 293 U.S. 454 (1935) (affirming an order that "vacated, set aside, and annulled" and perpetually enjoined the enforcement of an ICC regulation, with Justice Brandeis writing the regulation was

13

"void"); *Fed. Sec. Admin. v. Quaker Oats Co.*, 318 U.S. 218, 224 (1943) (the plaintiffs successfully argued the regulations were invalid because they were not authorized by the statute, and the court understood its task was to review "regulations of general application" for their universal validity instead of limiting relief to only the plaintiffs); *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407 (1942) ("The regulations are the effective implement by which the injury complained of is wrought, and hence must be the object of the attack.").

Since the APA, courts have continued to understand that vacatur is the "default" or "ordinary" remedy for unlawful agency rules, and that its effect is to remove the rule from the legal landscape, not merely to prevent its enforcement against the litigants. *See, e.g.*, *Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 132 F.4th 535, 541 (D.C. Cir. 2025) (vacating federal regulation after determination that "the FDA did not respond to data speaking to the rulemaking's central question"); *Rest. Law Ctr. v. U.S. Dep't of Labor*, 120 F.4th 163, 170 (5th Cir. 2024) ("our court's 'default rule is that vacatur is the appropriate remedy'"); *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 987 (9th Cir. 2020) ("Section 706(2) does not tell a circuit court to 'set aside' unlawful agency action only within the geographic boundaries of that circuit. Vacatur of an agency rule prevents its application to all those who would otherwise be subject to its operation."); *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action."); *City of Chicago v. United States Dep't of Homeland Sec.*, 25 C 5463 (N.D. Ill. Nov 13, 2025) ("That provision has long been understood to authorize 'vacatur'—vacating an agency action in its entirety, 'rather than merely … enjoin[ing] enforcement … against the specific plaintiffs.'"); *Illinois v. Fed. Emergency Mgmt. Agency*, C. A. 25-206 WES (D.R.I. Sept. 24, 2025) ("declaratory relief provides the legal determination, and vacatur is the logical consequence of that determination."); *District of Columbia v. U.S. Dep't of*

14

*Agric.*, 444 F. Supp. 3d 1, 52 (D.D.C. 2020) ("Limiting final relief to the plaintiffs in APA cases would be absurd, making a patchwork out of federal law.").

Contrary to Defendants' argument, equitable principles for applying relief under the APA favor universal vacatur here. Notably, Defendants' argument for applying equitable principles to limit vacatur confirms that such limitation is an exception to the general rule – i.e., Defendants' equitable principles argument confirms that general vacatur of unlawful regulations is the norm and that party-specific relief is not the default remedy under the APA. Moreover, Defendants' request for a "remand without vacatur" is not warranted because the invalidity of the challenged regulation does not stem from a minor procedural error and Defendants have not provided evidence of significant disruptive effects from a vacatur of the challenged portion of the agency rule. *See World Shipping Council v. Fed. Mar. Comm'n*, 152 F.4th 215, 224 (D.C. Cir. 2025). Instead, the invalidity of the challenged rule stems from, *inter alia*, its unwarranted withdrawal of anti-discrimination protections that did not "comport with the plain text of Section 1557, nor with Congress's plan in passing the Affordable Care Act." Br. of U.S. House of Representatives as *Amicus Curiae* in Support of Plaintiffs, *Walker v. Azar*, Case No. 1:20-cv-02834-FB-SMG, (E.D.N.Y. July 22, 2020) [ECF 14-1, at 17]. Thus, Defendants are not entitled to a limitation on the application of relief in this case when the challenged agency action is detrimental to the public interest and in direct violation of federal law.

Accordingly, generalized vacatur not limited to this litigation is an available remedy within the Court's authority to provide, and such remedy is warranted here.

15

## CONCLUSION

Based upon the arguments cited in the Motion and herein, Plaintiff respectfully requests that the Cross-Motion be denied to the extent it seeks summary judgment, that the Cross-Motion be overruled to the extent it opposes the Motion, and that Plaintiff's Motion be granted.

Dated: February 20, 2026

Respectfully submitted,

/s/ Cynthia C. Weaver
Cynthia C. Weaver
(New York Bar No. 5091848)
cynthia.weaver@hrc.org
**HUMAN RIGHTS**
**CAMPAIGN FOUNDATION**
1640 Rhode Island Ave, NW
Washington, DC 20036-3278
Telephone: (202) 527-3669
Facsimile: (202) 347-5323

Counsel for Plaintiff
Tanya Asapansa-Johnson Walker

/s/ Michael A. Sabella
Edward J. Jacobs
(New York Bar No. 4168126)
ejacobs@bakerlaw.com
Kathryn M. Zunno-Freaney
(New York Bar No. 4572004)
kzunno@bakerlaw.com
Michael A. Sabella
(New York Bar No. 4555504)
msabella@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111-0100
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Saidah A. Grimes**
sgrimes@bakerlaw.com
**Baker & Hostetler LLP**
One North Wacker Drive
Suite 3700
Chicago, Illinois 60606-2841
Telephone: (312) 416-6200
Facsimile: (312) 416-6201

Gregory A. Tanner**
gtanner@bakerlaw.com
**Baker & Hostetler LLP**
1170 Peachtree Street, NE
Suite 2400
Atlanta, Georgia 30309-7676
Telephone: (404) 459-0050
Facsimile: (404) 459-5734

Counsel for Plaintiff
Tanya Asapansa-Johnson Walker
**Admitted pro hac vice

16

## <u>CERTIFICATION OF WORD COUNT</u>

As required by Local Rule 7.1, I certify that this memorandum of law was prepared using Microsoft Word, and the total number of words in this memorandum of law, excluding the caption, table of contents, table of authorities, and signature block is 4,992 words.

Dated: February 20, 2026
      New York, New York

                                             **BAKER & HOSTETLER LLP**

                                             */s/ Michael A. Sabella*

                                             Edward J. Jacobs
                                             45 Rockefeller Plaza
                                             New York, NY 10111
                                             (212) 589-4200
                                             *msabella@bakerlaw.com*