**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

TANYA ASAPANSA-JOHNSON WALKER,

                                      *Plaintiff*,

                    v.                                    Civil Action No.
                                                          20-CV-02834 (FB) (SMG)

ROBERT F. KENNEDY JR., in his official capacity
as the Secretary of the United States Department of
Health and Human Services, and

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

                                      *Defendants*.
----------------------------------------------------------------x

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Date of Service: March 23, 2026

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................... 2

    I.      Walker's Private Right of Action Forecloses this APA Suit. ................................ 2

    II.     Walker Concedes Essential Elements of the APA Claims by
          Failing to Respond. ............................................................................................... 3

    III.    Walker's Contention that the Court Should Interpret § 92.2 (2020)
          By Looking to the Preamble Has No Place in this Facial
          Pre-Enforcement Challenge. ................................................................................. 4

          A.     The Court Must Consider the Circumstances in Which § 92.2
                (2020) Was Most Likely to be Valid. ....................................................... 4

          B.     Even if the Court Considered Preamble Statements, Walker Fixates
                on the Wrong Ones. .................................................................................. 7

    IV.    The APA Did Not Compel HHS to Consider in Advance the Outcome
          of *Bostock* or Other Material Not Before the Agency. .......................................... 7

    V.     In Arguing for APA "Vacatur," Walker Invokes Statutory Provisions
          Authorizing Courts to Annul Final ICC Orders that Congress Declined
          to Include in the APA. ........................................................................................... 9

CONCLUSION ............................................................................................................... 10

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Biden v. Texas*,
   597 U.S. 785 (2022).................................................................................................. 6

*Bostock v. Clayton County*,
   590 U.S. 644 (2020)............................................................................................. 1, 7

*Columbia Broad. Sys. v. United States*,
   316 U.S. 407 (1942).................................................................................................. 9

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   603 U.S. 799 (2024).................................................................................................. 4

*Dangelo v. Client Servs., Inc.*,
   No. 19-CV-1915, 2020 WL 5899880 (E.D.N.Y. June 11, 2020), *report and recommendation adopted,* No. 19-CV-1915, 2020 WL 4187903 (E.D.N.Y. July 21, 2020)..... 3

*Dunn-McCampbell Royalty Int. v. Nat'l Park Serv.*,
   112 F.3d 1283 (5th Cir. 1997), *abrogated on other grounds by* Corner Post, 603 U.S. 799 ..... 4

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021).................................................................................................. 9

*FDA v. Wages & White Lion Invs., LLC*,
   604 U.S. 542 (2025).................................................................................................. 8

*Fed. Sec. Adm'r. v. Quaker Oats Co.*,
   318 U.S. 218 (1943)................................................................................................ 10

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
   503 U.S. 60 (1992).................................................................................................... 2

*Gordon v. Aetna Life Ins. Co.*,
   No. 3:24-cv-1447, 2026 WL 643134 (D. Conn. Mar. 8, 2026)................................. 2

*Humane Soc'y of U.S. v. U.S. Dep't of Agric.*,
   41 F.4th 564 (D.C. Cir. 2022).................................................................................. 8

*Jindeli Jewelry, Inc. v. United States*,
   No. 14-cv-0314, 2016 WL 2593926 (E.D.N.Y. May 4, 2016)................................. 4

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024)..................................................................................... 3

*Marlow v. U.S. Dep't of Educ.*,
   820 F.2d 581 (2d Cir. 1987) ....................................................................... 2

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
   571 U.S. 161 (2014)................................................................................... 10

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024)..................................................................................... 4

*National Wrestling Coaches Association v. Department of Education*,
   366 F.3d 930 (D.C. Cir. 2004)..................................................................... 2

*Nat'l Coalition Against Violent Athletes v. Dep't of Educ., Civ A.*,
   No. 17-12043-PBS, 2020 WL 13876913 (D. Mass. Dec. 3, 2020) ............ 2

*Nat'l Council of Agric. Emps. ("NCAE") v. U.S. Dep't of Labor*,
   143 F.4th 395 (D.C. Cir. 2025)................................................................ 7, 8

*Pritchard ex rel. C.P. v. Blue Cross Blue Shield of Ill.*,
   159 F.4th 646 (9th Cir. 2025) ..................................................................... 3

*Racing Enthusiasts & Suppliers Coal. v. EPA*,
   45 F.4th 353 (D.C. Cir. 2022)..................................................................... 6

*Reno v. Flores*,
   507 U.S. 292 (1993)..................................................................................... 4

*Sector Colls. & Univs. v. Duncan*,
   681 F.3d 427 (D.C. Cir. 2012)..................................................................... 5

*United States v. Rahimi*,
   602 U.S. 680 (2024)................................................................................. 4, 5

*United States v. Texas*,
   599 U.S. 670 (2023)............................................................................... 10 n.4

*Util. Comm'rs v. FERC*,
   964 F.3d 1177 (D.C. Cir. 2020).................................................................. 6

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978)..................................................................................... 1

*Walker v. Azar*,
   480 F. Supp. 3d 417 (E.D.N.Y. 2020) ........................................................ 2

*Washington Legal Found. v. Alexander,*
  984 F.2d 483 (D.C. Cir. 1993) ................................................................... 2

*Washington v. HHS,*
  482 F. Supp. 3d 1104 (W.D. Wash. 2020) .............................................. 7

*Wyo. Outdoor Council v. U.S. Forest Serv.,*
  165 F.3d 43 (D.C. Cir. 1999) ................................................................... 5

**STATUTES**

5 U.S.C. § 551 ................................................................................................ 6, 9

5 U.S.C. § 703 ................................................................................................ 10

5 U.S.C. § 704 ................................................................................................ 2

5 U.S.C. § 706(2) ........................................................................................... 6 & n.2

28 U.S.C. §§ 44-48 (1934) ............................................................................ 9

44 U.S.C. § 1507 ........................................................................................... 7

Commerce Court Act,
  Pub. L. No. 61-218, 36 Stat. 539-540 (1910) ...................................... 9

Urgent Deficiencies Act,
  Pub. L. No. 63-32, 38 Stat. 208, 219-220 (1913) ............................... 9

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

45 C.F.R. Part 92 (2020) ............................................................................. 6

45 C.F.R. § 92.2 (2020) ............................................................................... 1

Nondiscrimination in Health and Health Education Programs or Activities,
  84 Fed. Reg. 27,846 (Jun. 14, 2019) ..................................................... 1

**OTHER AUTHORITIES**

OFR, Nat'l Archives and Recs. Admin.,
  Document Drafting Handbook (Aug. 2018 ed., rev. June 2025),
  https://www.archives.gov/files/federal-register/write/handbook/ddh.pdf ............................... 8

A. Scalia & B. Garner, Reading law: The Interpretation of Legal Texts (2012) ........................ 5, 9

## INTRODUCTION

Plaintiff Tanya Asapansa-Johnson Walker brings a facial challenge to a now-replaced regulation—45 C.F.R. § 92.2 (2020)—that had parroted the language of the statute it implemented. Unsurprisingly, Walker's arguments that the provision was substantively invalid are unpersuasive. Moreover, the Department of Health and Human Services ("HHS") provided a reasoned explanation for declining to place an agency statement on controversial legal issues in a binding regulation, which is all the Administrative Procedure Act ("APA") required. Specifically, the agency explained it declined "to propose its own . . . definition of 'sex' for purposes of discrimination on the basis of sex in the regulation" given "the likelihood that the Supreme Court will be addressing the issue in the near future[.]" Nondiscrimination in Health and Health Education Programs or Activities, 84 Fed. Reg. 27,846, 27,857 (Jun. 14, 2019). By crafting regulations that could be enforced consistently with *Bostock v. Clayton County*, 590 U.S. 644 (2020), no matter its outcome, HHS undoubtedly considered this aspect of the problem.

Walker concedes that administrative law principles preclude invalidating an agency action because of new circumstances arising after "the administrative record closes[.]" Pl.'s Reply in Supp. of Her Mot. for Summ. J. and In Opp'n to Defs.' Cross-Mit. For Summ. J. ("Opp.") 8 (citing *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 555 (1978)). Walker nonetheless doubles down on the argument that "HHS's failure to address" the outcome in "*Bostock* is inexplicable" even though that outcome was one such new circumstance. Opp. 10. *Bostock* was issued not only after the administrative record closed but after the challenged regulations already became "law" on June 12, 2020. After that date, the regulations could no longer be withdrawn from publication without additional notice and comment. Ultimately, HHS conducted further notice and comment rulemaking to issue the regulations now on the books.

In all events, this case provides no basis to reach these issues. Walker's private right of action forecloses this suit; Walker concedes essential elements of the claims for relief pleaded in the Complaint; and Walker's pre-APA authorities undermine any notion that the APA authorizes, let alone requires, universal vacatur of regulations.

## ARGUMENT

### I.  Walker's Private Right of Action Forecloses this APA Suit.

Walker's arguments that a private right of action directly against entities that violate Section 1557 does not foreclose this action are unpersuasive.  Opp. 2-3.  First, Walker contends that the Court should disregard D.C. Circuit authority because it is "not binding on this Court." Opp. 4.  But 5 U.S.C. § 704 is binding on this Court.  And the Second Circuit has reached the same conclusions.  *Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 583 n.3 (2d Cir. 1987).

Second, Walker errs in suggesting that the relevant caselaw is limited to "a lack of agency enforcement of an enacted rule."  Opp. 4.  In *National Wrestling Coaches Association v. Department of Education*, 366 F.3d 930 (D.C. Cir. 2004), the plaintiffs sought APA review of agency action (not inaction).  *Id*. at 935.  *See also Nat'l Coalition Against Violent Athletes v. Dep't of Educ.*, Civ A. No. 17-12043-PBS, 2020 WL 13876913, at *6-7 (D. Mass. Dec. 3, 2020) (same).

The doctrine does not turn on the nature of the agency action (or inaction).  Rather, it "bar[s] suits where a plaintiff's *injury* may be remediated in another action, even if that remedy would have no effect upon the challenged agency action[.]"  *Washington Legal Found. v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993) (internal quotation marks and citation omitted). Walker's injury is prospective discrimination by the "same medical providers" that subjected Walker to discrimination "in the past[.]"  *Walker v. Azar*, 480 F. Supp. 3d 417, 426 (E.D.N.Y. 2020).  If, as Walker claims, Opp. 4, a Section 1557 judgment for monetary damages against those providers would be inadequate to deter that future discrimination, Title IX and therefore Section 1557 authorize Walker to seek declaratory and injunctive relief against those providers, *see Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75-76 (1992); *Gordon v. Aetna Life Ins. Co.*, No. 3:24-cv-1447, 2026 WL 643134, at *19-27 (D. Conn. Mar. 8, 2026).

Third, Walker errs in suggesting that § 92.2 (2020) would somehow bind courts regarding whether Section 1557 encompasses gender identity discrimination claims in private actions brought to enforce Section 1557.  Opp. 4-5.  In a private suit, parties may invoke whatever agency statements they think may persuade a court—even those that have been superseded or are subject

2

to a 'vacatur' order—based on their "power to persuade[.]" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (citations omitted).  An HHS regulation stating that Title IX and Section 1557 do or do not encompass discrimination based on gender identity would not go beyond this "power to persuade."  *See id.* (absent express delegation, rules construing ambiguous statutes "lack[] power to control") (citation omitted); *see also Pritchard ex rel. C.P. v. Blue Cross Blue Shield of Ill.*, 159 F.4th 646, 659-60 & n. 7, 8 (9th Cir. 2025) (considering 2020 and 2024 provisions in private Section 1557 action).[1]

## II.    Walker Concedes Essential Elements of the APA Claims by Failing to Respond.

Walker concedes essential elements of any APA challenge to a regulation.  A plaintiff effectively concedes a defendant's arguments by failing to respond to them.  *Dangelo v. Client Servs., Inc.*, No. 19-CV-1915, 2020 WL 5899880, at *4 (E.D.N.Y. June 11, 2020), *report and recommendation adopted,* No. 19-CV-1915, 2020 WL 4187903 (E.D.N.Y. July 21, 2020). Defendants explained that Walker has not shown prejudicial error and has not shown that each specific argument advanced was raised during the comment period, Mem. in Supp. Defs.' Cross Mot. for Summ. J. and In Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Mem.") 14, and Walker fails to respond to these arguments, Opp. 2-15.  In the same way, Walker has conceded a failure to make the necessary showing on each factor required for entry of equitable relief and that the 2020 preamble statements fail to satisfy the *Bennett v. Spear* reviewability test.  Defs.' Mem. 15-18. Finally, Walker effectively concedes that a mandatory injunction compelling the Secretary to prescribe regulations is unavailable.  *Id*. at 22-23.

---

[1] To be clear, HHS understands Section 1557 to include an "express[] delegation" authorizing binding legislative rules.  *See Loper Bright*, 603 U.S. at 394-95 (citation omitted). Regardless of the scope of that delegation, Walker does not argue that Section 1557 expressly delegated to HHS the authority to determine whether Title IX and Section 1557 encompass gender identity discrimination claims.  Even if the statute delegated that authority to HHS, by including no position on the issue, § 92.2 (2020) does not exercise that delegation.

**III.    Walker's Contention that the Court Should Interpret § 92.2 (2020) By Looking to the Preamble Has No Place in this Facial Pre-Enforcement Challenge.**

   **A.    The Court Must Consider the Circumstances in Which § 92.2 (2020) Was Most Likely to be Valid.**

Parties can challenge regulations in several ways.  Those include a facial challenge (*i.e.,* a pre-enforcement claim that the regulation is invalid on its face) or an as-applied challenge (*i.e.*, a claim that the regulation is invalid as applied in an agency order adjudicating a party's own rights).  *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 816, 823-24, & n.4 (2024); *Reno v. Flores*, 507 U.S. 292, 300-01 (1993); *Dunn-McCampbell Royalty Int. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997), *abrogated on other grounds by Corner Post*, 603 U.S. 799. Walker brings a facial challenge because Walker's claims do not arise in the context of judicial review of any HHS action applying the regulation. *See Reno*, 507 U.S. at 300-01; *Dunn-McCampbell Royalty Int.*, 112 F.3d at 1288.

Any contention that Walker is bringing an as-applied challenge to any provision of Part 92 would be mistaken.  When a court has "only the regulation itself and the statement of basis and purpose that accompanied its promulgation," the claim is "a facial challenge[.]"  *Reno*, 507 U.S. at 300-01.  In contrast, "'as-applied' challenges" involve agency "orders adjudicating a party's own rights[,]" *Corner Post*, 603 U.S. at 816 & n.4, requiring the regulation to have "been applied in a particular instance" by the agency, *Reno*, 507 U.S. at 300.  The Complaint does not seek judicial review of any HHS order adjudicating Walker's rights applying § 92.2 (2020).

Walker thus "must establish that no set of circumstances exists under which [§ 92.2 (2020)] would be valid."  *Id*. at 301 (citation omitted).  That is "a particularly heavy burden[,]" *Jindeli Jewelry, Inc. v. United States*, No. 14-cv-0314, 2016 WL 2593926, at *4 (E.D.N.Y. May 4, 2016), under which the Court "consider[s] the circumstances in which" § 92.2 (2020) was "most likely" to be valid, *United States v. Rahimi*, 602 U.S. 680, 701 (2024).  "[F]acial challenges are disfavored, and neither parties nor courts can disregard the requisite inquiry into how a law [or regulation] works in all of its applications." *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024).

4

Walker's contention that the only applications of § 92.2 (2020) that the Court may consider are those construing the provision consistently with cherry-picked, nonbinding preamble statements, Opp. 12, is inconsistent with these principles. HHS deliberately declined to bind hearing examiners to any interpretation of Section 1557 included only in preamble language. Defs.' Mem. 11, 13, 16-18. As Walker's authorities acknowledge, "language in the preamble of a regulation is not controlling over the language of the regulation itself[.]" *E.g., Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999). The preamble language thus would not have bound HHS hearing examiners in construing § 92.2 (2020) before it was replaced. "Rather than consider the circumstances in which [§ 92.2 (2020)] was most likely to be [valid]," Walker "instead focuse[s] on hypothetical scenarios[,]" *see Rahimi*, 602 U.S. at 701, in which HHS hearing examiners would have applied § 92.2 (2020) consistent with nonbinding preamble statements that Walker believes would render the provision invalid (while ignoring other preamble statements that would render it valid, *infra* at p. 7). "That error le[aves Walker] slaying a straw man." *Rahimi*, 602 U.S. at 701. "[I]t is not enough for [Walker] to show the [challenged regulations] could be applied unlawfully" by reference to certain preamble statements. *See Ass'n of Priv. Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 442 (D.C. Cir. 2012) (citation omitted). "In the event that the Department does so, a [proper plaintiff] may seek relief through an as-applied challenge." *Id*. at 446.

Unsurprisingly, Walker's authorities arise in the context of as-applied, not facial, challenges to agency regulations. Opp. 11-12 (citing four cases interpreting regulations when an agency or court adjudicated a party's own rights). Walker cites no authority in which a court blinded itself to applications of the plain language of a regulation to hold it unlawful as part of a facial pre-enforcement challenge. That mode of analysis violates a court's "task," which is "to seek harmony, not to manufacture conflict." *Rahimi*, 602 U.S. at 701 (citation omitted); *see also* A. Scalia & B. Garner, Reading law: The Interpretation of Legal Texts 66 (2012) (describing the "presumption of validity" which "disfavors interpretations that would nullify the provision"). The Court must "preserve the right of complainants to bring as-applied challenges against any alleged

5

unlawful applications." *Nat'l Ass'n of Regul. Util. Comm'rs v. FERC*, 964 F.3d 1177, 1185 (D.C. Cir. 2020) (citation omitted).

Looking to preamble language to interpret the regulation in the context of judicial review of § 92.2 (2020) is inconsistent with APA review principles for additional reasons. Under 5 U.S.C. § 706(2), courts consider whether to "hold unlawful and set aside" a particular agency action. In this case, Walker challenges a rule, Compl. ¶ 260; 5 U.S.C. § 551(13) (defining "agency action" to include rules), which is defined as a type of "agency statement[,]" 5 U.S.C. § 551(4). Walker has not demonstrated that any statement in 45 C.F.R. Part 92 should be held unlawful and set aside under § 706(2). It is Walker's burden to identify the reviewable agency statement that Walker asks the Court to hold unlawful and set aside, and there is no agency statement codified in 45 C.F.R. Part 92 (2020) providing, for example, that "Section 1557 allows discrimination in health care on the basis of sexual orientation [or] gender identity[.]" Opp. 12.

Insofar as Walker believes that this Court is "reviewing an abstract decision[,]" *see Biden v. Texas*, 597 U.S. 785, 809 (2022), to repeal provisions of Part 92 promulgated in 2016 divorced from review of any provision of Part 92 the agency issued in 2020, Opp. 5, Walker is mistaken. The Court may not review "an agency decision wholly apart from any 'agency statement of general or particular applicability . . . designed to implement' that decision." *Biden*, 597 U.S. at 809 (citation omitted). Section 92.2 (2020) is itself the "operative agency action[]" because it was the binding "agency statement" designed to interpret Section 1557 that the Complaint asks this Court to review. *See id*. at 810.[2]

The agency statements that were codified in § 92.2 (2020) are distinct from those in the preamble—each of them is a separate agency statement. Indeed, agency statements in a preamble may be reviewable but only if they meet both *Bennett* prongs. *E.g. Racing Enthusiasts & Suppliers Coal. v. EPA*, 45 F.4th 353, 358-59 (D.C. Cir. 2022). But Walker does not dispute that the agency

---

[2] Walker's brief references an HHS notification dated May 2025, as well as 2025 Department of Justice litigation decisions. Opp. 6. The Complaint does not petition this Court for § 706(2) review of any agency statements included in these materials. ECF No. 1.

statements in the preamble here are not reviewable because they satisfy neither *Bennett* prong. Defs.' Mem. 11-12.

> **B.      Even if the Court Considered Preamble Statements, Walker Fixates on the Wrong Ones.**

Even if the Court presumes that an HHS hearing examiner would have construed § 92.2 (2020) consistent with nonbinding preamble statements, Walker's analysis still falters.  First, as another district court explained, "the preamble does not state that HHS's chosen interpretation of the term 'sex' [would have] control[led] application of the 2020 Rule.  Instead, . . . the language in the preamble acknowledges that Title IX caselaw [would have] control[led] the application of Section 1557, thereby rendering" other preamble language "less meaningful."  *Washington v. HHS*, 482 F. Supp. 3d 1104, 1114 n.8 (W.D. Wash. 2020).

Second, Walker fails to explain how examining the preamble to construe any term in § 92.2 (2020)—such as "sex"—would render the regulation invalid.  The Court in *Bostock* "proceed[ed] on the assumption that 'sex' signified what" HHS in the 2020 preamble "suggest[ed], referring only to biological distinctions between male and female."  *Bostock*, 590 U.S. at 655.

**IV.     The APA Did Not Compel HHS to Consider in Advance the Outcome of *Bostock* or Other Material Not Before the Agency.**

Bizarrely, Walker asserts that "HHS still has not explained why the 2020 Rule did not acknowledge the holding in *Bostock*[.]"  Opp. 8. *But see* Defs.' Mem. 12-13 (explaining why).

Walker does not dispute that the 2020 regulations became law on June 12, 2020, the date the Office of the Federal Register ("OFR") placed them on public inspection.  Opp. 8.  Walker also does not dispute that the agency could not change those regulations without notice and comment after that date.  *Id*.  Instead, Walker asserts that OFR—which is not even a party—should have violated the Federal Register Act by halting publication once *Bostock* was issued.  *Id*.  But Federal Register publication is a ministerial act showing that the regulation had already become law on the date it was placed on public inspection.  44 U.S.C. § 1507.  *See Nat'l Council of Agric. Emps. ("NCAE") v. U.S. Dep't of Labor*, 143 F.4th 395, 400-02 (D.C. Cir. 2025).

Walker's claim that HHS "pushed ahead specifically to avoid having to address an adverse decision[,]" Opp. 9 (citation omitted), is undermined by the record.  The Secretary executed the regulations on May 20, 2020—twenty-six days before *Bostock* was decided, and about nine months after the record closed to comments.  85 Fed. Reg. at 37,248 ("Dated: May 20, 2020").  Walker does not claim that executing a regulation nine months after the record closes to comments is somehow unusual.  Soon thereafter, agency staff would have submitted the regulations to OFR for processing "under its 'regular,' 'emergency,' or 'deferred' schedules."  *NCAE*, 143 F.4th at 402 (citation omitted).  Given the document's length, OFR civil servants would have processed it on the deferred schedule, explaining the twenty-three-day delay in placing the document on public inspection.  *See* OFR, Nat'l Archives and Recs. Admin., Document Drafting Handbook § 8.8 (Aug. 2018 ed., rev. June 2025), https://www.archives.gov/files/federal-register/write/handbook/ddh.pdf.  That timing belies any notion that HHS had requested emergency or immediate filing.  *See id*. app. A §§ A.1, A.2.  Walker fails "to make [any] 'strong showing[,]'" *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 577 (2025) (citation omitted), needed to adjudicate this case based on Walker's assertions that the agency somehow acted improperly.  Opp. 9 (citation omitted).

Walker does not dispute that "new circumstance[s]" arising "between when the administrative record closes and when a regulation is promulgated" do not provide a basis to invalidate an agency action.  Opp. 8.  But Walker ignores that the Court's opinion in *Bostock* was issued long after the administrative record closed to new comments on August 13, 2019—the opinion was issued even after OFR placed the regulations on public inspection.  *Id*.  That "*Bostock*'s ruling was pending before the 2020 Rule['s]" effective date, Opp. 8-9, is irrelevant.  "[A] rule becomes law when duly prescribed, not when it goes into effect."  *Humane Soc'y of U.S. v. U.S. Dep't of Agric.*, 41 F.4th 564, 571-72 (D.C. Cir. 2022).

The Court may not hold § 92.2 (2020) unlawful based on Walker's skepticism that HHS "knew of no data evidencing the 2020 Rule's disproportionate impact on LGBTQ people" when Walker fails to show that any such data was before HHS.  Opp. 9.  HHS subjected § 92.2 (2020)

8

to notice and comment, and Walker fails to cite any such data from the record. *FCC v. Prometheus Radio Project*, 592 U.S. 414, 427 (2021) (Reliance on lack of data sufficient when "no commenter produced . . . evidence indicating that changing the rules was likely to harm" groups.).

**V.    In Arguing for APA "Vacatur," Walker Invokes Statutory Provisions Authorizing Courts to Annul Final ICC Orders that Congress Declined to Include in the APA.**

Walker's arguments for "vacatur," Opp. 12-15, are unpersuasive.  Walker argues that "in 1946, the phrase 'set aside' meant 'cancel, annul,' or revoke.'" *Id*. at 13-14 (citation omitted).  But the statutory review provisions Walker invokes show that "set aside" did not mean "annul" and Congress declined to authorize annulment in the APA.

Walker invokes three pre-APA cases reviewing Interstate Commerce Commission ("ICC") and Federal Communications Commission ("FCC") actions.  Opp. 13.  In the 1930s, ICC and FCC actions were reviewed under the Urgent Deficiencies Act, which conferred on specially constituted district courts "exclusive jurisdiction" over suits to "enjoin, set aside, annul, or suspend" specified ICC "order[s]."  Commerce Court Act, Pub. L. No. 61-218, 36 Stat. 539-540 (1910) (vesting that jurisdiction in a special commerce court); *see* Urgent Deficiencies Act, Pub. L. No. 63-32, 38 Stat. 208, 219-220 (1913) (abolishing commerce court and transferring its jurisdiction to three-judge district courts); *see also* 28 U.S.C. §§ 44-48 (1934).  Prior to 1950, FCC actions were reviewed under the same statute.  *See* Communications Act of 1934, ch. 652 § 402(a), 48 Stat. 1093.

The tools of interpretation confirm that "enjoin," "set aside," "annul," and "suspend" each had a different meaning.  If that were not so, each term would be superfluous.  A. Scalia & B. Garner, Reading law: The Interpretation of Legal Texts 174-79 (2012).  Walker's observation that courts in the 1930s effectuated their power "to vacate and nullify [ICC and FCC] rules[,]" Opp. 13 (citation omitted), merely reflects statutory authority to annul orders[3] under the Urgent

---

[3] The Court held that "order[s] promulgating regulations" can be "orders reviewable under the Urgent Deficiencies Act." *See Columbia Broad. Sys. v. United States*, 316 U.S. 407, 417 (1942).  The APA rejects that approach. 5 U.S.C. § 551(6) ("'order' means the . . . final disposition" in certain "matter[s] other than rule making").

9

Deficiencies Act.[4]

Congress is presumed to be aware of the ICC review scheme when it enacted the APA. *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 170-71 (2014).  Indeed, Congress referred explicitly to such "special statutory review proceeding[s.]" 5 U.S.C. § 703.  But Congress declined to include authority to annul in the APA.

## CONCLUSION

The Court should deny Walker's motion and grant Defendants' cross-motion.

Dated: March 23, 2026                    Respectfully submitted,

                                         BRETT A. SHUMATE
                                         Assistant Attorney General

                                         MICHELLE R. BENNETT
                                         Assistant Director, Federal Programs Branch

                                         */s/ Liam C. Holland*
                                         LIAM C. HOLLAND
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         Washington, D.C. 20005
                                         Tel.: (202) 514-4964
                                         Fax: (202) 616-8470
                                         Email: liam.c.holland@usdoj.gov

                                         *Attorneys for Defendants*

---

[4] Walker relies on a Food, Drug, and Cosmetic Act case.  Opp. 13-14 (citing *Fed. Sec. Adm'r. v. Quaker Oats Co.*, 318 U.S. 218, 224 (1943)).  That case did not "set aside" the challenged action, let alone construe the term.  *See United States v. Texas*, 599 U.S. 670, 700-01 (2023) (Gorsuch, J., concurring).

## CERTIFICATION OF WORD COUNT

As required by Local Civil Rule 7.1, I certify that the word count of the word-processing program used to prepare this memorandum of law shows that it includes 3,499 words, not including the caption, table of contents, table of authorities, signature blocks, or this certificate.

Dated March 23, 2026

*/s/ Liam C. Holland*
Liam C. Holland
